# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

SHIRLEY J. WALKER,

      Plaintiff,

vs.                                                                    No. CIV 17-0991 JB/SCY

GREGORY J. SPINA;
VALLEY EXPRESS, INC. and
DIXON INSURANCE
COMPANY,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiff's Motion to Amend Complaint for Personal Injuries and Damages, filed February 3, 2018 (Doc. 23)("Motion"). The Court held a hearing on June 20, 2018. The primary issue is whether Plaintiff Shirley Walker may sue Great West Casualty Company as an injurer's insurer under Raskob v. Sanchez, 1998-NMSC-045, ¶ 6, 970 P.2d 580, 581-82 ("Raskob"), when the injurer is an out-of-state resident. The Court concludes that a Raskob action lies, even against an out-of-state resident, so long as: (i) the law mandates the insurance coverage; (ii) the law is meant to benefit the public; and (iii) the law does not express an intent to deny joinder. See Raskob, 1998-NMSC-045, ¶ 3, 970 P.2d at 581. Because both the New Mexico Financial Responsibility Act, N.M. Stat. Ann. §§ 66-5-201 to -239 ("NMFRA") and North Dakota law (i) mandate that the out-of-state resident have insurance coverage; (ii) were meant to benefit the public; and (iii) the laws do not express an intent to deny joinder, the Court concludes that a Raskob action lies. Accordingly, the Court grants the Motion, and Walker may amend her complaint to add Great West as a defendant.

## FACTUAL BACKGROUND

The Court takes its facts from Walker's Complaint for Personal Injuries and Damages (First Judicial District Court, County of Santa Fe, State of New Mexico), filed December 23, 2016, filed in federal court September 29, 2017 (Doc. 1-1)("Complaint"). The Court provides these facts for background. It does not adopt them as the truth, and it recognizes that the facts are largely Walker's version of events.

On July 23, 2015, Defendant Gregory J. Spina was speeding on U.S. Highway 84/285 in a commercial vehicle that Defendant Valley Express, Inc. owned. See Complaint ¶¶ 6-7, at 2. As Spina approached a red light, he realized that he was going too fast to brake, so, instead of hitting the vehicles stopped side by side in front of him, he attempted to slip between them. See Complaint ¶ 7, at 2. Rather than avoiding the stopped vehicles, however, he sideswiped both of them, causing both cars to roll into the intersection. See Complaint ¶ 7, at 2-3. Walker was driving one of the sideswiped vehicles and, as a result of Spina's actions, suffered physical and emotional injuries. See Complaint ¶¶ 7, 11, at 2-4.

## PROCEDURAL BACKGROUND

Walker sues Spina and Valley Express, asserting negligence,[1] and sues Defendant Dixon Insurance Company, asserting that she has a claim for benefits against it under the NMFRA and Raskob for injuries that Spina's negligence caused. See Complaint ¶¶ 8-13, at 3-5. Spina and Valley Express removed the case to federal court on the basis of diversity jurisdiction. See Notice of Removal to the United States District Court for the District of New Mexico at 1, filed

---

[1]Although the Complaint does not make this claim explicit, Walker presumably sues Valley Express under respondeat superior.

September 29, 2017 (Doc. 1)("Notice of Removal").[2]  Dixon Insurance has not yet been served with the Complaint.  See Draft Transcript of Motion Proceedings at 6:1-2 (taken June 20, 2018)(Beaulieu)("Tr.").[3]

### 1.    The Motion.

Walker moves to amend the Complaint so she can substitute Great West for Dixon Insurance.  See Motion at 1.  She argues that, based on recent disclosures from Spina and Valley Express, she learned that Great West and not Dixon Insurance issued the relevant insurance policy.  See Motion ¶ 2, at 2.  She argues, thus, that, under rule 15(a)(2) of the Federal Rules of Civil Procedure, the Court should grant the amendment, because there is no evidence of "undue delay, bad faith, dilatory tactics," or prejudice to Spina and Valley Express.  Motion ¶¶ 5-7, at 2-3.

---

[2]The Court, sua sponte, considers its subject-matter jurisdiction.  The Notice of Removal plausibly demonstrates that $75,000.00 is in controversy.  See Notice of Removal ¶ 10, at 3.  There is also enough evidence to conclude that Walker is a New Mexico citizen and that Valley Express is a North Dakota citizen.  See Notice of Removal ¶ 5, at 2 (attesting that Valley Express is incorporated in North Dakota with its principle place of business there); Joint Status Report and Provisional Discovery Plan at 2, filed January 2, 2018 (Doc. 16)("Joint Status Report")(stipulating that Walker is a New Mexico citizen).  There is insufficient evidence to conclude, however, Spina's citizenship.  The Notice of Removal details only that Spina is a North Dakota resident.  See Notice of Removal ¶ 6, at 2.  Residence, alone, is insufficient to establish citizenship for diversity jurisdiction purposes.  See Siloam Springs Hotel, L.L.C. v. Century Sur. Co., 781 F.3d 1233, 1238 (10th Cir. 2015)("An individual's residence is not equivalent to his domicile and it is domicile that is relevant for determining citizenship.").  In addition, there is no evidence concerning Great West's citizenship.  Because the Court concludes that Great West is a proper party, see infra at 22-26, the defendants must demonstrate that Great West is not a New Mexico citizen to satisfy the complete diversity requirement.  Accordingly, the Court orders Spina and Valley Express to show cause within ten days of this Memorandum Opinion and Order's entry why the Court should not remand this case to state court for lack of subject-matter jurisdiction.

[3]The Court's citations to the hearing transcript refer to the court reporter's original, unedited version.  If a final transcript is made, it may contain slightly different page and/or line numbers.

2.     **The Response**.

Spina and Valley Express respond.  <u>See</u> Defendants' Gregory J. Spina and Valley Express, Inc.'s Response to Plaintiff's Motion to Amend at 1, filed February 16, 2018 (Doc. 25)("Response").  They argue that the Court should not allow the amendment, because commercial motor carriers, such as Great West, are exempt from the NMFRA, so, according to Spina and Valley Express, there is no basis to hold Great West liable.  <u>See</u> Response at 1-2. Spina and Valley Express contend that the NMFRA does not apply to Great West, because the NMFRA's purpose applies to New Mexico residents, which Spina, Valley Express, and Great West are not.  <u>See</u> Response at 3.  They also assert that the NMFRA does not apply to commercial motor vehicles, so the NMFRA would not apply here, because the car at issue is a commercial motor vehicle.  <u>See</u> Response at 3-4 (citing N.M. Stat. Ann. § 66-5-207(D)). Finally, Spina and Valley Express argue that <u>Raskob</u> is inapplicable, because, according to them, the Supreme Court of New Mexico held there that an insurer could be held liable if they issued a policy in accordance with the NMFRA, but here, the policy was not issued in accordance with the NMFRA.  <u>See</u> Response at 4.

3.     **The Reply**.

Walker replies.  <u>See</u> Plaintiff's Reply to Defendants Gregory J. Spina's and Valley Express, Inc.'s Response to Her Motion to Amend Her Complaint, filed February 20, 2018 (Doc. 26)("Reply").  She asserts that <u>Raskob</u> allows Great West's joinder, notwithstanding the NMFRA, because "'where the insurance coverage is mandated by law for the benefit of the public, generally the insurance company is a proper party.'"  Reply at 1-2 (quoting <u>Raskob</u>, 1998-NMSC-045, ¶ 3, 970 P.2d at 581).  She argues that, because the rights of persons injured in automobile accidents are determined under the law where the accident happened, New Mexico

law applies.  <u>See</u> Reply at 2.  Thus, according to Walker, "if insurance coverage for the Valley vehicle Spina was driving is mandated by law, benefits the public and no language of the law expresses an intent to deny joinder, Walker may join Great West as a defendant."  Reply at 2. She concludes that, even if the NMFRA does not apply, North Dakota and federal law require insurance to cover the vehicle driven, so <u>Raskob</u> applies and Great West is a proper defendant. <u>See</u> Reply at 3.

       **4.**    **<u>The Hearing</u>.**

       The Court held a hearing.  <u>See</u> Tr. at 1:5-6 (Court).  Walker argued that <u>Raskob</u> is on all fours, so Great West's joinder is proper and the Court should grant leave to amend.  <u>See</u> Tr. at 2:19-4:2 (Ayala).  Spina and Valley Express countered that <u>Raskob</u> cannot cover this case, because <u>Raskob</u> analyzes the NMFRA, which, according to Spina and Valley Express, does not apply here, because the NMFRA targets New Mexico residents, whereas Spina and Valley Express are North Dakota residents.  <u>See</u> Tr. at 6:13-17 (Beaulieu); <u>id.</u> at 11:11-13 ("[T]he Raskob opinion and analysis is very specific to the New Mexico Laws [such] that the overbreadth of language would be in reference to those laws."); <u>id.</u> at 15:17-16:16 (Beaulieu, Court).  They also argue that Great West is not a proper party, because Walker is not in privity with Great West.  <u>See</u> Tr. at 7:1-2 (Beaulieu).  Spina and Valley Express conceded, however, that both New Mexico and North Dakota law mandate insurance coverage.  <u>See</u> Tr. at 9:2-4 (Beaulieu, Court).  The Court commented that <u>Raskob</u> appears to be saying that, "if the insurance coverage is mandated, then the insurance company is a proper party."  Tr. at 9:19-21 (Court). The Court noted that there might be good reasons to create exceptions to the <u>Raskob</u> rule, but that the Supreme Court of New Mexico, not a federal court sitting in diversity, ought to address those reasons in the first instance.  <u>See</u> Tr. at 10:18-21 (Court).

Spina and Valley Express contended that, should the Court allow the amendment, it would request a bifurcation, separating Great West from the rest of the matter, because there is not a direct cause of action. <u>See</u> Tr. at 12:24-13:4 (Beaulieu). Should the Court determine that there is a direct cause of action here, Spina and Valley Express argued that a bifurcation would still be proper, because they would be prejudiced. <u>See</u> Tr. at 13:11-19 (Beaulieu). Walker agreed that there should be bifurcation. <u>See</u> Tr. at 14:4-7 (Ayala).

## LAW REGARDING RULE 12(b)(6)

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." <u>Mobley v. McCormick</u>, 40 F.3d 337, 340 (10th Cir. 1994). The Complaint's sufficiency is a question of law, and, when considering a rule 12(b)(6) motion, a court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the nonmoving party, and draw all reasonable inferences in the plaintiff's favor. <u>See</u> <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."); <u>Smith v. United States</u>, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pled factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.")(citing <u>Moore v. Guthrie</u>, 438 F.3d 1036, 1039 (10th Cir. 2006)).

A complaint need not make detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678 (2009)(citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 555).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. at 555.

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted). The United States Court of Appeals for the Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(citations omitted)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570). See Gallegos v. Bernalillo Cty. Board of Cty. Comm'rs, __ F. Supp. 3d __, 2017 WL 4402422, at *9 (D.N.M. 2017)(Browning, J.).

"When a party presents matters outside of the pleadings for consideration, as a general rule 'the court must either exclude the material or treat the motion as one for summary judgment.'" Brokers' Choice of America, Inc. v. NBC Universal, Inc., 861 F.3d 1081, 1103 (10th Cir. 2017)(quoting Alexander v. Oklahoma, 382 F.3d 1206, 1214 (10th Cir. 2004)). There are three limited exceptions to this general principle: (i) documents that the complaint incorporates by reference, see Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); (ii) "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity," Jacobsen v. Deseret Book Co., 287 F.3d at 941; and (iii) "matters of which a court may take judicial notice," Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. at 322. See Brokers' Choice of America, Inc. v. NBC Universal, Inc., 861 F.3d 1081, 1103 (10th Cir. 2017)(holding that the district court did not err by reviewing a seminar recording and a TV episode on a rule 12(b)(6) motion, which were "attached to or referenced in the amended complaint," central to the plaintiff's claim, and "undisputed as to their accuracy and authenticity"). "[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." Van Woudenberg v. Gibson, 211 F.3d 560, 568 (10th Cir. 2000), abrogated on other grounds by McGregor v. Gibson, 248 F.3d 946, 955 (10th Cir. 2001).

In Gee v. Pacheco, 627 F.3d 1178 (10th Cir. 2010), the defendants "supported their motion with numerous documents, and the district court cited portions of those motions in granting the [motion to dismiss]." 627 F.3d at 1186. The Tenth Circuit held that "[s]uch reliance was improper" and that, even if "the district court did not err initially in reviewing the materials, the court improperly relied on them to refute Mr. Gee's factual assertions and effectively convert the motion to one for summary judgment." 627 F.3d at 1186-87. In other

cases, the Tenth Circuit has emphasized that, "[b]ecause the district court considered facts outside of the complaint, however, it is clear that the district court dismissed the claim under Rule 56(c) and not Rule 12(b)(6)." Nard v. City of Okla. City, 153 F. App'x 529, 534 n.4 (10th Cir. 2005)(unpublished).[4]    In Douglas v. Norton, 167 F. App'x 698 (10th Cir. 2006)(unpublished), the Tenth Circuit addressed an untimely filed charge with the Equal Employment Opportunity Commission -- which the Tenth Circuit analogized to a statute of limitations -- and concluded that, because the requirement was not jurisdictional, the district court should have analyzed the question under rule 12(b)(6), and "because the district court considered evidentiary materials outside of Douglas' complaint, it should have treated Norton's motion as a motion for summary judgment." 167 F. App'x at 704-05.

The Court has previously ruled that, when a plaintiff references and summarizes defendants' statements in a complaint, the Court cannot rely on documents containing those statements that the Defendant's attach in their briefing. See Mocek v. City of Albuquerque, 2013 WL 312881, at *50-51 (D.N.M. Jan. 14, 2013)(Browning, J.). The Court reasoned that the statements were neither incorporated by reference nor central to the plaintiff's allegations in the complaint, because the plaintiff cited the statements only to attack the Defendant's reliability and truthfulness. See 2013 WL 312881, at *50-51. The Court has also previously ruled that, when

---

[4]Nard v. City of Okla. City is an unpublished Tenth Circuit opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored. . . . However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision." United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that Nard v. City of Okla. City and Douglas v. Norton have persuasive value with respect to a material issue, and will assist the Court in its preparation of this Memorandum Opinion and Order.

determining whether to toll a statute of limitations in an action alleging fraud and seeking subrogation from a defendant, the Court may not use interviews and letters attached to a motion to dismiss, which show that a plaintiff was aware of the defendant's alleged fraud before the statutory period expired.  See Great Am. Co. v. Crabtree, 2012 WL 3656500, at *3, *22-23 (D.N.M. Aug. 23, 2012)(Browning, J.)("Crabtree").  The Court, in Crabtree, determined that the documents did not fall within any of the Tenth Circuit's exceptions to the general rule that a complaint must rest on the sufficiency of its contents alone, as the complaint did not incorporate the documents by reference or refer to the documents. See 2012 WL 3656500, at *22-23; Mocek v. City of Albuquerque, 2013 WL 312881, at *50 (refusing to consider statements that were not "central to [the plaintiff's] claims").

On the other hand, in a securities class action, the Court has ruled that a defendant's operating certification, to which plaintiffs refer to in their complaint, and which was central to whether the plaintiffs adequately alleged a loss, falls within an exception to the general rule, so the Court may consider the operating certification when ruling on the defendant's motion to dismiss without converting the motion into one for summary judgment.   See Genesee Cty. Emps.' Retirement Sys. v. Thornburg Mortg. Secs. Trust 2006-3, 825 F. Supp. 2d 1082, 1150-51 (D.N.M. 2011)(Browning, J.); Mata v. Anderson, 760 F. Supp. 2d 1068, 1101 (D.N.M. 2009)(Browning, J.)(relying on documents outside of the complaint because they were "documents that a court can appropriately view as either part of the public record, or as documents upon which the Complaint relies, and the authenticity of which is not in dispute"); S.E.C. v. Goldstone, 952 F. Supp. 2d 1060, 1217-18 (D.N.M. 2013)(Browning, J.)(considering, on a motion to dismiss, electronic mail transmissions referenced in the complaint as "documents

referred to in the complaint," which are "central to the plaintiff's claim" and whose authenticity the plaintiff did not challenge).

<h2 style="text-align:center"><u>LAW REGARDING MOTIONS TO AMEND</u></h2>

"While Rule 15 governs amendments to pleadings generally, rule 16 of the Federal Rules of Civil Procedure governs amendments to scheduling orders." <u>Bylin v. Billings</u>, 568 F.3d 1224, 1231 (10th Cir. 2009)(citing Fed. R. Civ. P. 16(b)). When a court has not entered a scheduling order in a particular case, rule 15 governs amendments to a plaintiff's complaint. <u>See</u> Fed. R. Civ. P. 15. When a scheduling order governs the case's pace, however, amending the complaint after the deadline for such amendments implicitly requires an amendment to the scheduling order, and rule 16(b)(4) governs changes to the scheduling order. <u>See Bylin v. Billings</u>, 568 F.3d at 1231.

Rule 15(a) of the Federal Rules of Civil Procedure provides:

**(1) Amending as a Matter of Course.** A party may amend its pleading once as a matter of course within:

>**(A)** 21 days after serving it, or

>**(B)** if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under rule 12(b), (e), or (f), whichever is earlier.

**(2) Other Amendments.** In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a)(bold and italics in original). Further, the local rules provide that, with respect to motions to amend a pleading, "[a] proposed amendment to a pleading must accompany the motion to amend." D.N.M.LR-Civ. 15.1.

Under rule 15(a), the court should freely grant leave to amend a pleading where justice so requires.  See In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. 571, 579-80 (D.N.M. 2010)(Browning, J.); Youell v. Russell, 2007 WL 709041, at *1-2 (D.N.M. 2007)(Browning, J.); Burleson v. ENMR-Plateau Tele. Coop., 2005 WL 3664299, at *1-2 (D.N.M. 2005)(Browning, J.).  The Supreme Court of the United States of America has stated that, in the absence of an apparent reason such as "undue delay, bad faith or dilatory motive . . . [,] repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.," leave to amend should be freely given.  Fomen v. Davis, 371 U.S. 178, 182 (1962).  See Curley v. Perry, 246 F.3d 1278, 1284 (10th Cir. 2001); In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80.

A court should deny leave to amend under rule 15(a) where the proposed "amendment would be futile."  Jefferson Cty. Sch. Dist. v. Moody's Investor's Serv., 175 F.3d 848, 859 (10th Cir. 1999).  See In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80.  An amendment is "futile" if the pleading, "as amended, would be subject to dismissal."  In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80 (citing TV Commc'ns Network, Inc. v. Turner Network Television, Inc., 964 F.2d 1022, 1028 (10th Cir. 1992)).  A court may also deny leave to amend "upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, [or] failure to cure deficiencies by amendments previously allowed."  In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579 (quoting Frank v. U.S. W., Inc., 3 F.3d 1357, 1365-66 (10th Cir. 1993)).  See Youell v. Russell, 2007 WL 709041, at *2-3; Lymon v. Aramark Corp., 2009 WL 1299842 (D.N.M. 2009)(Browning, J.).  The Tenth Circuit has also noted:

> It is well settled in this circuit that untimeliness alone is a sufficient reason to deny leave to amend, see Woolsey v. Marion Laboratories, Inc., 934 F.2d 1452, 1462 (10th Cir. 1991); Las Vegas Ice & Cold Storage Co. v. Far West Bank, 893 F.2d 1182, 1185 (10th Cir. 1990); First City Bank v. Air Capitol Aircraft Sales,

820 F.2d 1127, 1133 (10th Cir. 1987), especially when the party filing the motion has no adequate explanation for the delay, Woolsey, 934 F.2d at 1462. Furthermore, "[w]here the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." Las Vegas Ice, 893 F.2d at 1185.

Frank v. U.S. W., Inc., 3 F.3d at 1365-66.[5] The longer the delay, "the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." Minter v. Prime Equip. Co., 451 F.3d at 1205 (citing Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004)). Undue delay occurs where the plaintiff's amendments "make the complaint 'a moving target.'" Minter v. Prime Equip. Co., 451 F.3d at 1206 (quoting Viernow v. Euripides Dev. Corp., 157 F.3d 785, 799-800 (10th Cir. 1998)). "[P]rejudice to the opposing party need not also be shown." Las Vegas Ice & Cold Storage Co. v. Far W. Bank, 893 F.2d at 1185. "Where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." Las Vegas Ice & Cold Storage Co. v. Far W. Bank, 893 F.2d at 1185 (quoting State Distribs., Inc. v. Glenmore Distilleries Co., 738 F.2d 405 (10th Cir. 1984)). Along the same vein, the court will deny amendment if the party learned of the facts upon which its proposed amendment is based and nevertheless unreasonably delayed in moving to amend its complaint. See Pallottino v. City of Rio Rancho, 31 F.3d 1023, 1027 (10th Cir. 1994)(noting

---

[5]The Court notes that there is older authority in the Tenth Circuit that seems to be to the contrary. See R.E.B., Inc. v. Ralston Purina Co., 525 F.2d 749, 751 (10th Cir. 1975)("Lateness does not of itself justify the denial of the amendment."). Minter v. Prime Equipment Co. seems to clarify that the distinction is between "delay" and "undue delay." Minter v. Prime Equipment Co., 451 F.3d at 1205-06. Delay is undue "when the party filing the motion has no adequate explanation for the delay." Minter v. Prime Equipment Co., 451 F.3d at 1206.

motion to amend filed "was not based on new evidence unavailable at the time of the original filing").

Refusing leave to amend is generally justified only upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.  See Castleglen, Inc. v. Resolution Trust Corp., 984 F.2d 1571, 1585 (10th Cir. 1993)(citing Foman v. Davis, 371 U.S. at 182). Again, the matter is left to the Court's discretion.  See Frank v. U.S. W., Inc., 3 F.3d at 1365-66. See Duncan v. Manager, Dep't of Safety, City & Cty. of Denver, 397 F.3d 1300, 1315 (10th Cir. 2005)(quoting Frank v. U.S. West, Inc., 3 F.3d at 1365-66, and stating that resolving the issue whether to allow a plaintiff to file a supplement to his complaint is "well within the discretion of the district court").  "The . . . Tenth Circuit has emphasized that '[t]he purpose of [rule 15(a)] is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'"  B.T. ex rel. G.T. v. Santa Fe Pub. Schs., 2007 WL 1306814, at *2 (D.N.M. 2007)(Browning, J.)(quoting Minter v. Prime Equip. Co., 451 F.3d 1196, 1204 (10th Cir. 2006)).  "Specifically, the . . . Tenth Circuit has determined that district courts should grant leave to amend when doing so would yield a meritorious claim."  Burleson v. ENMR-Plateau Tel. Co-op., 2005 WL 3664299, at *2 (D.N.M. 2005)(Browning, J.)(citing Curley v. Perry, 246 F.3d 1278, 1284 (10th Cir. 2001)).

## LAW REGARDING DIVERSITY JURISDICTION AND ERIE

Under Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1983)("Erie"), a federal district court sitting in diversity applies "state law with the objective of obtaining the result that would be reached in state court."  Butt v. Bank of Am., N.A., 477 F.3d 1171, 1179 (10th Cir. 2007). Accord Mem. Hosp. v. Healthcare Realty Trust Inc., 509 F.3d 1225, 1229 (10th Cir. 2007).  The

Court has held that if a district court exercising diversity jurisdiction cannot find a Supreme Court of New Mexico "opinion that [governs] a particular area of substantive law . . . [the district court] must . . . predict how the Supreme Court of New Mexico would [rule]." Guidance Endodontics, LLC v. Dentsply Int'l., Inc., 708 F. Supp. 2d 1209, 1224-25 (D.N.M. 2010)(Browning, J.). "Just as a court engaging in statutory interpretation must always begin with the statute's text, a court formulating an Erie prediction should look first to the words of the state supreme court." Peña v. Greffet, 110 F. Supp. 3d 1103, 1132 (D.N.M. 2015)(Browning, J.).[6] If the Court finds only an opinion from the Court of Appeals of New Mexico, while "certainly [the Court] may and will consider the Court of Appeal[s'] decision in making its determination, the Court is not bound by the Court of Appeal[s'] decision in the same way that it would be bound by a Supreme Court decision." Mosley v. Titus, 762 F. Supp. 2d

---

[6]In performing its Erie-mandated duty to predict what a state supreme court would do if faced with a case, see Comm'r v. Estate of Bosch, 387 U.S. 456 (1987), a federal court may sometimes contradict the state supreme court's own precedent if the federal court concludes that the state supreme court would, given the opportunity, overrule its earlier holding, see Anderson Living Trust v. WPX Energy Prod., LLC, 27 F. Supp. 3d at 1247 n.30. Courts should, obviously, be reticent to formulate an Erie prediction that conflicts with state-court precedent; even if the prediction turns out to be correct, such predictions produce disparate results between cases filed in state and federal courts, as the old state supreme court precedent usually binds state trial courts. The factors to which a federal court should look before making an Erie prediction that a state supreme court will overrule its prior precedent vary depending upon the case, but some consistent ones include: (i) the age of the state supreme court decision from which the federal court is considering departing -- the younger the state case is, the less likely it is that departure is warranted; (ii) the amount of doctrinal reliance that the state courts -- especially the state supreme court -- have placed on the state decision from which the federal court is considering departing; (iii) apparent shifts away from the doctrine that the state decision articulates, especially if the state supreme court has explicitly called an older case's holding into question; (iv) changes in the composition of the state supreme court, especially if mostly dissenting justices from the earlier state decision remain on the court; and (v) the decision's patent illogic or its inapplicability to modern times. See Peña v. Greffet, 110 F. Supp. 3d at 1132 n.17. In short, a state supreme court case that a federal court Erie predicts will be overruled is likely to be very old, neglected by subsequent state-court cases -- perhaps because it is in a dusty corner of the common law which does not get much attention or have much application -- and clearly wrong.

1298, 1332 (D.N.M. 2010)(Browning, J.)(noting that, where the only opinion on point is "from the Court of Appeals, [] the Court's task, as a federal district court sitting in this district, is to predict what the Supreme Court of New Mexico would do if the case were presented to it")(citing Wade v. EMCASCO Ins. Co., 483 F.3d 657, 666 (10th Cir. 2007)(explaining that, "[w]here no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do," and that, "[i]n doing so, it may seek guidance from decisions rendered by lower courts in the relevant state")).[7]  The Court may also rely on Tenth Circuit

---

[7]The Supreme Court has addressed what the federal courts may use when there is not a decision on point from the state's highest court:

> The highest state court is the final authority on state law, but it is still the duty of the federal courts, where the state law supplies the rule of decision, to ascertain and apply that law even though it has not been expounded by the highest court of the State.  An intermediate state court in declaring and applying the state law is acting as an organ of the State and its determination, in the absence of more convincing evidence of what the state law is, should be followed by a federal court in deciding a state question.  We have declared that principle in *West v. American Telephone and Telegraph Co.*, 311 U.S. 223 (1940), decided this day. It is true that in that case an intermediate appellate court of the State had determined the immediate question as between the same parties in a prior suit, and the highest state court had refused to review the lower court's decision, but we set forth the broader principle as applicable to the decision of an intermediate court, in the absence of a decision by the highest court, whether the question is one of statute or common law.

> . . . We have held that the decision of the Supreme Court upon the construction of a state statute should be followed in the absence of an expression of a countervailing view by the State's highest court, and we think that the decisions of the Court of Chancery [the New Jersey trial court] are entitled to like respect as announcing the law of the State.

> . . . .

> The question has practical aspects of great importance in the proper administration of justice in the federal courts.  It is inadmissible that there should be one rule of state law for litigants in the state courts and another rule for litigants who bring the same question before the federal courts owing to the circumstance of diversity of citizenship.  In the absence of any contrary showing,

decisions interpreting New Mexico law.  See Anderson Living Trust v. WPX Energy Prod.,

LLC, 27 F. Supp. 3d at 1243 & n.30.[8]  Ultimately, "the Court's task is to predict what the state

_____

the rule [set forth by two New Jersey trial courts, but no appellate courts] appears
to be the one which would be applied in litigation in the state court, and whether
believed to be sound or unsound, it should have been followed by the Circuit
Court of Appeals.

Fid. Union Trust Co. v. Field, 311 U.S. 169, 177-80 (1940)(footnotes and citations omitted).
The Supreme Court has softened this position over the years; federal courts are no longer bound
by state trial or intermediate court opinions, but "should attribute [them] some weight . . . where
the highest court of the State has not spoken on the point."  Comm'r v. Estate of Bosch, 387 U.S.
at 465 (citing King v. Order of United Commercial Travelers, 333 U.S. 153, 159 (1948)).  See
17A James Wm. Moore et al., Moore's Federal Practice § 124.20 (3d ed.
1999)("Moore's")("Decisions of intermediate state appellate courts usually must be
followed . . . [and] federal courts should give some weight to state trial courts
decisions.")(emphasis and title case omitted).

[8]In determining the proper weight to accord Tenth Circuit precedent interpreting New
Mexico law, the Court must balance the need for uniformity between federal court and state
court interpretations of state law with the need for uniformity among federal judges.  If the Court
adheres too rigidly to Tenth Circuit case law, ignoring changes undergone by a state's law in the
ensuing years, then parties litigating state-law claims will be subject to a different body of
substantive law, depending on whether they litigate in state court or federal court.  This result
frustrates the purpose of Erie, which held that federal courts must apply state court
interpretations of state law, rather than their own, in part so that parties achieve a consistent
result regardless of the forum.  This consideration pulls the Court toward according Tenth Circuit
precedent less weight and according state court decisions issued in the ensuing years more
weight.  On the other hand, when the state law is unclear, it is desirable for there to at least be
uniformity among federal judges as to its proper interpretation.  Otherwise, different federal
judges within the same circuit -- or even the same district, as district courts' decisions are not
binding, even upon themselves -- would be free to adopt differing interpretations of a state's law.
This consideration pulls the Court towards a stronger respect for vertical stare decisis, because a
Tenth Circuit decision on point -- regardless whether it accurately reflects state law -- at least
provides consistency at the federal level, so long as federal district judges are required to follow
it.

The Court must decide how to weigh Tenth Circuit case law against more-recent state
court decisions, choosing a point on the spectrum between the two extremes: rigidly adhering to
Tenth Circuit precedent unless there is intervening case law directly on point from the state's
highest court, on one end; and independently interpreting the state law, regarding the Tenth
Circuit precedent as no more than persuasive authority, on the other.  In striking this balance, the
Court notes that it is generally more concerned about systemic inconsistency between the federal
courts and the state courts than it is about inconsistency among federal judges.  Judges, even
those within a jurisdiction with ostensibly identical governing law, sometimes interpret and

- 17 -

apply the law differently from one another; this inconsistency is part and parcel of a common-law judicial system. More importantly, litigants seeking to use forum selection to gain a substantive legal advantage cannot easily manipulate such inconsistency: cases are assigned randomly to district judges in this and many federal districts; and, regardless, litigants cannot know for certain how a given judge will interpret the state law, even if they could determine the identity of the judge pre-filing or pre-removal. All litigants know in advance is that whomever federal district judge they are assigned will look to the entirety of the state's common law in making his or her determination -- the same as a state judge would. Systemic inconsistency between the federal courts and state courts, on the other hand, not only threatens the principles of federalism, but litigants may more easily manipulate the inconsistency. When the Tenth Circuit issues an opinion interpreting state law, and the state courts subsequently shift away from that interpretation, litigants -- if the district courts strictly adhere to the Tenth Circuit opinion -- have a definite substantive advantage in choosing the federal forum over the state forum, or vice versa.

The Court further notes that district courts may be in a better position than the Tenth Circuit to be responsive to changes in state law. Tenth Circuit decisions interpreting a particular state's law on a specific issue are further apart in time than the collective district courts' decisions are. More importantly, the Tenth Circuit does not typically address such issues with the frequency that the state's courts themselves do. Accordingly, Tenth Circuit precedent can lag behind state law developments -- developments that the district courts may be nimble enough to perceive and adopt. Additionally, much of the benefit of having a consistent Tenth Circuit-wide interpretation of a particular state's law is wasted. Other than Oklahoma, every state encompassed by the Tenth Circuit contains only one federal judicial district, and there is relatively little need for federal judges in Wyoming and Kansas to have a uniform body of New Mexico law to which to look. Last, the Court notes, respectfully, that district courts may be in a better position than the Tenth Circuit to develop expertise on the state law of the state in which they sit. Every federal judicial district in the nation, except the District of Wyoming, covers at most one state. It is perhaps a more workable design for each district court to keep track of legal developments in the state law of its own state(s) than it is for the Tenth Circuit to monitor separate legal developments in eight states. The Tenth Circuit used to follow this rationale in applying a clearly erroneous standard of review to district judge decisions of state law with no controlling state Supreme Court precedent. See Weiss v. United States, 787 F.2d 518, 525 (10th Cir. 1986); Rawson v. Sears, Roebuck, & Co., 822 F.2d 908, 923 (10th Cir. 1987)(McKay, J., dissenting)(collecting cases). Since the mid-1980s, however, the Tenth Circuit has abandoned that rationale and applied a de novo standard of review to district judge decisions applying state law with no governing state Supreme Court precedent. See Rawson v. Sears, Roebuck, & Co., 822 F.2d at 908. See also id. at 923 (McKay, J., dissenting)(noting that the majority had abandoned the "sanctified" clearly erroneous standard or, the "so-called local-judge rule" in its analysis). The Court regrets the Tenth Circuit's retreat from the clearly erroneous standard.

Having outlined the relevant considerations, the Court thinks the proper stance on vertical stare decisis in the context of federal court interpretations of state law is as follows: the Tenth Circuit's cases are binding as to their precise holding -- what the state law was on the day the opinion was published -- but lack the positive precedential force that its cases interpreting a federal statute or the Constitution of the United States of America possess. A district court considering a state law issue after the publication of a Tenth Circuit opinion on point may not

come to a contrary conclusion based <u>only</u> on state court cases available to and considered by the Tenth Circuit, but it may come to such a conclusion based on intervening state court cases.

When interpreting state law, the Tenth Circuit does not and cannot issue a case holding that *x* is the law in New Mexico; it holds that the <u>proper interpretation</u> of New Mexico law, at the time the opinion is released, is *x*. Its holdings are descriptive, not prescriptive -- interpretive, not normative. Because federal judicial opinions lack independent substantive force on state law issues, but possess such force regarding federal law issues, the Court thinks the following is not an unfair summary of the judicial interpretive process: (i) when interpreting federal law, the federal appellate courts consider the existing body of law, and then issue a holding that both reflects and influences the body of law; that holding subsequently becomes a part of the body of law; but (ii) when interpreting state law, the federal appellate courts consider the existing body of law, and then issue a holding that only reflects the body of law; that holding does not subsequently become a part of the body of law. The federal district courts are bound to conclude that the Tenth Circuit's reflection of the then-existing body of law was accurate. The question is whether they should build a doctrine atop the case and use the existence of the Tenth Circuit's case to avoid any responsibility to independently consider the whole body of state law that exists when the time comes that diversity litigants raise the issue in their courtrooms. Giving such effect to the Tenth Circuit's interpretations of state law is at tension with <u>Erie</u>, giving independent substantive effect to federal judicial decisions -- <u>i.e.</u>, applying federal law -- in a case brought in diversity.

The purpose of <u>Erie</u> is well-known and simple, and the Court should not complicate it beyond recognition: it is that the same substantive law governs litigants' cases regardless whether they are brought in a federal or state forum. For simplicity's sake, most courts have settled on the formulation that "the federal court must attempt to predict how the states' highest court would rule if confronted with the issue." <u>Moore's</u> § 124.22[3] (citing <u>Comm'r v. Estate of Bosch</u>, 387 U.S. at 465 ("[A]n intermediate appellate state court [decision] is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.")(citation and internal quotation marks omitted). This statement may not be the most precise formulation if the goal is to ensure identical outcomes in state and federal court -- the Honorable Milton I. Shadur, United States District Judge, looks to state procedural rules to determine in which state appellate circuit the suit would have been filed were it not in federal court, and then applies the state law as that circuit court interprets it, <u>see</u> <u>Abbott Laboratories v. Granite State Ins. Co.</u>, 573 F. Supp. 193, 196-200 (N.D. Ill. 1983)(noting that the approach of predicting the state supreme court's holdings will often lead to litigants obtaining a different result in federal court than they would in state court, where only the law of the circuit in which they filed -- and certainly not nonexistent, speculative state supreme court law -- governs) -- but it is a workable solution that has achieved consensus. <u>See</u> <u>Allstate Ins. Co. v. Menards, Inc.</u>, 285 F.3d 630, 637 (7th Cir. 2002)("[W]e adhere today to the general rule, articulated and applied throughout the United States, that, in determining the content of state law, the federal courts must assume the perspective of the highest court in that state and attempt to ascertain the governing substantive law on the point in question."). This formulation, built out of ease-of-use, does not relieve courts of their Supreme Court-mandated obligation to consider state appellate and trial court decisions. To the contrary, even non-judicial writings by influential authors, statements by state supreme court justices, the closeness of the vote on a prior case addressing the issue, and personnel

changes on the court -- considerations that would never inform a federal court's analysis of federal law -- may validly come into play. The question is whether the district courts must abdicate, across-the-board, the "would decide" aspect of the <u>Erie</u> analysis to their parent appellate courts when the Court of Appeals has declared an interpretation of state law.

The <u>Erie</u> doctrine results in federal cases that interpret state law withering with time. While cases interpreting federal law become more powerful over time -- forming the groundwork for doctrines, growing upward from one application (Congress may create a national bank) to many (Congress may set quotas on wheat-growing for personal consumption), expanding outward from the general (states must grant criminal jury trials) to the specific (the jury need not be twelve people, nor must it be unanimous) -- federal cases interpreting state law often become stale. New state court cases -- even when not directly rebuking the federal court's statement of law -- alter the common-law legal landscape with their dicta, their insinuations, and their tone. The Supreme Court, which picks its cases sparingly and for maximum effect, almost never grants certiorari to resolve issues of state law.

The Court's views on <u>Erie</u>, of course, mean little if the Tenth Circuit does not agree. In <u>Wankier v. Crown Equipment Corp.</u>, the Tenth Circuit said that,

> [w]here no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do. In performing this ventriloquial function, however, the federal court is bound by ordinary principles of *stare decisis*. Thus, when a panel of this Court has rendered a decision interpreting state law, that interpretation is binding on district courts in this circuit, and on subsequent panels of this Court, unless an intervening decision of the state's highest court has resolved the issue.

<u>Wankier v. Crown Equip. Corp.</u>, 353 F.3d 862, 866 (10th Cir. 2003)(McConnell, J.). From this passage, it seems clear the Tenth Circuit permits a district court to deviate from its view of state law only on the basis of a subsequent case "of the state's highest court." <u>The American Heritage Dictionary of the English Language</u> 1402 (William Morris ed., New College ed. 1976)(defining "unless" as "[e]xcept on the condition that; except under the circumstances that"). A more aggressive reading of the passage -- namely the requirement that the intervening case "resolv[e] the issue" -- might additionally compel the determination that any intervening case law must definitively and directly contradict the Tenth Circuit interpretation in order to be considered "intervening."

It is difficult to know whether Judge McConnell's limitation of "intervening decision" to cases from the highest state court was an oversight or intentional. Most of the Tenth Circuit's previous formulations of this rule have defined intervening decisions inclusively as all subsequent decisions of "that state's courts," a term which seems to include trial and intermediate appellate courts. Even <u>Koch v. Koch Industries, Inc.</u>, 203 F.3d 1202, 1231 (10th Cir. 2000), the primary authority upon which <u>Wankier v. Crown Equipment Corp.</u> relies, uses the more inclusive definition. In fact, <u>Wankier v. Crown Equipment Corp.</u> quotes its relevant passage:

> In the absence of intervening Utah authority indicating that a plaintiff is not required to prove a safer, feasible alternative design, we are bound to follow the

supreme court would do." <u>Wade v. EMCASCO Ins. Co.</u>, 483 F.3d at 666. <u>Accord</u> <u>Mosley v. Titus</u>, 762 F. Supp. 2d at 1332 (citation omitted); <u>Rimbert v. Eli Lilly & Co.</u>, 577 F. Supp. 2d 1174, 1188-89 (D.N.M. 2008)(Browning, J.)(quoting <u>Wade v. EMCASCO Ins. Co.</u>, 483 F.3d at 665-66).

## <u>ANALYSIS</u>

The Court concludes that it is not futile for Walker to amend her Complaint, because <u>Raskob</u> allows her to sue Great West. Accordingly, the Court will grant the Motion. In <u>Raskob</u>, the Supreme Court of New Mexico considered whether a car accident victim could directly sue the injurer's insurer. <u>See</u> <u>Raskob</u>, 1998-NMSC-045, ¶ 1, 970 P.2d at 580. According to that court, "[t]he general rule is that there is no privity between an injured party and the insurer of the

_____

rule of *Allen* [v. Minnstar, Inc., 8 F.3d 1470 (10th Cir. 1993), a Tenth Circuit case interpreting an issue of Utah law], as was the district court. "Following the doctrine of stare decisis, one panel of this court must follow a prior panel's interpretation of state law, absent a supervening declaration to the contrary by that state's courts or an intervening change in the state's law." Koch v. Koch Indus., Inc., 203 F.3d at 1231.

Wankier v. Crown Equip. Corp., 353 F.3d at 867.

Regardless whether the decision to limit the intervening authority a district court can consider was intentional or not, the Tenth Circuit has picked it up and run with it. In Kokins v. Teleflex, Inc., the Tenth Circuit, quoting Wankier v. Crown Equipment Corp., refused to consider an opinion from the Court of Appeals of Colorado holding directly the opposite of an earlier Tenth Circuit interpretation of Colorado law. See Kokins v. Teleflex, Inc., 621 F.3d 1290, 1297 (10th Cir. 2010)(Holmes, J.)("[T]he Colorado Court of Appeals decided *Biosera*[, Inc. v. Forma Scientific, Inc., 941 P.2d 284 (Colo. Ct. App. 1998)], so it is not an 'intervening decision of the state's *highest court*.'")(emphasis in original)(quoting Wankier v. Crown Equip. Corp., 353 F.3d at 866).

The Tenth Circuit has set forth a stringent restriction on its district courts' ability to independently administer the Erie doctrine. More importantly, the Tenth Circuit's view may be at tension with the above-quoted Supreme Court precedent, as well as its own prior case law. Moore's lists the Tenth Circuit as having been, at one time, a "court[ that] hold[s] that a prior federal appellate decision [interpreting state law] is persuasive." Moore's § 124.22[4] (citing State Farm Mut. Auto. Ins. Co. v. Travelers Indem. Co., 433 F.2d 311, 312 (10th Cir. 1970)). Still, the Court is bound to abide by the Tenth Circuit's interpretation of Erie.

negligent defendant in the absence of a contractual provision or statute or ordinance to the contrary." 1998-NMSC-045, ¶ 3, 970 P.2d at 581. Nevertheless, "where the insurance coverage is mandated by law for the benefit of the public, generally the insurance company *is* a proper party." 1998-NMSC-045, ¶ 3, 970 P.2d at 581 (emphasis in original). Thus, "joinder will be permitted if 1) the coverage was mandated by law, 2) it benefits the public, and 3) no language of the law expresses an intent to deny joinder." 1998-NMSC-045, ¶ 3, 970 P.2d at 581.

Here, Great West plausibly meets those three requirements. First, Spina and Valley Express are North Dakota residents, and North Dakota law mandates insurance coverage for both residents and nonresidents. See N.D. Cent. Code §§ 39-16-05(1)-(2); 39-16.1-10 to -11; Tr. at 9:2-4 (Beaulieu)(conceding that North Dakota Law requires coverage). The Court does not read Raskob to mean that joinder is permitted only if New Mexico law mandates the coverage. There is no language limiting the first prong -- or the test in general -- to New Mexico law. To the contrary, the language is framed generally. See Raskob, 1998-NMSC-045, ¶ 3, 970 P.2d at 581 ("[W]here the insurance coverage is mandated by law . . ."). That the NMFRA was "[c]entral" in Raskob does not point to a contrary conclusion. Raskob, 1998-NMSC-045, ¶ 2, 970 P.2d at 581. Raskob's discussion of the NMFRA arose from the parties' disagreement whether the NMFRA implicitly barred joinder. See 1998-NMSC-045, ¶ 3, 970 P.2d at 581. There is no language from the opinion suggesting that the Supreme Court of New Mexico, in discussing the NMFRA, ruled that the NMFRA must mandate coverage for a direct claim against an insurer to lie. See 1998-NMSC-045, ¶¶ 3-8, 970 P.2d at 581-82. Moreover, should the Court read the decision in a contrary manner, New Mexico victims might be deprived of a Raskob action for any out-of-state commercial vehicles governed by other insurance laws. Because the Supreme Court of New Mexico is often animated to protect its accident victims in insurance cases, the Court concludes

that the Supreme Court of New Mexico would not so limit Raskob.  See, e.g., Hovet v. Allstate Ins. Co., 2004-NMSC-010, ¶¶ 9-22, 89 P.3d 69 72-76 (holding that accident victims can sue third-party insurance carriers under the New Mexico Unfair Claims Practices Act, § 59A-16-20); State Farm Mut. Auto. Ins. Co. v. Ballard, 2002-NMSC-030, ¶ 19, 54 P.3d 537, 542  (eschewing New Mexico's typical lex loci contractus rule when interpreting an automobile insurance contract to invalidate a provision unfavorable to an accident victim).

Even if the Court read Raskob to mean that New Mexico law had to mandate the insurance coverage for an action against the insurer to lie, the Court would still conclude that Walker may sue Great West, because the NMFRA mandates the vehicle at issue to have insurance coverage.  Generally speaking the NMFRA mandates insurance coverage for vehicles operated and driven in New Mexico.  See N.M. Stat. Ann. § 66-5-205(A)-(B).  It is true that the NMFRA exempts certain commercial motor vehicles from its scope, but those vehicles are exempted only if they are covered by another "motor vehicle insurance policy . . . equivalent coverage or other form of financial responsibility."   N.M. Stat. Ann. § 66-5-207.  Thus, the NMFRA requires coverage for all commercial motor vehicles.  Should the commercial vehicle be registered out of state, it must have insurance in compliance with the laws of any other jurisdiction in which it is registered, or else it is not exempt, and then must have insurance in compliance with the NMFRA.  Either way, New Mexico law requires insurance.

Because the NMFRA mandates coverage, the remaining two prongs are satisfied, as they were in Raskob.  The NMFRA is meant to benefit the public.  See Raskob v. Sanchez, 1998-NMSC-045, ¶ 2, 970 P.2d at 581 ("[The NMFRA's] statement of legislative purpose reflects the view that the required automobile liability insurance is for the benefit of the public generally.").  Although the New Mexico Legislature has since slightly altered the NMFRA's stated legislative

purpose,[9] the Supreme Court of New Mexico has concluded that such changes do not affect its

Raskob holding.  See Martinez v. Reid, 2002-NMSC-015, ¶ 11, 46 P.3d 1237, 1240 ("We will

not imply from the repeal of these provisions of the [NMFRA] that the legislature intended to

negate joinder, without express language so stating.").  Similarly, Raskob's third prong is met,

because there is no language in the NMFRA expressing an intent to deny joinder.  See Raskob,

1998-NMSC-045, ¶¶ 4-7, 970 P.2d at 581-82 ("There is no language in the Mandatory Financial

Responsibility Act that negates the joinder of Allstate as a party defendant. . . .  To the contrary,

the Act effective at the time this suit arose manifests an intent that Allstate is a proper party.").[10]

See also Martinez v. Reid, 2002-NMSC-015, ¶ 11, 46 P.3d at 1240 ("There being no express

language in the [NMFRA] denying joinder, we reject State Farm's argument that it is not a

proper party to this lawsuit.").[11]

---

[9]In relevant part, the New Mexico Legislature deleted the following sentence from the NMFRA's purpose: "'It is the intent that the risks and financial burdens of motor vehicle accidents be equitably distributed among all owners and operators of motor vehicles within the state.'"  Martinez v. Reid, 2002-NMSC-015, ¶ 10, 46 P.3d 1237, 1240 (quoting N.M. Stat. Ann. § 66-5-201.1 (repealed 1998)).

[10]The Supreme Court of New Mexico has found the following language from the New Mexico Tort Claims Act sufficient to express an intent to deny joinder:  "'No action brought pursuant to the provisions of the Tort Claims Act shall name as a party any insurance company insuring any risk for which immunity has been waived by that [A]ct.'"  1998-NMSC-045, ¶ 4, 970 P.2d at 581 ((quoting N.M. Stat. Ann. § 414-17(C)).  See also England v. New Mexico State Highway Commission, 1978-NMSC-005, ¶ 3, 575 P.2d 96, 99.

[11]That certain commercial motor vehicles are exempted from the NMFRA does not express an intent to deny joinder as to insurance companies insuring those motor vehicles.  In Martinez v. Reid, the Supreme Court of New Mexico held that the test used in Raskob "requires express language" in the relevant statute "denying joinder." 2002-NMSC-015, ¶ 11, 46 P.3d at 1240.  The NMFRA's motor vehicle exemption provisions have no language about joinder or insurance suits, see N.M. Stat. Ann. § 66-5-207, and the language therein is a far cry from the express language denying joinder that the Supreme Court of New Mexico found sufficient in England v. New Mexico State Highway Commission, see supra n.10 (citing Raskob 1998-NMSC-045, ¶ 4, 970 P.2d at 581).

Even if the NMFRA does not mandate coverage, however, the same result lies. The Court applies New Mexico law, as New Mexico is the location of the tort, and the parties agree that New Mexico law applies. See Abraham v. WPX Energy Production, LLC, 20 F. Supp. 3d 1244, 1265 (D.N.M. 2014)(Browning, J.)(noting that New Mexico "courts follow the doctrine of *lex loci delicti commissi*")(italics in original); Joint Status Report at 2 (stipulating that the tort occurred in New Mexico and that New Mexico substantive law applies). Thus, under New Mexico law, a Raskob action exists, but, should the NMFRA not apply, the Raskob action requires the Court to look at whether North Dakota law: (i) mandates the coverage, (ii) was meant to benefit the public, and (iii) no language of the law expresses an intent to deny joinder. See Raskob, 1998-NMSC-045, ¶ 3, 970 P.2d at 581. As already determined, North Dakota law mandates that Valley Express and Spina have coverage. See supra, 22. That law's purpose is to protect the public. See Hughes v. State Farm Mut. Auto. Ins. Co., 236 N.W. 2d 870, 882 (N.D. 1975)("The basic purpose for the Legislature's enactment of financial responsibility laws was to protect innocent victims of motor vehicle accidents from financial disaster.").[12] Finally, the parties do not point to -- and the Court does not independently find -- any language in the statute expressly disavowing joinder. See N.D. Cent. Code §§ 39-16-01- to -37; 39-16.1-1 to -23. Accordingly, Great West is a proper party, and the Court will allow the amendment to name it as a Defendant.

---

[12]Spina and Valley Express argue that there is no indication that the North Dakota Legislature and the New Mexico Legislature had the same purpose of protecting the public when they passed their respective acts. See Tr. at 7:16-8:2 (Beaulieu)(citing Dvorak v. American Family Mut. Ins. Co., 508 N.W. 2d 329, 331 (N.D. 1993)("Dvorak")). Hughes v. State Farm Mut. Auto. Ins. Co.'s holding, however, demonstrates the contrary proposition. See supra at 25. Dvorak is inapposite, because its holding merely disavows a Raskob action under North Dakota law. See Dvorak, 508 N.W. 2d at 331 ("Absent a clause in the insurance contract bestowing the right to bring a direct action against the insurer, an injured party's claim must be asserted against the tortfeasor."). The Court must apply New Mexico law, however, so Dvorak has no force here. See supra at 24-25.

Finally, the Court notes that its ruling does not create any more complications than any other Raskob case would create.  It is very likely that Court will bifurcate the claim against Great West from the claims brought against Spina and Valley Express.  Likely, the Raskob claim will never be litigated.  Great West will get a release when the tort claim against Spina and Valley Express is settled.  While allowing the Raskob claim may be unnecessary, it does not overcomplicate the case.

**IT IS ORDERED** that the Plaintiff's Motion to Amend Complaint for Personal Injuries and Damages, filed February 3, 2018 (Doc. 23), is granted.  Plaintiff Shirley Walker may amend her Complaint for Personal Injuries and Damages (First Judicial District Court, County of Santa Fe, State of New Mexico), filed December 23, 2016, filed in federal court September 29, 2017 (Doc. 1-1) to add Great West Casualty Company as a defendant.  The Court orders the Defendants to show cause within ten days of this Memorandum Opinion and Order's entrance why it should not dismiss this case for lack of subject-matter jurisdiction.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Shavon M. Ayala
Ayala P.C.
Albuquerque, New Mexico

--and--

Anthony James Ayala
Law Offices of Anthony James Ayala
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Raul Sedillo
Alison Beaulieu
Butt Thornton & Baehr PC
Albuquerque, New Mexico

      *Attorneys for the Defendants*