# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

SHIRLEY J. WALKER,

      Plaintiff,

vs.

                                     No. CIV 17-0991 JB\SCY

GREGORY J. SPINA, VALLEY
EXPRESS, INC., and GREAT WEST
CASUALTY COMPANY,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) Defendants' Motion to Dismiss for Plaintiff's Abuses of the Discovery Process, filed July 27, 2018 (Doc. 59)("Motion"); and (ii) the Plaintiff's Response to Defendants Motion to Dismiss for Plaintiff's Abuses of the Discovery Process, filed August 4, 2018 (Doc. 62)("Response"). The primary issues are whether: (i) the Court should dismiss Plaintiff Shirley Walker's claims against the Defendants, because, among Walker's Answer to Defendants Gregory J. Spina and Valley Express, Inc.'s First Set of Interrogatories to Plaintiff Shirley J. Walker, filed June 27, 2018 (Doc. 59-1)("First Interrogatories Answer"); the First Supplement Answers of July 3, 2017, to Defendants Gregory J. Spina and Valley Express, Inc.'s First Set of Interrogatories to Plaintiff Shirley J. Walker, filed July 27, 2018 (Doc. 59-2)("First Supp. Answers"); the Deposition of Shirley J. Walker (taken August 28, 2017), filed July 27, 2018 (Doc. 59-3)("Walker Depo."); the Deponent Signature/Correction Page (dated October 5, 2017), filed July 27, 2018 (Doc. 59-4)("Correction Page"); and the Response, Walker provides inconsistent answers about her injuries, particularly whether her injuries prevented her from participating in the Rio Arriba County Local Senior Olympics and New Mexico State Senior

Olympics (jointly, "Senior Olympics")[1] for 2016 and 2017; and (ii) whether the Court should sanction the Defendants for bringing the Motion. While Walker's inconsistencies prejudice the Defendants and disrupt the judicial process, the inconsistencies do not substantially prejudice the Defendants or substantially interfere with the judicial process. Walker's culpability level, although difficult to determine, does not rise to the level warranting dismissal. The Court did not warn Walker that it might sanction her actions by dismissing her claims, and lesser actions would penalize Walker for her inconsistencies. Accordingly, the Court will deny the Defendants' Motion. Walker made, however, inconsistent statements, without explaining why she did so or correcting all of the inconsistencies. The Court, thus, will not require the Defendants to pay Walker's attorneys' fees.

## FACTUAL BACKGROUND

The Court recited this case's facts and early procedural history in its Memorandum Opinion and Order at 2-3, No. CIV 17-0991 JB/SCY, 2018 WL 4100944, at *1. The Court incorporates that recitation here.

> The Court takes its facts from Walker's Complaint for Personal Injuries and Damages (First Judicial District Court, County of Santa Fe, State of New Mexico), filed December 23, 2016, filed in federal court September 29, 2017 (Doc. 1-1)("Complaint"). The Court provides these facts for background. It does not adopt them as the truth, and it recognizes that the facts are largely Walker's version of events.

---

[1]New Mexico Senior Olympics **Summer Games** features over 90 events in 23+ different sports. There are 130+ communities and 22 Local Game Sites across the state encouraging a healthy lifestyle in mature adults 50+ and we encourage our State Senior Olympians to compete with their respected local Senior Games, but all sports/events are open to out-of-state athletes and do not require you to qualify thru locals.

New Mexico Senior Olympics, http://nmseniorolympics.org/ (emphasis in original).

On July 23, 2015, Defendant Gregory J. Spina was speeding on U.S. Highway 84/285 in a commercial vehicle that Defendant Valley Express, Inc. owned. See Complaint ¶¶ 6-7, at 2. As Spina approached a red light, he realized that he was going too fast to brake, so, instead of hitting the vehicles stopped side by side in front of him, he attempted to slip between them. See Complaint ¶ 7, at 2. Rather than avoiding the stopped vehicles, however, he sideswiped both of them, causing both cars to roll into the intersection. See Complaint ¶ 7, at 2-3. Walker was driving one of the sideswiped vehicles and, because of Spina's actions, suffered physical and emotional injuries. See Complaint ¶¶ 7, 11, at 2-4.

MOO at 2, 2018 WL 4100944, at *1.

Walker, who was eighty-one at the time of the collision with Spina, was seen at Presbyterian Hospital after the collision, see Response ¶ 1, at 2 (citing ED Provider Notes by Margie Teng at 1 (dated July 27, 2016), filed August 4, 2018 (Doc. 62)), and she continues to receive treatment for her injuries, see Response ¶ 1, at 2 (citing Arjan Khalsa Notes at 1-2, filed August 4, 2018 (Doc. 62)).[2] Dr. Jean A. Hamilton, a psychiatrist, and Michael D. Miller, a psychiatric certified nurse practitioner, diagnosed Walker with chronic post-traumatic stress disorder ("PTSD") after the collision with Spina. See Response ¶ 2, at 2 ((citing Psychiatric Evaluation by Jean A. Hamilton at 2 (dated March 20, 2017), filed August 4, 2018 (Doc. 62); Medication Management by Michael D. Miller at 2 (dated January 15, 2018), filed August 4, 2018 (Doc. 62)).[3]

Dr. Ellen Marder, a physician, recorded in her medical records for Walker that, on July 7, 2016, Walker reported training for the Senior Olympics. See Motion ¶ 12, at 3-4 (asserting this

---

[2]The Defendants do not respond to the alleged fact in the text, but nothing in the record suggests that the statement is not accurate.

[3]The Defendants do not respond to the alleged fact in the text, but the record supports the fact's veracity.

fact)(citing Progress Notes by Ellen Marder at 1 (dated July 7, 2016), filed July 27, 2018 (Doc. 59-5)("Dr. Marder Progress Notes").[4]  Dr. Christopher Lyons, a neurologist, recorded in his medical records for Walker that Walker reported hurting her knee in March, 2016, "while running."  Motion ¶ 13, at 4 (asserting this fact)(citing Progress Notes by Christopher E. Lyons at 1 (dated July 21, 2016), filed July 27, 2018 (Doc. 59-6)("Dr. Lyon Progress Notes")).[5]  Records from the New Mexico State Senior Olympics reflect that Walker registered for the 2017 New Mexico State Senior Olympics.  See Motion ¶ 14, at 4 (asserting this fact)(citing 2017 Senior Olympics Summer Games Entry Form, filed July 27, 2018 (Doc. 59-8)); Response ¶ 16, at 6 (admitting this fact). Records from the 2016 Rio Arriba County Local Senior Olympics and 2016 New Mexico State Senior Olympics reflect that Walker "registered for and competed in the Rio Arriba local Senior Olympics and registered for the 2016 New Mexico Senior Olympics."  Motion ¶ 15, at 4 (admitting this fact)(citing Senior Olympics Summer Games Event Registration at 1-2, filed July 27, 2018 (Doc. 59-8); Work Order for Senior Olympic State Games at 1, filed July 27, 2018 (Doc. 59-8); Rio Arriba County Senior Olympics, Local Qualifying Games at 1 (dated May 18, 2016), filed July 27, 2018 (Doc. 59-8); 2016 Local Game Result Form at 1, filed July 27, 2018 (Doc. 59-8); New Mexico Senior Olympics 2016 Final On-Site Sheets at 1 (dated June 29, 2016), filed July 27, 2018 (Doc. 59-8); Senior Olympics Summer Games Swimming Check-in Sheet at 1 (dated July 15, 2016), filed July 27, 2018 (Doc. 59-8); 2017 Senior Olympics Summer Games Entry Form at

---

[4]Walker does not respond to the alleged fact in the text, but the record supports that the fact is accurate.

[5]Walker does not respond to the alleged fact in the text, but the record supports the fact's veracity.

1, filed July 27, 2018 (Doc. 59-8)); Response ¶ 17, at 6 (admitting this fact). Walker did not sign

in at the 2016 New Mexico State Senior Olympics, because she did not participate in the 2016

New Mexico State Senior Olympics. See Response ¶ 7, at 3.[6]

## PROCEDURAL BACKGROUND

> Walker sues Spina and Valley Express, asserting negligence,[7] and sues
> Defendant Dixon Insurance Company, asserting that she has a claim for benefits
> against it under the [New Mexico Financial Responsibility Act, N.M. Stat. Ann.
> §§ 66-5-201 to 239] and Raskob[v. Sanchez, 1998-NMSC-045, 970 P.2d 580] for
> injuries that Spina's negligence caused. See Complaint ¶¶ 8-13, at 3-5. Spina and
> Valley Express removed the case to federal court on the basis of diversity
> jurisdiction. See Notice of Removal to the United States District Court for the
> District of New Mexico at 1, filed September 29, 2017 (Doc. 1)("Notice of
> Removal"). . . .

MOO at 2-3, 2018 WL 4100944, at *1. The Amended Complaint at 1, filed August 28, 2018

(Doc. 68), terminated Dixon Insurance Company as a Defendant and added, in its place, Great

West Casualty Company.

On April 19, 2017, Walker filed the First Interrogatories Answer. See Motion ¶ 1, at 2

(asserting this fact)(citing First Interrogatories Answer); Response ¶ 3, at 2 (admitting this fact).

In the First Interrogatories Answer, Walker alleges that, after the collision with Spina, she could

not maintain her active lifestyle or train for or participate in the Senior Olympics. See Motion ¶ 2,

at 2 (asserting this fact)(citing First Interrogatories Answer ¶ 17, at 10; id. ¶¶ 22-23, at 12-13);

Response ¶ 4, at 2 (admitting this fact). On July 3, 2017, Walker provided Spina with the First

Supp. Answers. See Motion ¶ 3, at 2 (asserting this fact)(citing generally First Supp. Answers);

_____

[6]The Defendants do not address this fact, but the record reflects that the alleged fact in the text is accurate.

[7]Although the Complaint does not make this claim explicit, Walker presumably sues Valley Express under respondeat superior.

Response ¶ 5, at 2-3 (admitting this fact). In the First Supp. Answers, Walker reiterated that she could not continue her active lifestyle and that she could not train for or participate in the Senior Olympics. See Motion ¶ 4, at 2 (asserting this fact)(citing First Supp. Answers ¶ 17, at 13); Response ¶ 6, at 3 (admitting this fact).

During the Walker Depo., on August 28, 2017, Walker "denied participating in" or training for the Senior Olympics, Motion ¶ 5, at 3 (asserting this fact)(citing generally Walker Depo.); Response ¶ 7, at 3 (admitting this fact), and testified that participating in the Senior Olympics was her dream, see Motion ¶ 7, at 3 (admitting this fact)(citing Walker Depo. at 93:6-14; id. at 94:20-95:3; id. at 169:1-14); Response ¶ 9, at 4 (admitting this fact). In the Walker Depo., Walker also stated that she "would suffer long-term permanent injuries." Motion ¶ 6, at 3 (asserting this fact)(citing Walker Depo. at 105:11-12); Response ¶ 8, at 3-4 (admitting this fact). In the Walker Depo., Walker denied training for or participating in the Senior Olympics. See Motion ¶ 8, at 3 (asserting this fact)(citing Walker Depo. at 102:25-103:6); Response ¶ 10, at 4-5 (admitting this fact). Walker stated that she did not "report to her medical provider" that "she was training for the Senior Olympics or that she injured her knee while training." Motion ¶ 9, at 3 (asserting this fact)(citing Walker Depo. at 103:7-14); Response ¶ 11, at 5 (admitting this fact). On October 5, 2017, Walker provided the Correction Page. See Motion ¶ 10, at 3 (asserting this fact)(citing Correction Page at 2); Response ¶ 12, at 5 (admitting this fact).

The Defendants discovered documents that reflect "that she registered and competed at the local and state level of the Senior Olympics in 2016 and 2017, earning awards at the state competition," and the documents reflect that Walker registered for and competed in the 2017 Rio Arriba County Local Senior Olympics and 2017 New Mexico State Senior Olympics. See Motion

¶ 15, at 4 (citing Senior Olympics Summer Games Event Registration at 1-2; Work Order for Senior Olympic State Games at 1; Rio Arriba County Senior Olympics, Local Qualifying Games at 1; 2016 Local Game Result Form at 1; New Mexico Senior Olympics 2016 Final On-Site Sheets at 1; Senior Olympics Summer Games Swimming Check-in Sheet at 1; 2017 Senior Olympics Summer Games Entry Form at 1; Rio Arriba County Senior Olympic Registration Form at 1 (dated February 10, 2016), filed July 27, 2018 (Doc. 59-9); Rio Arriba County Local Qualifying Games at 1-2, filed July 27, 2018 (Doc. 59-9); Rio Arriba County Senior Olympics Registration Form at 1 (dated March 30, 2017), filed July 27, 2018 (Doc. 59-9); Rio Arriba County Local Qualifying Games at 1, filed July 27, 2018 (Doc. 59-9); 2017 Summer Games Unofficial Results -- Rio Arriba at 1, filed July 27, 2018 (Doc. 59-9); Letter from Cecilia Acoste to Allison M. Beaulieu at 1 (dated September 15, 2017), filed August 20, 2018 (Doc. 64-2); 2017 New Mexico Senior Olympics On-Site Sheets at 1-4 (dated July 8, 2017), filed August 20, 2018 (Doc. 64-3)).[8]

1. **The Motion.**

The Defendants argue that the Walker Depo., First Interrogatories Answer, and First Supp. Answers contradict information obtained through discovery -- whether Walker participated in the Senior Olympics. See Motion at 1-2. The Defendants note that Walker's injuries from the collision with Spina allegedly prevented her from participating in or training for the Senior Olympics. See Motion at 1-2. The Defendants explain that, in the initial discovery and in the Walker Depo., Walker stated that she could not participate in the Senior Olympics, but that later discovery reveals that Walker participated in the Senior Olympics. See Motion at 2-3. The

---

[8]Walker does not respond to this alleged fact in the text, but the record supports the fact as the Defendants stated it.

Defendants aver that Walker's contradictions pervade the case and merit dismissal as a sanction, because the Defendants cannot determine her claims' validity. <u>See</u> Motion at 2.

In explaining Walker's contradictions, the Defendants note that the Correction Page did not cure the false statements in the Walker Depo but rather elaborated on the inconsistencies. <u>See</u> Motion ¶ 10, at 3. The Defendants further argue that Andrew Sanchez, a physical therapist, recorded in his medical records for Walker that Walker reported injuring her knee while "power walking." Motion ¶ 12, at 3 (asserting this fact)(citing Patient Information at 1, filed July 27, 2018 (Doc. 59-7)("Patient Information")).

The Defendants argue that, to warrant dismissal, a party must act willfully, in bad faith, or with fault. <u>See</u> Motion at 4 (citing <u>Ehrenhaus v. Reynolds</u>, 965 F.2d 916, 920 (10th Cir. 1992)). According to the Defendants, <u>Ehrenhaus v. Reynolds</u> provides the test for determining appropriate discovery sanctions and, according to the Defendants, Walker's actions warrant dismissal under the test. <u>See</u> Motion at 5. First, according to the Defendants, Walker's actions have highly prejudiced the Defendants, because she stated to the Defendants and to physicians "that her injuries have severely impacted her qualify of life," but the Defendants discovered documents that contradict her allegations. Motion at 6. <u>See</u> Motion at 5-9. The Defendants allege that, unless Walker is sanctioned, they will be "forced to defend a fraudulent lawsuit pervaded by false evidence." Motion at 9. Second, according to the Defendants, Walker's falsities "fundamentally interfere . . . with the judicial process." Motion at 10. According to the Defendants, Walker's Correction Page is an attempt to cover her lies, and, by lying to her physicians, Walker increases the damages that she alleges. <u>See</u> Motion at 11. Third, the Defendants contend that Walker acted intentionally, as evidenced by her lies under oath and her Correction Page. <u>See</u> Motion at 11.

Fourth, the Defendants admit that the Court has not warned Walker that her actions will result in a sanction, but the Defendants contend that a warning is not a prerequisite to sanctions when the improper action, like Walker's, is lying under oath. <u>See</u> Motion at 12. Fifth, the Defendants aver that no lesser sanction than dismissal will be effective, because, unless the case is dismissed, the Defendants must defend a case based on false evidence. <u>See</u> Motion at 12-13. The Defendants request that, if the Court does not dismiss the case, the Court exclude Walker's experts, exclude evidence about injuries to Walker's left knee, instruct the jury that Walker perjured herself during discovery, and/or exclude evidence of pain and suffering, loss of enjoyment of life, and/or future medical treatment. <u>See</u> Motion at 13.

      2.    **<u>The Response</u>.**

Walker begins her response by complaining that Spina and Valley Express, Inc., initially named Dixon Insurance Company as their insurer, although Great West Casualty Company insured them, and that the Defendants filed a motion in limine about another automobile accident in which Walker was involved as evidence that Walker continued to drive after the collision with Spina, although Walker admitted, in the Walker Depo., that she continued to drive following the collision with Spina. <u>See</u> Response at 1-2. Walker contends that the Defendants misrepresented the facts underlying the Motion and requests that the Court sanction the Defendants, including imposing on them Walker's attorney's fees and costs for the Motion. <u>See</u> Response at 2.

In response to the Defendants' allegations, Walker makes additional factual allegations, some of which dispute the Defendants' arguments. <u>See</u> Response ¶ 7, at 3; <u>id</u>. ¶ 9, at 4; <u>id</u>. ¶ 11, at 5; <u>id</u>. ¶ 12, at 5; <u>id</u>. ¶ 14, at 5-6; <u>id</u>. ¶ 16, at 6; <u>id</u>. ¶ 17, at 6. Walker argues that she clarified, in the Correction Page, that she applied to participate in and swam one or two laps at the 2017 New

Mexico State Senior Olympics.  See Response ¶ 7, at 3.  Additionally, Walker asserts that she was not hurt while training for the Senior Olympics and, after the collision with Spina, continued to hope that she would participate in the Senior Olympics.  See Response ¶ 11, at 5.  Walker denies that she "trained" for the Senior Olympics, because her activities following the accident did not constitute "training" for her.  See Response ¶ 14, at 5-6.  Walker clarifies that she swam after the collision with Spina, but she did not train for the Senior Olympics, as training included swimming "up to sixteen laps" and activities, like "kayaking, track, dancing," other than swimming. Response ¶ 9, at 4 (citing generally Affidavit of Shirley J. Walker (dated August 1, 2018), filed August 4, 2018 (Doc. 62)("Walker Aff."); Walker Depo. at 59:15-61:21).  Walker asserts that she accurately stated, in the Correction Page, that she swam only one or two laps at the 2017 New Mexico State Senior Olympics.  See Response ¶ 12, at 5 (citing Correction Page at 2).  Walker notes that she paid for an application for the 2017 New Mexico State Senior Olympics but swam only one or two laps, and she "was a no show" at the 2016 New Mexico State Senior Olympics. Response ¶ 16, at 6 (citing Correction Page at 2).  Walker avers that she "had never denied that she was involved in" the 2016 Rio Arriba County Local Senior Olympics.  Response ¶ 17, at 6 (citing Walker Aff. ¶ 4, at 1).

According to Walker, she told her medical providers that she was active, that she planned to participate in the Senior Olympics, and that, following the collision with Spina, she experienced increased knee pain, which she exacerbated by "power walking."  Response ¶ 11, at 5 (citing Patient Information at 1).  According to Walker, Walker did not tell Sanchez how she injured her knee, but she told him that she exacerbated the injury by power walking.  See Response ¶ 14, at 5-6 (citing Patient Information at 1).  Walker alleges that she did not tell Dr. Marder that she was

training for the New Mexico Senior Olympics, <u>see</u> Response ¶ 14, at 5-6, and that she did not tell Dr. Lyons that she injured her knee while running, <u>see</u> Response ¶ 15, at 6.

In conclusion, Walker asserts that her conflicting answers "were involuntary and not intentional," and, to warrant dismissal as a sanction, a party must act with an "intent to deceive or not to comply with discovery requests." Response at 7. In her affidavit, Walker explains that she does not have dementia, but that she gets "a bit confused about dates." Walker Aff. ¶ 4, at 1.

3.     **The Reply**.

The Defendants reply that the Court should disregard the Walker Aff., because it is "self-serving." Defendants Reply in Support of Their Motion to Dismiss for Plaintiff's Abuses of the Discovery Process at 2, filed August 20, 2018 (Doc. 64)("Reply"). The Defendants argue that the Court "cannot guarantee [them] a fair trial," because Walker has provided false information under oath and obstructed discovery. Reply at 2 (citing <u>United Nuclear Corp. v. General Atomic Co.</u>, 1980-NMSC-094, ¶ 397, 629 P.2d 231, 242). The Defendants aver that the Walker Aff. is a sham, because Walker "was cross-examined regarding her testimony at which time she had the opportunity to clarify her testimony; her affidavit is not based on newly discovered evidence; and the affidavit does not seek to explain any confusion reflected in her earlier testimony." Reply at 3. The Defendants note that Walker, in the Walker Depo. "unequivocally stated" that she did not participate in the Senior Olympics. Reply at 3.

Further, according to the Defendants, the Walker Aff. does not indicate that she participated in and received awards at the 2017 Rio Arriba County Local Senior Olympics, and that she did not register for the 2015 Senior Olympics. <u>See</u> Reply at 3-4. The Defendants further note that Walker did not state in the Correction Page that she participated in the 2017 New Mexico

State Senior Olympics "by swimming one or two laps in the warmup area," and, further, according to the Defendants, she "participated and received medals" in the 2017 Rio Arriba County Local Senior Olympics. Reply at 4 (citing 2017 New Mexico Senior Olympics On-Site Sheets at 1-4).

Finally, the Defendants state that, before deposing William Patterson, the expert witness whom Walker plans to have testify about her economic damages, see Defendants' Motion to Exclude Expert Testimony of William Patterson at 1, filed August 30, 2018 (Doc. 72), the Defendants received Patterson's file for the case, which includes, on a transcript of the Walker Depo., a handwritten note, which the Defendants assume is in Walker's handwriting, see Reply at 5. The note states: "There seems to be a lot of confusion over Senior Olympic because I pd. [sic] Donations in 2015 in 2016 in 2017." Reply at 5. The Defendants read the note as suggesting that Walker did not intend to reveal her participation in the Senior Olympics. See Reply at 5.

## RELEVANT LAW REGARDING RULE 37 SANCTIONS

Rule 37(b) of the Federal Rules of Civil Procedure provides that, if a party fails to disclose or supplement information which the discovery rules require it to provide, the court "may impose other appropriate sanctions, including any of the orders listed in Rule 37(B)(2)(A)(i-vi)." Fed. R. Civ. P. 37(c)(1)(C). Those orders allow the court to impose various sanctions upon a party for failure to comply with "an order to provide or permit discovery," including: (i) ordering that designated facts be taken as established; (ii) precluding the disobedient party from supporting or opposing matters at issue, or "introducing designated matters in evidence"; (iii) "striking pleadings in whole or in part"; (iv) "staying further proceedings until the order is obeyed"; (v) dismissing the action; and (vi) "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi). "Determination of the correct sanction for a discovery violation is a fact-

specific inquiry that the district court is best qualified to make." Ehrenhaus v. Reynolds, 965 F.2d at 920. The United States of America Court of Appeals for the Tenth Circuit has noted: "Our case law makes it clear that a district judge may dismiss an action for discovery violations." Archibeque v. Atchison, Topeka & Santa Fe Ry., 70 F.3d 1172, 1174 (10th Cir. 1995). Dismissal, however, is "an extreme sanction" that is appropriate only if there has been "willful misconduct." Ehrenhaus v. Reynolds, 965 F.2d at 920 (citing Meade v. Grubbs, 841 F.2d 1512, 1520 (10th Cir. 1988); M.E.N. Co. v. Control Fluidics, Inc., 834 F.2d 869, 872-73 (10th Cir. 1987); In re Standard Metals Corp., 817 F.2d 625, 628-29 (10th Cir.)). The Supreme Court of the United States has held that "Rule 37 should not be construed to authorize dismissal of [a] complaint because of petitioner's noncompliance with a pretrial production order when it has been established that failure to comply has been due to inability, and not to willfulness, bad faith, or any fault of petitioner," and noted that a district court "possesses wide discretion to proceed in whatever manner it deems most effective" and just in the realm of discovery. Societe Internationale Pour Participations Industrielles Et Commerciales, S. A. v. Rogers, 357 U.S. 197, 212-13 (1958). Accord Archibeque v. Atchison, Topeka & Santa Fe Ry., 70 F.3d at 1174 ("Because of the harshness of dismissal, however, due process requires that the discovery violation be predicated upon 'willfulness, bad faith, or some fault of petitioner' rather than inability to comply." (quoting Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 640 (1976))).

The Tenth Circuit has held that a district court may not dismiss a complaint with prejudice as a sanction for failing to obey a discovery order without considering the non-exhaustive factors listed in Ehrenhaus v. Reynolds:

> "Before imposing dismissal as a sanction, a district court should . . . evaluate the following factors on the record: '(1) the degree of actual

prejudice to the [other party]; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.'" Gripe v. City of Enid, 312 F.3d 1184, 1187 (10th Cir. 2002)(quoting Ehrenhaus [v. Reynolds], 965 F.2d at 921). "This list," hereinafter referred to as the Ehrenhaus [v. Reynolds] factors, "is not exhaustive, nor are the factors necessarily" of equal weight. Chavez[ v. City of Albuquerque, 402 F.3d 1039, ] 1044 [(10th Cir. 2004)]. "Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction." Ehrenhaus[v. Reynolds], 965 F.2d at 921.

Procter & Gamble Co. v. Haugen, 427 F.3d 727, 738 (10th Cir. 2005).

In Archibeque v. Atchison, Topeka and Santa Fe Railway, the Tenth Circuit affirmed the order of the Honorable C. LeRoy Hansen, United States District Judge for the District of New Mexico, granting the motion to dismiss the plaintiff's complaint for failure to disclose her past medical history. See 70 F.3d at 1172. The plaintiff sought workers' compensation damages for personal injury to her back allegedly occurring at an unwitnessed work-related accident occurring in December, 1990. See 70 F.3d at 1173. The defendant requested a complete set of medical records and asked through an interrogatory the number of accidents in which she had been involved. See 70 F.3d at 1173. The Tenth Circuit noted that her responses did not mention any lower back pain before 1990; she listed only two car accidents, in 1990, and 1992, and a bicycle accident in 1987; she stated that she had not had her lower back x-rayed before the alleged work-related incident in 1990; and she stated that she had no recollection of lower back pain before the alleged 1990 incident. See 70 F.3d at 1173. When the defendant independently sought to verify her answers, it found documents proving that, for over ten years before 1990, "on over fifteen occasions, involving at least six physicians, Appellant sought treatment for a variety of lower back ailments and related symptoms." 70 F.3d at 1173. The documents revealed that she had x-rays

taken multiple times at least as far back as 1984.  See 70 F.3d at 1174.  When the defendant filed

its motion to dismiss under rule 37, asking Judge Hansen to dismiss the case for these discovery

abuses, she responded that the problems were with her tailbone, not her back, and "that her failure

to disclose her past medical history was merely oversight."  70 F.3d at 1174.  The Tenth Circuit

noted that "[s]he did not file amended interrogatory responses or an affidavit regarding her

compliance with the discovery process.  She has [not], even in her arguments to this court on

appeal, explained her conduct."  70 F.3d at 1174.  The Tenth Circuit upheld Judge Hansen's

dismissal of the case, noting:

> The district court . . . noted the degree of prejudice suffered . . . and the impact Appellant's actions had with regard to AT & SF's ability to prepare for trial. The court noted the culpability of Appellant which we described above, specifically addressing the failure to disclose, the false statements, and the court's determination as to the credibility of Appellant's statements that her failures were mere oversight. The court found that Appellant's willful conduct seriously interfered with the judicial process, and expressly stated that it had considered lesser sanctions and determined that they were not appropriate.

70 F.3d at 1175.

In Garcia v. Berkshire Life Ins. Co. of Am., 569 F.3d 1174 (10th Cir. 2009), the Tenth

Circuit upheld the district court's dismissal sanction where the district court concluded that it "was

'an especially egregious case,' finding that 'the [plaintiff's] fabrications were prepared over a

period of years and are calculating, carefully constructed, and self-serving.'"  569 F.3d at 1179

(quoting Garcia v. Berkshire Life Ins. Co. of Am., No. CIV 04-01619 LTB-BNB, 2007 WL

6757307, at *8 (D. Colo. Nov. 29, 2007)(Boland, M.J.)).  The issue litigated was whether the

plaintiff, Garcia, was entitled to full benefits from her disability policy, because she was suffering

from total disability "due to cognitive defects."  569 F.3d at 1177.  The defendant paid Garcia's

claims under protest, because during the time that she was allegedly fully impaired, she had

received her Doctor of Jurisprudence "from the University of Denver College of Law, where she was named an 'Outstanding Law Graduate,' and subsequently . . . a Masters . . . . Moreover . . . Ms. Garcia had operated a real estate business during 2002, three years after the time she had first claimed total disability." 569 F.3d at 1177. The defendant brought a motion for dismissal as a sanction for discovery abuses, "asserting that Ms. Garcia falsified or fabricated at least four documents submitted during discovery." 569 F.3d at 1177. Two of the four allegedly fabricated documents were a "smoking gun" letter that the defendant's adjuster allegedly wrote and a letter to the Colorado Board of Bar Examiners in support of her request to be allowed double time for the bar examination, which her doctor allegedly wrote. Garcia v. Berkshire Life Ins. Co. of Am., 569 F.3d at 1177-78. Both the alleged author of the smoking-gun letter and the doctor alleged to have written the letter to the bar examiners testified at the sanctions hearing, and repudiated the assertion that they authored the documents. See 569 F.3d at 1178. The Tenth Circuit noted that the district court "found Ms. Garcia's testimony at the Sanctions hearing to be 'incredible,' . . . 'refused to rely on any of it.' . . . [And] concluded that Ms. Garcia prepared fabricated evidence 'willfully, knowingly, intentionally, after careful contemplation, for self-serving purposes, and with a full understanding of the impropriety involved.'" 569 F.3d at 1177 (quoting Garcia v. Berkshire Life Ins. Co. of Am., 2007 WL 6757307, at *7-8). The Tenth Circuit agreed with the district court's dismissal, reasoning:

> Ample evidence supported the conclusion that Ms. Garcia was herself culpable for the fabrications submitted in this case. Numerous inauthentic documents were submitted over a several year period, counseling against an explanation of mistake. Moreover, the fabrications were carefully constructed to look like authentic documents. Letters were made to look as though they were printed on authentic letterhead; emails were carefully spliced together so as to appear accurate; fax banners were added to documents to disguise their origin. . . . Finally, Ms. Garcia's evasive, inconsistent answers and inability to

provide an explanation for the fabrications during the hearing cast further doubt on her accounting of events.

569 F.3d at 1181 (internal references omitted).

In <u>Maples v. Vollmer</u>, No. CIV 12-0294, 2013 WL 1009558 (D.N.M. March 5, 2013)(Browning, J.), the Court did not grant a motion to dismiss a case based upon a plaintiff's "imprecise and apparently contradictory statements in his answers to interrogatories and during his deposition." 2013 WL 1009558, at *1. The defendants asserted that the plaintiff's contradictory statements interfered with their opportunity to file a motion for summary judgment on qualified immunity "against the plaintiffs' claims of excessive force under § 1983, but the Court concluded that the plaintiffs' contradictory statements did not cause the defendants substantial, if any, prejudice. 2013 WL 1009558, at *19-20. The plaintiff had told the defendants that he "was at home the night before the arrest and on the morning of the incident, as [University of New Mexico Hospital ("UNMH")] records indicate." 2013 WL 1009558, at *19. The Court concluded that it was "not clear that, even if Maples had admitted he visited UNMH the night before the arrest, and admitted he was there because he was a suicide risk, his statements would have placed the Defendants in any better position regarding qualified immunity," and those facts would not have made the defendant Albuquerque, New Mexico Police Department officers' use of force any more reasonable in the circumstances. 2013 WL 1009558, at *20. The Court also determined that the plaintiff's statement did not substantially interfere with the judicial process, because there was no evidence that the plaintiff intended to misstate certain facts "to put him at a tactical advantage," his misstatements did not cause any delay in the judicial proceedings, and, any contradictions in his statements could be explored on cross-examination to discredit his version of the events. 2013 WL 1009558, at *21. Last, the Court concluded that the plaintiff's culpability, if any, was not

commensurate with that of the parties which the Tenth Circuit has recognized warrants dismissal of a case, because the plaintiff's statements were not carefully crafted or falsified to evade the defendants' discovery inquiries, and the plaintiff had an adequate explanation for his statements -- that he frequently visited hospitals and could not remember if the night before the incident was the same night as one of his multiple visits.  See 2013 WL 1009558, at *22-23.

## NEW MEXICO LAW REGARDING NEGLIGENCE

Generally, a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based on a standard of reasonable care, and the breach being a cause-in-fact and proximate cause[9] of the plaintiff's damages.  See Coffey v. United States, 870 F. Supp. 2d 1202, 1225 (D.N.M. 2012)(Browning, J.)(citing Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 6, 73 P.3d 181, 185-86).  "In New Mexico, negligence encompasses the concepts of foreseeability of harm to the person injured and of a duty of care toward that person."  Ramirez v. Armstrong, 1983-NMSC-104, ¶ 8, 673 P.2d 822, 825.  Generally, negligence is a question of fact for the jury.  See Schear v. Bd. of Cty Comm'rs, 1984-NMSC-079, ¶ 4, 687 P.2d 728, 729.  "A finding of negligence, however, is dependent upon the existence of a duty on the part of the defendant."  Schear v. Bd. of Cty Comm'rs, 1984-NMSC-079, ¶ 4, 687 P.2d at 729.  "Whether a duty exists is a question of law for the courts to decide."  Schear v. Bd. of Cty Comm'rs, 1984-NMSC-079, ¶ 4, 687 P.2d at 729 (citing S. Union Gas Co. v. Briner Rust Proofing

---

[9]The 2004 amendments to Uniform Instruction 13-305 eliminated the word "proximate" within the instruction.  Use Note, N.M. Rul. Amend. Civ. UJI 13-305.  The drafters added, however, that the change was "intended to make the instruction clearer to the jury and do[es] not signal any change in the law of proximate cause."  Editor's Notes, N.M. Rul. Amend. Civ. UJI 13-305 (alteration added).

Co., 1958-NMSC-123, 331 P.2d 531). Once courts recognize that a duty exists, that duty triggers "a legal obligation to conform to a certain standard of conduct to reduce the risk of harm to an individual or class of persons." Baxter v. Noce, 1988-NMSC-024, ¶ 11, 752 P.2d 240, 243.

New Mexico courts have stated that foreseeability of a plaintiff alone does not end the inquiry into whether the defendant owes a duty to the plaintiff. See Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 7, 73 P.3d at 186. New Mexico courts have recognized that, "[u]ltimately, a duty exists only 'if the obligation of the defendant [is] one to which the law will give recognition and effect.'" Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 9, 73 P.3d at 187 (alteration in original)(quoting Ramirez v. Armstrong, 1983-NMSC-104, ¶ 9, 673 P.2d at 825). To determine whether the defendant's obligation is one to which the law will give recognition and effect, courts consider legal precedent, statutes, and other principles of law. See Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 9, 73 P.3d at 186.

"As a general rule, an individual has no duty to protect another from harm." Grover v. Stechel, 2002-NMCA-049, ¶ 11, 45 P.3d 80, 84. "[C]ertain relationships, however, that give rise to such a duty [include]: (1) those involving common carriers, innkeepers, possessors of land; and (2) those who voluntarily or by legal mandate take the custody of another so as to deprive the other of his normal opportunities for protection." Grover v. Stechel, 2002-NMCA-049, ¶ 11, 45 P.3d at 84. "[W]hen a person has a duty to protect and the third party's act is foreseeable, 'such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the [person who has a duty to protect] from being liable for harm caused thereby.'" Reichert v. Atler, 1994-NMSC-56, ¶ 11, 875 P.2d 379, 382 (quoting Restatement (Second) of Torts § 449 (1964)).

"[T]he responsibility for determining whether the defendant has breached a duty owed to the plaintiff entails a determination of what a reasonably prudent person would foresee, what an unreasonable risk of injury would be, and what would constitute an exercise of ordinary care in light of all the surrounding circumstances." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 33, 73 P.3d at 194. "The finder of fact must determine whether Defendant breached the duty of ordinary care by considering what a reasonably prudent individual would foresee, what an unreasonable risk of injury would be, and what would constitute an exercise of ordinary care in light of all surrounding circumstances of the present case . . . ." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 33, 73 P.3d at 195.

"A proximate cause of an injury is that which in a natural and continuous sequence [unbroken by an independent intervening cause] produces the injury, and without which the injury would not have occurred." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 34, 73 P.3d at 195. "It need not be the only cause, nor the last nor nearest cause." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 34, 73 P.3d at 195. "It is sufficient if it occurs with some other cause acting at the same time, which in combination with it, causes the injury." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 34, 73 P.3d at 195.

## RELEVANT NEW MEXICO LAW REGARDING DAMAGES

In New Mexico, "[a] party seeking to recover damages has the burden of proving the existence of injuries and resulting damage with reasonable certainty." Sanchez v. Martinez, 1982-NMCA-168, ¶ 20, 653 P.2d 897, 902-03. An award of damages is improper if it is predicated "upon conjecture, guess, surmise or speculation." Sanchez v. Martinez, 1982-NMCA-168, ¶ 20, 653 P.2d at 902-03. The underlying theory of a damages award is making the injured party whole.

See Abbinett v. Fox, 1985-NMCA-017, ¶ 21, 703 P.2d 177, 183; Pub. Serv. Co. of N.M. v. Jasso, 1981-NMCA-112, ¶ 6, 635 P.2d 1003, 1005 ("The theory of damages in New Mexico is to make an injured party whole, not to allow him a profit on damages."). In computing damages, the object is to afford just and reasonable compensation for the injuries the party sustained. See Abbinett v. Fox, 1985-NMCA-017, ¶ 21, 703 P.2d at 183.

## ANALYSIS

The Court will deny the Defendants' Motion and Walker's request for attorneys' fees. Although Walker has not explained the reasons for her inconsistencies, her culpability does not rise to the level requiring dismissal, and other factors counsel toward allowing the case to proceed. Walker's inconsistencies prejudice the Defendants and disrupt the judicial process, but they do not do either substantially. The Court has not warned Walker that it might dismiss her claims, and lesser actions will effectively respond to Walker's inconsistencies.

The Court has noted:

> The Tenth Circuit has held that a district court may not dismiss a complaint with prejudice as a sanction for failing to obey a discovery order without considering the non-exhaustive factors listed in Ehrenhaus v. Reynolds . . . :
>
> > Before imposing dismissal as a sanction, a district court should . . . evaluate the following factors on the record: (1) the degree of actual prejudice to the [other party]; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.

ABQ Uptown, LLC v. Davide Enterprises, LLC, No. CIV 13-0416 JB/KK, 2015 WL 2225783, at *17 (D.N.M. May 4, 2015)(Browning, J.)(quoting Procter & Gamble Co. v. Haugen, 427 F.3d at 738). "Additionally, the Tenth Circuit directs district courts to only grant a default judgment on

the basis of a party's discovery abuse when 'the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits.'" ABQ Uptown, LLC v. Davide Enterprises, LLC, 2015 WL 2225783, at *17 (quoting Procter & Gamble Co. v. Haugen, 427 F.3d at 738).

Preliminarily, the Court will not invoke the sham-affidavit doctrine to disregard the Walker Aff., because the Court concludes that the doctrine does not apply to situations, as here, where the Court is not evaluating evidence.[10] Courts apply the sham-affidavit doctrine to situations involving potential sham-factual issues. See, e.g., Macias v. Sw. Cheese Co., L.L.C., No. CIV 12-0350 LH/WPL, 2014 WL 11430977, at *2 (D.N.M. June 11, 2014)(Hansen, J.)(noting that the sham-affidavit doctrine applies "[t]o determine whether a contradicting affidavit should be stricken

---

[10]The Court acknowledges and agrees with the Defendants' concern that the Walker Aff. meets the requirements for a sham affidavit. The Tenth Circuit directs a court considering whether an affidavit is a sham to look to:

> [(i)] whether the affiant was cross-examined during his earlier testimony, [(ii)] whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and [(iii)] whether the earlier testimony reflects confusion which the affidavit attempts to explain.

Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1986)(citing Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1364-65 (8th Cir. 1983); Perma Research & Development Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969)). The Court agrees with the Defendants that the Walker Aff. meets the elements enumerated for sham affidavits. The Walker Aff. contradicts the Walker Depo. and on the Correction Page. In the Walker Aff., Walker admits that she participated in the 2016 Rio Arriba County Local Senior Olympics, see Walker Aff. ¶ 4, at1, but she does not make this admission in either the Walker Depo. or the Correction Page, see Walker Depo. at 62:1-7; id. at 62:23-63:1; id. at 83:2-11; id. at 92:15-20; id. at 103:2-6; id. at 169:1-14; Correction Page at 2. When executing the Walker Aff. and when writing the Correction Page, Walker should have known whether she participated in the Rio Arriba County Local Senior Olympics, because the evidence related to her personal experience. In the Walker Aff. and on the Correction Page, Walker unequivocally denies participating in the Senior Olympics, and so the Walker Aff. does not resolve any confusion. See Walker Depo. at 62:1-7; id. at 62:23-63:1; id. at 83:2-11; id. at 92:15-20; id. at 103:2-6; id. at 169:1-14; Correction Page at 2.

because it is offered to create a sham fact issue"); Rodriguez v. Presbyterian Healthcare Servs., No. CIV 11-0238 JEC/LFG, 2012 WL 12894833, at *4 (D.N.M. April 3, 2012)(Garcia, M.J.)("[C]ourts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue." (quoting Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1986))). "[T]he Tenth Circuit has . . . 'held that there are situations where a district court may be justified in disregarding certain contradictory testimony,' such as when it determines that the affidavit amounts to an attempt to create a sham fact issue." Padilla v. Bd. of Comm'rs of Bernalillo Cty., No. CIV 07-0933 MCA/ACT, 2009 WL 10696280, at *3 (D.N.M. June 2, 2009)(Armijo, J.)(quoting Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 973 (10th Cir. 2001)). In Franks v. Nimmo, the case in which the Tenth Circuit recognized the sham-affidavit doctrine, the Tenth Circuit noted, regarding other United States Courts of Appeals' decisions to disregard sham affidavits: "Underlying those decisions is the conclusion that the utility of summary judgment as a procedure for screening out sham fact issues would be greatly undermined if a party could create an issue of fact merely by submitting an affidavit contradicting his own prior testimony." Franks v. Nimmo, 796 F.2d at 1237 (citing Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1364-65 (8th Cir. 1983)). The Walker Aff. creates no new factual issues, and, in the Motion, the Defendants do not ask the Court to make evidentiary findings. The Walker Aff., by stating that Walker participated in the 2016 Rio Arriba County Local Senior Olympics, supports the facts that the Defendants allege are true. See Motion ¶ 15, at 4 (citing Rio Arriba County Senior Olympics, Local Qualifying Games at 1; 2016 Local Game Result Form at 1). The Defendants argue that Walker "seeks to attempt to nullify unambiguous admissions in order to defeat dismissal of her claims." Reply at 3. This argument attacks Walker's culpability for her

inconsistencies rather than the weight that the Court should give the Walker Aff.'s facts. The Court will address, thus, the Defendants' concerns about the Walker Aff. in considering the Ehrenhaus v. Reynolds factors.

## I. WALKER'S STATEMENTS DO NOT SUBSTANTIALLY PREJUDICE THE DEFENDANTS.

First, the Court concludes that, although Walker's contradictions prejudice the Defendants, the contradictions do not substantially prejudice the Defendants to an extent warranting dismissal. The Defendants aver that, because "Walker has not only falsely testified that she was unable to participate in the Senior Olympics due to alleged injuries from this accident, but she has reported the same false information to her treating physician and experts," Motion at 6, they have "incur[red] significant additional effort and expense through independent evaluation of the information offered by the Plaintiff," Motion at 9, and "will be irrevocably prejudiced by being forced to defend a fraudulent lawsuit pervaded by false evidence," Motion at 9. The Court determines that, while the Defendants expended time and resources on additional discovery, Walker's contradictions are not sufficiently pervasive to interfere with the Defendant's defense.

The Tenth Circuit has recognized that "[t]he submission of falsified evidence substantially prejudices an opposing party by casting doubt on the veracity of all of the culpable party's submissions throughout litigation." Garcia v. Berkshire Life Ins. Co. of Am., 569 F.3d at 1180. The Tenth Circuit explains: "The prejudiced party is forced . . . to attempt independent corroboration of each submission, at substantial expense of time and money . . . ." Garcia v. Berkshire Life Ins. Co. of Am., 569 F.3d at 1180. See Garcia v. Berkshire Life Ins. Co. of Am., 569 F.3d at 1177, 1180 (concluding that Garcia's fabrication of several documents "directly related" to Garcia's claims prejudiced the defendants); Archibeque v. Atchison, Topeka and Santa

Fe Ry., 70 F.3d at 1175 (upholding dismissal of a case where "Appellant stated in her deposition that she had no recollection of lower back pain prior to the December 1990 accident," but "for over ten years prior to the alleged December 1990 accident Appellant had sought and received medical treatment for lower back and tailbone pain").  See also McFadden v. Meeker Hous. Auth., No. 16-CV-2304-WJM-GPG, 2018 WL 3348882, at *6 (D. Colo. July 9, 2018)(Martinez, J.)("Because Plaintiffs' attorneys ended up doing Mr. Baity's work for him, Plaintiffs suffered prejudice in time and expense.").  Patterns of misrepresentation and misrepresentations touching issues throughout the lawsuit prejudice an opposing party.  See Jones v. Warren Power & Mach., Inc., No. CIV-12-447-L, 2013 WL 1288203, at *1-2 (W.D. Okla. Mar. 25, 2013)(Leonard, J.); Rodriguez v. Presbyterian Healthcare Servs., No. CIV 11-0238 JEC/LFG, 2012 WL 12896388, at *3 (D.N.M. Aug. 22, 2012)(Conway, J.), aff'd, 515 F. App'x 761 (10th Cir. 2013)(unpublished);[11] McArthur v. Source Gas, LLC, No. 10-CV-02327-REB-MJW, 2011 WL 7063333, at *20 (D. Colo. Dec. 20, 2011)(Watanabe, M.J.), report and recommendation

---

[11]Rodriguez v. Presbyterian Healthcare Services is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . [a]nd we have generally determined that citation to unpublished opinions is not favored.  However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court finds that Rodriguez v. Presbyterian Healthcare Services, Villa v. Dona Ana Cty., 500 F. App'x 790 (10th Cir. 2012), and Freddie v. Marten Transp., Ltd., 428 F. App'x 801 (10th Cir. 2011), have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion.

adopted sub nom. McArthur v. SourceGas LLC, No. 10-CV-02327-REB-MJW, 2012 WL 161597 (D. Colo. Jan. 18, 2012)(Blackburn, J.); Villa v. Dona Ana Cty., No. CIV 09-0976 BB/WPL, 2011 WL 13291099, at *11, 13 (D.N.M. Aug. 25, 2011)(Lynch, M.J.), subsequently aff'd, 500 F. App'x 790 (10th Cir. 2012)(unpublished). In Rodriguez v. Presbyterian Healthcare Services, the Honorable John Conway, United States District Judge for the District of New Mexico, in an opinion affirmed that the Tenth Circuit, concluded that, when the plaintiff "provided false and misleading information about her employment with the casino and her pay raise," 2012 WL 12896388, at *2, the "Defendants were forced to expend time and money to determine Plaintiff's start date and working hours at the casino or accept the possibility that every document or statement submitted by her is incomplete or inaccurate," 2012 WL 12896388, at *3.

In McArthur v. Source Gas, LLC, the plaintiff misrepresented in his interrogatories that he had never previously made an Equal Employment Opportunity ("EEO") claim, see 2011 WL 7063333, at *15-16; omitted several civil and criminal charges from his interrogatory and deposition answers, see 2011 WL 7063333, at *16-17; erroneously denied previously seeking psychological treatment, see 2011 WL 7063333, at *17; and engaged in other misconduct, including angry outbursts, during his deposition, see 2011 WL 7063333, at *17. The plaintiff clarified and supplemented his deposition statements, did not seek emotional damages, and released therapist records about his earlier psychological treatments. See 2011 WL 7063333, at *19. Nevertheless, the Honorable Michael J. Watanabe, United States Magistrate Judge for the District of Colorado, recommended, and the Honorable Robert E. Blackburn, United States District Judge of the District of Colorado adopted the recommendation, dismissing the action, if summary judgment was not granted, or imposing monetary sanctions against the plaintiff, based on "a

pattern of discovery abuses involving material discovery omissions, dishonesty, slurs and insults to defendant and defense counsel, threats to sue defense counsel and defense counsel's firm, and a physical assault of defense counsel during plaintiff's deposition in this court's jury room." 2011 WL 7063333, at *21.

In Jones v. Warren Power & Machinery, Inc., the plaintiff sued Warren Power & Machinery, Inc. for racial discrimination and retaliation, and, in his deposition, interrogatories, and complaint, the plaintiff provided false information about his education, about his earnings after his employment was terminated, and about his felony convictions. 2013 WL 1288203, at *1-2. The Honorable Tim Leonard, United States District Judge for the Western District of Oklahoma, noted that the record reflected "a pattern of dishonesty" and that the defendant suffered prejudice "because plaintiff's answers throughout have cast doubt on the veracity of all of his submissions, thus requiring defendant to spend additional time and money to corroborate all the information that he has provided." 2013 WL 1288203, at *7. See Villa v. Dona Ana Cty., 2011 WL 13291099, at *11, 13 (concluding that the defendants "incurred numerous expenses" where the plaintiff provided incomplete information about his criminal history; did not disclose a history of hypertension, when he claimed that the defendants caused his hypertension; and, in response to an interrogatory, alleged that the defendants' actions forced him to miss work, but, in his deposition, testified that, at the time of the alleged events, he was unemployed).

Misrepresenting facts central to the issue in a case also prejudices the opposing party. See Freddie v. Marten Transp., Ltd., No. CIV 09-0144 JEC/RLP, 2010 WL 11530512, at *3, *4 (D.N.M. March 25, 2010)(Conway, J.)(determining that, where the plaintiff "complained of many of the same injuries and symptoms complained of in this case back in 2003," the "doubt[s] on [the

plaintiff's] truthfulness" and the "substantial expense of time and money to independently verify [the plaintiff's] discovery responses" prejudiced the defendants), aff'd, 428 F. App'x 801 (10th Cir. 2011)(unpublished); Williamson v. Metro. Prop. & Cas. Ins., No. CIV 15-0958 JCH/LF, 2017 WL 3098258, at *1, *19 (D.N.M. June 14, 2017)(Herrera, J.)(determining that the plaintiff's non-disclosure of a preexisting back injury, when she brought suit for arm, shoulder, and neck injuries following an automobile collision, prejudiced the defendant).

Contradictions that are discovered well before trial, that do not interfere with the defendants' ability to prepare a defense, that are related to issues of limited relevance, or that are not unambiguously misrepresentations, do not prejudice the opposing party. See Banks v. St. Francis Health Ctr., Inc., No. 15-CV-2602-JAR, 2016 WL 6905581, at *2 (D. Kan. Nov. 21, 2016)(Robinson, J.); Hernandez v. City of Albuquerque, No. CIV 14-0964 KG/SCY, 2016 WL 9778190, at *7 (D.N.M. Sept. 6, 2016)(Yarbrough, M.J.)), report and recommendation adopted, No. CIV 14-0964 KG/SCY, 2016 WL 9778189 (D.N.M. Sept. 28, 2016)(Gonzales, J.); Horn v. Mesa Well Servicing, L.P., No. CIV 15-0329 SMV/CG, 2016 WL 9777359, at *6 (D.N.M. June 8, 2016)(Vidmar, J.); Maples v. Vollmer, 2013 WL 1009558, at *19-20. In Maples v. Vollmer, the Court concluded that the defendants were not prejudiced where it was not clear that Maples' contradictory testimony about his "whereabouts on the morning of his arrest and the night before his arrest" "was untruthful," because Maples explained that he could not remember his whereabouts and admitted to other relevant facts, and the contradictions would not "hamper" the defendants' summary judgment motion. 2013 WL 1009558, at *19-20.

In Banks v. St. Francis Health Center, Inc., the Honorable Julie A. Robinson, United States District Judge for the District of Kansas, determined that dismissal was an inappropriate sanction

for a plaintiff, suing a previous employer for racial discrimination and harassment, who, in her deposition, did not identify her prior criminal convictions and did not identify all other employment positions to which she had applied. See 2016 WL 6905581, at *2. Judge Robinson reasoned that, while the defendants incurred time and expenses discovering accurate information, the prejudice was "not the type of prejudice that affected Defendant's ability to litigate the matter, as [the evidence] pertains to impeachment evidence, not evidence concerning the claims at issue." 2016 WL 6905581, at *2. Judge Robinson explained: "Defendant was aware of Plaintiff's convictions before her deposition, and simply needed to obtain certified copies of the court records to determine the veracity of Plaintiff's statements about her convictions." 2016 WL 6905581, at *2. Further, regarding the information about the plaintiff's job applications, Judge Robinson reasoned:

> To be sure, Plaintiff did not identify each position that she applied for or sought transfers to, but there is no indication that she willfully omitted this detail from her testimony. And, Defendant suffered no prejudice, because Defendant knew, based on Plaintiff's deposition testimony, that Plaintiff had sought multiple other positions within Conifer, which was relevant to litigate the claims going forward. In short, given that Defendant had evidence contradicting much of the alleged false testimony prior to deposing Plaintiff and sought confirmation of the testimony after deposing Plaintiff, Defendant did not rely to its detriment and has suffered only minimal prejudice, if any.

2016 WL 6905581, at *3.

In Horn v. Mesa Well Servicing, L.P., a suit against Mesa Well Servicing, L.P. for racial discrimination, the defendant averred that the plaintiff provided testimony inconsistent with testimony that he offered in a suit against his previous employer, Bull Rogers, because, in the Bull Rogers suit, he had testified that he did not experience racial discrimination at Mesa Well Servicing. See 2016 WL 9777359, at *3, *6. The Honorable Stephan Vidmar, United States

Magistrate Judge of the District of New Mexico, presiding by consent, concluded that the defendants had not suffered prejudice, because it was not clear "how [the] inconsistent testimony . . . hindered Defendant's ability to prepare a defense," and "it could very well help Defendant to discredit Plaintiff at trial." 2016 WL 9777359, at *6 (citing Maples v. Vollmer, 2013 WL 1009558, at *26). See Hernandez v. City of Albuquerque, 2016 WL 9778190, at *7 (determining that the defendants were not prejudiced where the plaintiff's incomplete interrogatory answers were provided "well in advance of any trial," related to an issue of "limited relevance," did not bear on summary judgment motions, and related to information obtainable through a public records search).

The Defendants have expended time and resources, because Walker misrepresented her participation in the Senior Olympics. The Defendants explain that they pursued the records from the Rio Arriba County Local Senior Olympics and the New Mexico State Senior Olympics after discovering that Walker's medical records contained statements about her active lifestyle and training for the Senior Olympics. See Motion at 6. If the Defendants had not noticed that Walker's statements in the Walker Depo., First Interrogatories Answer, and First Supp. Answers contradicted the medical records, the Defendants would not have incurred the costs for such discovery.

Further, Walker's statements about not participating in the Senior Olympics are contradictions. Walker's assertions in the Walker Depo. and the Correction Page that she did not participate in the Senior Olympics contravene her statements in the Walker Aff. that she participated in the 2016 Rio Arriba County Local Senior Olympics and never denied doing so, and in the discovery documents, which reveal that Walker participated in the 2017 Rio Arriba County

Local Senior Olympics and the 2017 New Mexico State Senior Olympics. Compare Walker Depo. at 62:1-7; id. at 62:23-63:1; id. at 83:2-11; id. at 92:15-20; id. at 103:2-6; id. at 169:1-14; Correction Page at 2, with Walker Aff. ¶ 4, at 1; Rio Arriba County Senior Olympics, Local Qualifying Games at 1; 2016 Local Game Result Form at 1; New Mexico Senior Olympics 2016 Final On-Site Sheets at 1; 2017 Summer Games Unofficial Results -- Rio Arriba at 1; Letter from Cecilia Acoste to Allison M. Beaulieu at 1; 2017 New Mexico Senior Olympics On-Site Sheets at 1-4. The Letter from Dr. Rajan K. Mirchandani to "Whom it May Concern" (dated August 24, 2016), filed July 27, 2018 (Doc. 59)("Mirchandani Letter"), also suggests that Walker told him that she did not participate in the Senior Olympics, because Dr. Mirchandani states, in the past tense, that Walker "used to be very athletic, participating in the Senior Olympics . . . every year . . . ." Mirchandani Letter at 1. Like the Walker Depo. and Correction Page, Dr. Mirchandani's statement contradicts the Walker Aff. and the discovery documents. See Walker Aff. ¶ 4, at 1; Rio Arriba County Senior Olympics, Local Qualifying Games at 1; 2016 Local Game Result Form at 1; New Mexico Senior Olympics 2016 Final On-Site Sheets at 1; 2017 Summer Games Unofficial Results -- Rio Arriba at 1; Letter from Cecilia Acoste to Allison M. Beaulieu at 1; 2017 New Mexico Senior Olympics On-Site Sheets at 1-4. Unlike Maples in Maples v. Vollmer, therefore, Walker changed her story, and, also, unlike Maples, Walker has not provided reasonable explanations for the contradictions. Aside from stating, "I don't have dementia, but at times I get a bit confused about dates," Walker provides no explanation in the Walker Aff. for the contradictions. Walker Aff. ¶ 4, at 1. Walker's statement about being confused about dates does not account for the inconsistency, because the inconsistency does not involve dates, but whether Walker participated in the Senior Olympics after the collision with Spina. Further, Walker's

assertion that she has "never denied" that, at the 2016 Rio Arriba County Local Senior Olympics, she qualified for several swimming events for the 2016 New Mexico State Senior Olympics, contravenes her unambiguous statements, in the Walker Depo. and on the Correction Page, that she did not participate in the Senior Olympics. Walker Aff. ¶ 4, at 1. See Walker Depo. at 62:1-7; id. at 62:23-63:1; id. at 83:2-11; id. at 92:15-20; id. at 103:2-6; id. at 169:1-14; Correction Page at 2. The best explanation that the Court imagines for the contradictions is that, in the Walker Depo., Walker answered whether she participated in the New Mexico State Senior Olympics and did not consider the Rio Arriba County Local Senior Olympics. In the Walker Depo., Walker identified that the Senior Olympics occurred in August every year, suggesting that she was referring to a single annual event. See Walker Depo. at 61:1-21. The language suggests that she might have understood the Rio Arriba County Local Senior Olympics to be an event different from the "Senior Olympics," but, in the Walker Aff. and in the Response, Walker does not suggest that such confusion occurred. Rather, Walker asserts that she has "never denied that, in fact, [she] qualified in several swimming events" at the 2016 Rio Arriba County Local Senior Olympics. Walker Aff., ¶ 4, at 1. There is no evidence in the record, however, that Walker clarified, before filing the Walker Aff., that she participated in the Rio Arriba County Local Senior Olympics but not in the New Mexico State Senior Olympics.

On the other hand, as in Maples v. Vollmer, it is unclear whether Walker contradicted herself about training for the Senior Olympics or whether she misrepresented her training activities to her medical providers. In the First Interrogatories Answer and the First Supp. Answer, Walker explains that, before the collision with Spina, she engaged in various physical activities, including swimming, jogging, walking, hiking, and kayaking. See First Interrogatories Answer, ¶ 17, at 10,

¶ 4, at 13; First Supp. Answer, ¶ 13, at 13. In the Walker Depo., Walker did not explain what "training" meant to her, see Walker Depo. at 63:1-8; id. at 93:6-14; id. at 102:1-14; id. at 109:10-13, but she does so in the Walker Aff., explaining that "training" means "jogging, doing a half marathon (jogging and waking) and walking long distances of up to ten miles and swimming." Walker Aff. ¶ 6, at 2. The Walker Aff. explanation does not contradict the information from the Walker Depo., and the explanation aligns with the physical activities that Walker lists in the First Interrogatories Answer and First Supp. Answer. It is not clear that Walker misrepresented whether she trained for the Senior Olympics so much as that she failed to explain what "training" meant to the Defendants. The Defendants' and Walker's disagreement about her training for the Senior Olympics reflects a factual dispute more than unambiguous misrepresentations by Walker. A factual dispute likewise exists whether Walker told her medical providers that she was training for the Senior Olympics. Walker, like Maples, does not change her story about her statements to medical providers. While the Defendants argue that Walker told her medical providers that she injured her left knee while "power walking" or training for the Senior Olympics, see Motion at 6, 8, Walker insisted in the Walker Depo. and insists in the Walker Aff. that she did not tell her medical providers that she was training for the Senior Olympics, see Walker Depo. at 102:9-15; Walker Aff. ¶ 7, at 2-3. Such factual disputes do not prejudice the Defendants. Although the Defendants might expend time and resources to develop arguments supporting their interpretation of the facts, such development is necessary for any litigation.

Further, where Walker contradicts herself, her statements do not rise to the pervasiveness that has led the Tenth Circuit and other district courts to find significant prejudice for the defendants. While the Defendants note that Walker denied training for or participating in the

Senior Olympics twenty-two times in the Walker Depo., see Motion at 7, some of Walker's statements are not contradictory and the statements that are contradictory are confined to a narrow factual issue. Walker's narrow contradictions -- while central to her claim, because they relate to her injuries' extent, and implicated throughout the evidence, if she made the same misrepresentations to her medical providers -- have not touched topics throughout the lawsuit, as the contradictions in Rodriguez v. Presbyterian Healthcare Services, McArthur v. Source Gas, LLC, and Villa v. Dona Ana County, or demonstrated a pattern of misrepresentation, as in Rodriguez v. Presbyterian Healthcare Services and Jones v. Warren Power & Machinery, Inc. Walker has not forged several documents central to her claim, as Garcia did in Garcia v. Berkshire Life Ins. Co. Of America. 569 F.3d at 1178 or made repeated misrepresentations about key issues in the lawsuit, as in Archibeque v. Atchison, Topeka and Santa Fe Railway, in which the plaintiff did not disclose "numerous" prior complaints about and treatments for back pain, 70 F.3d at 1173-75. Although Walker's statements about not training for or participating in the Senior Olympics maximize her injuries' effect on her lifestyle, they do not misrepresent issues absolutely central to her claim, like potential sources for her injuries, as in Archibeque v. Atchison, Topeka and Santa Fe Railway, Freddie v. Marten Transportation, Ltd., and Williamson v. Metropolitan Property and Casualty Insurance. Walker disclosed to the Defendants that she, a woman in her eighties, had pre-existing injuries, including arthritis in her left knee. See First Interrogatories Answer ¶ 17, at 10; First Supp. Answers ¶ 17, at 14; Walker Aff. ¶ 7, at 2.

Moreover, Walker's contradictory or, at least, confusing statements to the Defendants and her medical providers about training for and participating in the Senior Olympics have not substantially interfered with the Defendants' litigation process. Given that Walker is bringing a

negligence claim and alleging personal injuries from the collision with Spina, the Defendants would have sought her medical records regardless her testimony. What the Defendants discovered in the medical records prompted them to pursue further discovery and obtain the records from the Rio Arriba County Local Senior Olympics and the New Mexico State Senior Olympics; the Defendants have presented no evidence that the additional document requests slowed or burdened their discovery, and the Defendants discovered the accurate facts well before trial, as in Horn v. Mesa Well Servicing, L.P. and in Hernandez v. City of Albuquerque. Further, the Defendants have presented no evidence that Walker's contradictions have interfered with preparing their defense. Rather, Walker's representations, like Maples' and Horn's statements, provide fodder for impeachment. See Horn v. Mesa Well Servicing, L.P., 2016 WL 9777359, at *6; Maples v. Vollmer, 2013 WL 1009558, at *26. The statements, thus, place the Defendants in a better position for attacking Walker's arguments than they would have been otherwise. See Walker Aff. ¶ 4, at 1-2. The statements "could very well help [the Defendants] to discredit [Walker] at trial." Horn v. Mesa Well Servicing, L.P., 2016 WL 9777359, at *6 (citing Maples v. Vollmer, 2013 WL 1009558, at *26). Accordingly, the Court concludes that, although the Defendants were prejudiced by Walker's contradictions, because they expended time and resources to pursue discovery related to the Senior Olympics, Walker's actions have not prejudiced the Defendants to a degree counseling dismissal of Walker's claims.

## II. WALKER'S MISREPRESENTATIONS HAVE NOT SUBSTANTIALLY INTERFERED WITH THE JUDICIAL PROCESS.

Second, although the Court agrees with the Defendants that lying under oath interferes with the judicial process, see Motion at 10-11, Walker's inconsistencies have not otherwise disrupted the judicial process. It is not clear that Walker misrepresented whether she trained for the Senior

Olympics or what she told her medical providers about her activities. Further, Walker, in the Walker Aff., corrected some statements in the First Interrogatories Answer, First Supp. Answers, Walker Depo. and Correction Page.

The Tenth Circuit has recognized that "there is no greater interference with the judicial process than false testimony and the willful failure to disclose information." Rodriguez v. Presbyterian Healthcare Servs., 2012 WL 12896388, at *4. The Court has reasoned that ambiguity in a statement's veracity, admissions of an opposing party's factual allegations, and explanations, including a lapse of memory, for contradictory statements counsel against deeming that interference with the judicial process occurred. See Maples v. Vollmer, 2013 WL 1009558, at *21. Unlike in Maples v. Vollmer, Walker's statements about participating in the 2016 Senior Olympics contradict each other and the discovery documents. Regarding the 2016 Rio Arriba County Local Senior Olympics, the Walker Aff. and discovery documents contradict the Walker Depo. and Correction Page statements. Compare Walker Depo. at 62:1-7; id. at 62:23-63:1; id. at 83:2-11; id. at 92:15-20; id. at 103:2-6; id. at 169:1-14; Correction Page at 2, with Walker Aff. ¶ 4, at 1, Rio Arriba County Senior Olympics, Local Qualifying Games at 1; 2016 Local Game Result Form at 1; New Mexico Senior Olympics 2016 Final On-Site Sheets at 1. The Walker Aff.'s explanation about Walker's involvement in the 2017 New Mexico State Senior Olympics, while it aligns with the Walker Depo., contravenes documents from the 2017 New Mexico State Senior Olympics. Compare Walker Depo. at 62:1-7, with Letter from Cecilia Acoste to Allison M. Beaulieu at 1; 2017 New Mexico Senior Olympics On-Site Sheets at 1-4. Further, unlike Maples in Maples v. Vollmer, Walker provides no convincing explanation why, when asked several times about participating in the Senior Olympics, she did not clarify that she participated in the 2016 and

2017 Rio Arriba County Local Senior Olympics or in the 2017 New Mexico State Senior Olympics. Although, in the Walker Aff., Walker contends that she "never denied" participating in the 2016 Rio Arriba County Local Senior Olympics, Walker Aff. ¶ 4, at 1, the record reflects that Walker repeatedly denied participating in the Senior Olympics, see Walker Depo. at 62:1-7; id. at 62:23-63:1; id. at 83:2-11; id. at 92:15-20; id. at 103:2-6; id. at 169:1-14; Correction Page at 2. Further, confusion about dates does not explain unambiguous denials of participating in the Senior Olympics after the collision with Spina. See Walker Aff. ¶ 4, at 1. The Court, like the Defendants, also doubts Walker's story about swimming a couple laps in the warm-up area at the 2017 New Mexico State Senior Olympics. See Motion at 10. Walker provides the same story in the Correction Page, see Correction Page at 2, and the Walker Aff., see Walker Aff. ¶ 11, at 3. The Defendants produced, however, Walker's registration page for the 2017 New Mexico State Senior Olympics and the results from the 2017 New Mexico States Senior Olympics, showing that Walker competed in the 100-yard backstroke, the 100-yard freestyle, the fifty-yard freestyle, and the fifty-yard backstroke, and that Walker finished in the top four swimmers in every event but the fifty-yard backstroke, in which she was disqualified. See Letter from Cecilia Acoste to Allison M. Beaulieu at 1; 2017 New Mexico Senior Olympics On-Site Sheets at 1-4. Walker likewise registered for and competed in the 2017 Rio Arriba County Local Senior Olympics, see Rio Arriba County Senior Olympics, Local Qualifying Games at 1; 2016 Local Game Result Form at 1; New Mexico Senior Olympics 2016 Final On-Site Sheets at 1, but she has offered no explanation for not mentioning her participation and has not admitted her participation. Walker's repetition of the story about the 2017 Senior Olympics and her lack of any explanation for participating in the 2017 Rio Arriba County Senior Olympics differentiate her case from Maples v. Vollmer, and counsel

toward determining that she interfered with the judicial process, as do her contradictions about participating in the 2016 Rio Arriba County Senior Olympics.

It is unclear, however, that Walker's statements about training for the Senior Olympics to the Defendants and her medical providers were untruths. The disagreement whether Walker trained for the Senior Olympics after the collision with Spina may indicate confusion at the Walker Depo., because the Walker Depo. does not reflect what Walker understood "training" to mean. Walker Depo. at 63:1-8; id. at 93:6-14; id. at 102:1-14; id. at 109:10-13. Walker, in the Walker Aff., clarifies what "training" means to her, and the statement does not contradict her Walker Depo. assertions. See Walker Aff. ¶ 6, at 2. Similarly, although contradictions exist between the medical reports and Walkers' assertions about what she told her medical providers regarding her physical activities, compare Progress Notes by Ellen Marder at 1; Progress Notes by Christopher E. Lyons at 1; Patient Information at 1, with Walker Depo. at 102:9-15; Walker Aff. ¶ 7, at 2-3, from the record and the parties' documents, the Court cannot determine whether Walker misrepresented her conversations with her medical providers. The contradictions equally may indicate lapses in Walker's memories of her appointments, of which a person may have many, more than the contradictions reflect factual misrepresentations.

Moreover, the Court has noted that, "when considering whether there has been interference with the judicial process, courts have often looked to whether the willful abuse of the discovery process caused delays in the judicial proceedings." Maples v. Vollmer, 2013 WL 1009558, at *21. In Banks v. St. Francis Health Center, Inc., Judge Robinson concluded that, even where the parties extended the discovery period and subpoenaed additional documents to confirm the positions for which the plaintiff had applied but did not identify in her testimony, only "minimal interference

with the judicial process" occurred.  2016 WL 6905581, at *3.  In Maples v. Vollmer, the Court

concluded that interference with the judicial process did not occur where Maples' contradictory

statements had "not caused any delay in the judicial proceedings for the Court or the parties."  2013

WL 1009558, at *21.  As in Banks v. St. Francis Health Center, Inc. and Maples v. Vollmer, there

is no evidence that Walker's statements delayed the judicial process.

Further, as the Court explained in Maples v. Vollmer, the Defendants may explore

Walker's inconsistencies at trial.   See Maples v. Vollmer, 2013 WL 1009558, at *22.

"[I]nconsistencies likely do not interfere with the judicial process much, if at all, as they may be

explored on cross examination."  Maples v. Vollmer, 2013 WL 1009558, at *22.  If Walker

misrepresented her training for and participation in the Senior Olympics, "inconsistencies are

fertile ground for impeachment on cross examination."  Maples v. Vollmer, 2013 WL 1009558, at

*22.  The Court's reasoning in Maples v. Vollmer applies here:

> Bringing these details and [Walker's] explanation out at trial to impeach [her] is
> likely to have an effect on the case, similar to the effect of many sanctions that the
> Court might impose.  Thus, while these statements might controvert facts that the
> Defendants reasonably believed would be uncontroverted for trial, because cross
> examination provides an adequate forum for the Defendants to likely penalize
> [Walker] for the inconsistencies, [Walker's] statements have not substantially
> interfered with the judicial process.

2013 WL 1009558, at *22.

Although Walker's misrepresentations about her participation in the Senior Olympics

counsel toward determining that she interfered with the discovery process, this factor does not

counsel dismissing the case.  It is unclear that Walker misrepresented whether she trained for the

Senior Olympics or what she communicated to her medical providers.  Further, no delay has

occurred in the discovery process, and cross-examination presents a forum in which the

Defendants can penalize Walker. Walker's statements about training and her communications with her medical providers, thus, have not substantially interfered with the judicial process. Accordingly, this factor does not weigh heavily toward dismissing the case.

## III. WALKER'S REPETITION OF THE STORIES WHETHER SHE PARTICIPATED IN THE SENIOR OLYMPICS SUGGESTS THAT WALKER IS CULPABLE FOR MISREPRESENTATIONS.

Third, the Defendants contend that Walker acted intentionally, as evidenced by her lies under oath and her Correction Page. See Motion at 11. The Defendants argue that Walker "has had ample opportunity to amend and supplement her responses in the unlikely chance that information was mistakenly provided or misconstrued, but the extent of her supplementations and Correction clearly depict culpability by the willful construction and furtherance of the lies." Motion at 11. Walker responds that the Walker Depo. statements "were involuntary and not intentional." Response at 7. The Court agrees with the Defendants that Walker has not provided satisfactory explanations about the inconsistencies regarding whether she participated in the Senior Olympics, and rather repeated information that the record contravenes, but the Court disagrees whether it is clear that Walker misrepresented whether she trained for the Senior Olympics and what she told her medical providers.

"Dismissal represents an extreme sanction appropriate only in cases of willful misconduct." Ehrenhaus v. Reynolds, 965 F.2d at 920. A party is not culpable for misrepresentations when the party offers reasonable explanations for the testimony or it is unclear whether the party's statements were untruths. See Freddie v. Marten Transp., Ltd., 428 F. App'x at 803; Banks v. St. Francis Health Ctr., Inc., 2016 WL 6905581, at *3; Hernandez v. City of Albuquerque, 2016 WL 9778190, at *7; Horn v. Mesa Well Servicing, L.P., 2016 WL 9777359,

at \*6; Jones v. Warren Power & Mach., Inc., 2013 WL 1288203, at \*8; Maples v. Vollmer, 2013

WL 1009558, at \*23; Lusk v. Sanchez, No. 6:08-CV-182 MV/KBM, 2011 WL 13272269, at \*4

(D.N.M. May 9, 2011)(Vázquez, J.); Potter v. Synerlink Corp., No. CIV 08-674 GKF-TLW, 2010

WL 4636637, at \*3 (N.D. Okla. Nov. 5, 2010)(Wilson, M.J.). In Maples v. Vollmer, the Court

concluded that the culpability factor was not satisfied when Maples' conduct did not rise to the

level of fabricating documents, as in Garcia v. Berkshire Life Insurance Company of America, and

Maples "appear[ed] to have forgotten important facts and, in some cases, perhaps instead of

admitting that he forgot them, fabricated that he was at home when he was not, or how he got

outside the house." 2013 WL 1009558, at \*23. The Court reasoned that "a jury trial will sort" out

the "truth of the matter." 2013 WL 1009558, at \*23. See Freddie v. Marten Transp., Ltd., 428

F. App'x at 803 (concluding that the plaintiff was culpable where the plaintiff explained his failure

to mention previous treatments for a similar injury by asserting that he did disclose the treatments

and that he had forgotten to mention the treatments because of his frail mental state); Banks v. St.

Francis Health Ctr., Inc., 2016 WL 6905581, at \*3 (concluding that the plaintiff was not culpable

where the plaintiff likely "misunderstood the disposition of" her prior criminal charges, "believing

that the charges were dismissed or expunged," and did not mention the charges in her testimony;

the plaintiff testified what she knew about a collection suit against her husband; and the plaintiff

admitted "to the basic underlying fact of seeking transfer and/or other positions," although she did

not identify the other positions to which she applied); Hernandez v. City of Albuquerque, 2016

WL 9778190, at \*7 (concluding that the plaintiff was not culpable for not disclosing all prior

arrests and contact with law enforcement" where the plaintiff had previously "apprised Defendants

of the possibility that records of additional arrests and law enforcement encounters might exist");

Horn v. Mesa Well Servicing, L.P., 2016 WL 9777359, at *6 (determining that the plaintiff was not culpable where it was unclear whether the plaintiff lied in the testimony in the case before the court or in a previous case, because the deposition questions and answers were ambiguous); Jones v. Warren Power & Mach., Inc., 2013 WL 1288203, at *8 (determining that the culpability standard was met where the plaintiff did "not specifically address or refute his culpability for the . . . examples provided by defendant as to plaintiff's dishonesty," and alleged that his medical condition, a kidney problem, distracted him when he answered discovery, but said nothing in his affidavit about his health conditions and did not disclose any health conditions to the defendants); Lusk v. Sanchez, 2011 WL 13272269, at *4 (deeming that a plaintiff was not culpable where the plaintiff could not recall a visit to a medical provider six years before the discovery); Potter v. Synerlink Corp., 2010 WL 4636637, at *3 (determining that the culpability factor was satisfied where the plaintiff stated that he provided the defendant with rewritten notes but testified extensively about his note-taking process, without mentioning rewriting notes, and told the defendants that he provided his original notes).

It is not clear whether Walker misrepresented whether she trained for the Senior Olympics and what she told her medical providers. Like the deposition testimony in Horn v. Mesa Well Servicing, L.P., the questions in the record about Walker's training are ambiguous what the deposer and Walker meant by "train." Walker Depo. at 63:2-8; id. at 93:6-14. The Walker Aff. clarifies Walker's interpretation of "training." Walker Aff. ¶ 8, at 2. While Walker may have added this definition to the Walker Aff. to further misrepresentations in the Walker Depo., the Defendants have not provided sufficient evidence to support this argument. It is likewise unclear whether Walker misrepresented what she told her medical providers. Like Maples, Walker has

not changed her story about the facts -- here, what Walker told her medical providers. See Walker Depo. at 102:9-15; Walker Aff. ¶ 7, at 2-3. While the medical records reflect that Walker was active, the records are not consistent. See Patient Information at 1; Dr. Marder Progress Notes at 1; Dr. Lyon Progress Notes at 1. Sanchez writes that Walker "exacerbated" her knee pain while "power walking," and that "she is a very active senior who swims or walks at least 5 days a week." Patient Information at 1. Dr. Marder writes that Walker "is very active -- swims 4-5 x week for 40 minutes; jogged in training for Senior Olympics until 34/2016 (sic) when she injured her left knee." Dr. Marder Progress Notes at 1. Dr. Lyon notes that Walker's left knee pain "onset 4/2016 while running." Dr. Lyon Progress Notes at 1. Walker's may have forgotten what she told the medical providers. The visits to the medical providers occurred two years ago, and the Court cannot reasonably expect Walker to remember every detail of such a visit; as the Honorable Martha Vázquez, United States District Judge for the District of New Mexico suggested regarding the appointments with doctors in Lusk v. Sanchez, 2011 WL 13272269, at *4. The disagreement appears to the Court more as a factual dispute than as an untruth from Walker.

The Walker Depo., Correction Page, and Walker Aff. statements about not participating in the Senior Olympics are harder to reconcile with each other and with the discovery documents, and Walker does not provide a reasonable explanation for the inconsistencies. In the Correction Page and the Walker Aff., Walker maintains her stories about her participation in the 2016 and 2017 New Mexico State Senior Olympics. See Correction Page and 2; Walker Aff. ¶ 4, at 1; id. ¶ 11, at 3. For the first time in the Walker Aff., Walker admits to participating in the 2016 Rio Arriba County Local Senior Olympics, see Walker Aff. ¶ 4, at 1, and she never admits to participating in the 2017 Rio Arriba County Local Senior Olympics or in the 2017 New Mexico

State Senior Olympics. Walker's statement that she never denied participating in the 2016 Rio Arriba County Local Senior Olympics fails, like the statements by the plaintiffs in Freddie v. Marten Transp., Ltd., and Jones v. Warren Power & Mach., Inc., to address her contradictions. She does not explain why, in the Walker Depo. and Correction Page, she did not distinguish between the Rio Arriba County Local Senior Olympics and the New Mexico State Senior Olympics. Also, like the plaintiffs' broad and implausible excuses based on medical problems for omitting information in Freddie v. Marten Transp., Ltd. and in Jones v. Warren Power & Mach., Inc., and unlike the plaintiffs' reasonable explanations in Maple v. Vollmer and in Banks v. St. Francis Health Center, Inc., Walker provides no excuse for stating that she did not participate in the 2016 or 2017 Senior Olympics other than to state that she sometimes gets "a bit confused about dates." Walker Aff. ¶ 4, at 1. Walker's example for her confusion about dates is that she could not remember whether she went to the emergency room the day after the collision with Spina. See Walker Aff. ¶ 4, at 1. Remembering the date of an emergency room visit is different from remembering whether one ever participated in a sporting event; the Walker Depo. testimony whether Walker participated in the Senior Olympics did not require her to remember dates. Rather than provide a reasonable excuse, Walker repeats her story from the Correction Page about swimming one or two laps in the warm-up area at the 2017 New Mexico State Senior Olympics, asserts that she never denied participating in the 2016 Rio Arriba County Local Senior Olympics, and does not mention the 2017 Rio Arriba County Local Senior Olympics. See Walker Aff. ¶ 4, at 1; id. ¶ 11 at 3. In her Response, Walker argues in one sentence that the Walker Depo. statements "were involuntary and not intentional," but she does not explain how such contradictory statements were involuntarily or unintentionally made. Response at 7. The Court lacks sufficient evidence

to determine the involuntariness of Walker's statements, but the Court doubts the explanation. Walker repeated statements in the Walker Aff. and the Correction Page. See Walker Aff. ¶ 4, at 1; ¶ 11 at 3; Correction Page at 2. As with the meaning of "train," Walker may have been confused during the Walker Depo. to what "Senior Olympics" referred. Walker, however, did not admit her participation in the 2016 Rio Arriba County Local Senior Olympics until she filed the Walker Aff., after the Defendants filed the Motion containing discovery documents revealing Walker's participation in the 2016 Rio Arriba County Local Senior Olympics, and Walker has not offered any reason for not addressing the discovery documents recording her participation in the 2017 Senior Olympics. In Maples v. Vollmer, the Court emphasized that the plaintiff's conduct did not rise to specifically disclaiming former injuries that could be the cause of the injuries alleged, as in Archibeque v. Atchison, Topeka and Santa Fe Railway, or forging multiple documents relevant to the suit, as in Garcia v. Berkshire Life Insurance Company of America, but the Court also noted that Maples could "explain what he did and why he did so." Maples v. Vollmer, 2013 WL 1009558, at *22. While Walker's conduct does not rise to that in Archibeque v. Atchison, Topeka and Santa Fe Railway or in Garcia v. Berkshire Life Insurance Company of America, she cannot well explain her actions.

The Court, therefore, concludes that Walker's statements whether she participated in the Senior Olympics meet the standard for culpability. The Court recognizes the possibility that Walker confused when and in what she participated at the Senior Olympics, but the Court doubts Walker's explanations for the contradictions. Nevertheless, Walker does not meet the culpability requirements for the statements about training for the Senior Olympics and the information that

she provided her medical providers. Further, satisfying one factor does not dictate dismissing the case.

## IV.    **WALKER'S ACTIONS DO NOT JUSTIFY DISMISSAL WITHOUT WARNING.**

Fourth, the Court concludes that dismissing Walker's case without notice is unwarranted. The Defendants admit that the Court has not warned Walker that her actions will result in a sanction, but the Defendants contend that a warning is not a prerequisite to sanctions when the improper action, like Walker's, is lying under oath. See Motion at 12. The Court agrees with the Defendants that, in some circumstances, a warning is not required for dismissal, but the Court determines that those circumstances do not exist here.

The Tenth Circuit has stated that, "[o]nce a witness swears to give truthful answers, there is no requirement to warn him not to commit perjury or, conversely to direct him to tell the truth." Freddie v. Marten Transp., Ltd., 428 F. App'x at 804 (internal quotation marks omitted)(quoting Chavez v. City of Albuquerque, 402 F.3d at 1045). In considering whether the fourth factor is satisfied, however, the Court has emphasized that, when a case "has not yet proceeded to trial or been submitted to the jury," the case's posture counsels against finding the factor met. Maples v. Vollmer, 2013 WL 1009558, at *24-25. Likewise, Judge Robinson and Judge Vidmar, in cases involving inconsistent statements uncovered during discovery, have declined to conclude that the case warranted dismissal without warning. See Banks v. St. Francis Health Ctr., Inc., 2016 WL 6905581, at *2-4 ("Fourth, the Court was not apprised of the alleged false testimony until Defendant's motion to dismiss. Therefore, the Court issued no advance warnings threatening dismissal."); Horn v. Mesa Well Servicing, L.P., 2016 WL 9777359, at *7 ("As to the fourth Ehrenhaus[v. Reynolds] factor, there have been no prior warnings from the Court that dismissal

was on the table.").  The Court has explained prior Tenth Circuit cases affirming dismissal without warning:

> In <u>Chavez v. City of Albuquerque</u>, the Tenth Circuit affirmed Judge Johnson's dismissal sanction where, throughout pretrial practice and multiple times in discovery, including in the plaintiff's depositions and sworn answers to interrogatories, he "steadfastly maintained that he was not the suspect police had been chasing." 402 F.3d at 1042.  The plaintiff, at trial, while undergoing cross-examination, finally admitted that he had lied in discovery and that the police arrested the correct subject, as he was the suspect who led the police on a chase throughout the city. <u>See</u> 402 F.3d at 1042.

<u>Maples v. Vollmer</u>, 2013 WL 1009558, at *24.  Walker's case has not proceeded to trial, and she has admitted some of the facts that the Defendants allege, such as her participation in the 2016 Rio Arriba County Local Senior Olympics.  <u>See</u> Walker Aff. ¶ 4, at 1.  While, unlike Maples, Walker has not provided explanations for her inconsistencies, Walker, like Maples, has "provided the Defendants ample information from which they can anticipate [her] trial testimony." <u>Maples v. Vollmer</u>, 2013 WL 1009558, at *24.  "Thus, not only can the Defendants anticipate [her] trial testimony, but they can also anticipate testimony that is ripe for impeachment, a situation for which trial attorneys often prepare." <u>Maples v. Vollmer</u>, 2013 WL 1009558, at *24.

The Court has likewise noted that, when "the importance of the subject matter underlying . . . inconsistencies" do not go "to the heart of the case," the circumstances do not weigh toward dismissal without warning. <u>Maples v. Vollmer</u>, 2013 WL 1009558, at *24, 25.  The Court reasoned that in <u>Chavez v. City of Albuquerque</u> and in <u>Archibeque v. Atchison, Topeka and Santa Fe Railway</u>, the misrepresentations involved facts central to the case:

> In <u>Chavez v. City of Albuquerque</u>, if the plaintiff admitted he was the person who had led police on a chase throughout the city, the officer's use of force would likely have been seen as more reasonable than if, as he asserted pretrial, "he had simply been walking to a friend's house after an evening playing bingo when he had encountered [the officer]." 402 F.3d at 1043.  Similarly, whereas the plaintiff in

> Archibeque v. Atchison, Topeka and Santa Fe Ry. was suing for on-the-job injuries to her lower back, and denied throughout discovery that she had ever before had injuries, only to be faced with the defendants' evidence that she had a history of lower back problems spanning over the previous ten years, her untruthful statements went to the heart of the case.

Maples v. Vollmer, 2013 WL 1009558, at *25. The facts at issue in Maples v. Vollmer were not pivotal facts:

> The issue here is whether Vollmer's and/or Fox's use of force in arresting Maples was excessive or was reasonable. Here, Maples has admitted throughout discovery that he was the subject of the 911 call and that he fled from Vollmer when Vollmer came to 1111 Major. Although his statements about why he was outside 1111 Major when police arrived may be inconsistent, he nevertheless admits that he was outside when police arrived. Further, while the Defendants correctly point out that damages are at issue in this case, and that Maples failed to provide them with information regarding his visits to Presbyterian Hospital, he does not deny going there, he provided the defendants with a medical release, and provides a plausible explanation for not remembering those visits.

Maples v. Vollmer, 2013 WL 1009558, at *25. The facts at issue in Walker's testimony go to the damages that she suffered. Walker alleges that the collision with Spina interfered with her active lifestyle, including prohibiting her from participating in the Senior Olympics. See First Interrogatories Answer, ¶ 17, at 10; First Supp. Answers ¶ 17, at 13. While Walker's denial that she participated in the Senior Olympics goes to the central issue of the extent of her injuries, Walker has not denied previous injuries that may have caused the symptoms from the collision with Spina. See First Interrogatories Answer ¶ 17, at 10; First Supp. Answers ¶ 17, at 14; Walker Aff. ¶ 7, at 2. Further, Walker, like Maple, admitted facts related to the facts at issue; Walker admitted that she participated in the 2016 Rio Arriba County Local Senior Olympics. See Walker Aff. ¶ 4, at 1. Accordingly, as in Maples v. Vollmer, Walker's contradictions are not "adamant denials of crucial facts." Maples v. Vollmer, 2013 WL 1009558, at *25. Because Walker's

contradictions are not central to the case and the case is still in the discovery phase, the Court

concludes that dismissal without prior warning is unwarranted.

## V. THAT THE COURT DETERMINES THAT LESSER SANCTIONS WOULD BE EFFICACIOUS IN THIS CASE COUNSELS AGAINST DISMISSING THE CASE.

Fifth, the Court determines that lesser actions than dismissal would be efficacious in

penalizing Walker. The Defendants aver that no lesser sanction than dismissal will be effective,

because, unless the case is dismissed, the Defendants must defend a case based on false evidence.

See Motion at 12-13. The Court, however, will allow the Defendants to cross-examine Walker

about her inconsistences and determines that such a cross-examination will effectively penalize

Walker.

A court uses dismissal as a sanction where the plaintiff's pervasive misrepresentations or

misrepresentations central to the case will force the other party to engage in discovery to verify

other facts. See Freddie v. Marten Transp., Ltd., 2010 WL 11530512, at *5 (dismissing a case

after the plaintiff misrepresented sources of previous injuries, because allowing the case to go

forward would force the defendants to "spend additional time and money seeking to independently

corroborate information submitted by Plaintiff in the future"). See also Garcia v. Berkshire Life

Ins. Co. of Am., 569 F.3d at 1181 (concluding that dismissal was appropriate where the plaintiff

"commits a fraud on the court" by forging documents). The Honorable Clark Waddoups, United

States District Judge for the District of Utah, dismissed a case where a party provided false

testimony and dismissing a claim or excluding evidence would not penalize the party introducing

the misrepresentation, because only the misrepresentation supported the claim. Sorenson v. Riffo,

No. 2:06-CV-749 CW, 2009 WL 10689605, at *7 (D. Utah June 12,

2009)(Waddoups, J.)(concluding that dismissal was warranted because dismissing the second

claim based on a forged document "would only be doing what defendants should have already done").

Walker has not made so many misrepresentations that the Defendants will be defending a case on false evidence. It is not clear that Walker misrepresented what she told her medical providers or whether she trained for the Senior Olympics after her collision with Spina. Further, unlike Freddie, Walker has not denied previous sources for her injuries, and, unlike the plaintiff's case in Sorenson v. Riffo, Walker's entire claim does not rest on her misrepresentations. While Walker's statements relate to her injuries, they relate to her injuries' extent, not to her injuries' and claim's validity. While Walker, in discussing whether she participated in the Senior Olympics, contravenes herself and discovery documents, "[a] case often has impeachment material." Maples v. Vollmer, 2013 WL 1009558, at *26. "If the Court were to dismiss a case every time the plaintiff could be impeached, there would not be many cases that go to trial. The trial, rather than draconian dismissal sanctions by the judge, is the better way to sort out inconsistent versions of the facts." Maples v. Vollmer, 2013 WL 1009558, at *26. Accordingly, the Court will not dismiss Walker's claims.

The Court will also deny the Defendants' alternative sanction requests and will allow the Defendants to cross-examine Walker on her statements at trial.

> Rule 37(c) provides that, in situations such as this, where 'a party fails to provide information' to the other side in discovery, the Court has discretion to impose a litany of sanctions, from ordering payment of fees that the failure incurred, informing the jury of the party's failure, ordering that a certain fact is established as uncontroverted, or dismissing the action in whole or in part.

Maples v. Vollmer, 2013 WL 1009558, at *26 (quoting Fed. R. Civ. P. 37). The Defendants request that, if the Court does not dismiss the case, the Court exclude Walker's experts, exclude

evidence about injuries to Walker's left knee, instruct the jury that Walker perjured herself during

discovery, and/or exclude evidence of pain and suffering, loss of enjoyment of life, and/or future

medical treatment.  See Motion at 13.  "The Court believes that . . . these lesser sanctions would

be effective; they would provide the Defendants with the facts that they appear to want to establish,

penalize [Walker] . . . , and are justified under the circumstances. . . . "  Maples v. Vollmer, 2013

WL 1009558, at *26.  The Court, however, adheres to its reasoning in Maples v. Vollmer and will

deny these sanctions requests.

> The Court, in its years in practice trying cases before it took the bench, learned that some evidence is more persuasive to the jury and more effective coming from the trial attorneys, rather than from the person in the robe behind the bench.  The Court believes it is more just, and will ultimately provide a benefit to the Defendants, for the Court to withhold sanctioning [Walker], and to let the Defendants inform the jury of [Walker's] failures to accurately answer their interrogatories and questions at [her] deposition at trial during [Walker's] testimony.

2013 WL 1009558, at *26.  Further, there is not a sound basis to exclude experts.  The reason for

excluding experts purportedly would be Walker's misrepresentations to her experts and her

doctors.  There is, however, a mixed bag of information about the injuries to Walker's knee, her

pain and suffering, loss of enjoyment of life, and/or future medical treatment.  The jury should sort

out the facts.

Accordingly, the Court concludes that: (i) Walker's statements do not substantially

prejudice the Defendants to an extent warranting dismissal; (ii) Walker's statements do not

interfere with the judicial process to a degree warranting dismissal; (iii) while Walker likely is

culpable of misrepresenting her participation in the Senior Olympics, Walker's other conduct is

not sufficiently culpable to warrant dismissal; (iv) that the Court did not previously warn Walker

that it would dismiss her claims counsels against dismissal; and (v) that lesser actions will penalize

Walker counsels against dismissal.  Accordingly, the Court will deny the Defendants' request to dismiss the case and for lesser, alternative sanctions.  The Court will allow the Defendants, at trial, to cross-examine Walker about her contradictions, because the Court determines that this process before the jury may likely provide the Defendants the benefit that they seek and penalize Walker for her inconsistencies.

## VI.    THE COURT WILL NOT SANCTION THE DEFENDANTS FOR BRINGING THE MOTION.

The Court will deny Walker's request for sanctions against the Defendants.  <u>See</u> Response at 2.  Walker complains that, with this Motion, the Defendants have "totally stepped over the line." Response at 2.  The Court concludes, however, that the Defendant's motion is not, as Walker alleges, "frivolous."  Response at 2.  The Court concludes that Walker's contradictions could support sanctions against her.  The evidence is inconsistent among the Walker Depo., Walker Aff., the Correction Page, and the discovery documents.  A party cannot make inconsistent statements in one moment and, in the next moment, request sanctions against the opposing party who brings those inconsistencies to the Court's attention.  Thus, sanctions against the Defendant are not warranted.  Walker mentions other actions by the Defendant that she alleges were inappropriate - - naming Dixon Insurance Company as the insurer and responding to the motion in limine by "suggesting that the Plaintiff might have misrepresented the fact that she continued to drive after" the collision with Spina.  Response at 1.  Walker has provided no evidence supporting her arguments that the Defendants, by taking these actions, acted inappropriately, and the Court does not believe that these earlier actions increase the pressure on the Court to sanction the Defendants for this justified Motion.

Accordingly, the Court denies the Defendants' Motion but will allow the Defendants to cross-examine Walker about her contradictions at trial. The Court also denies Walker's request for sanctions against the Defendants.

**IT IS ORDERED** that: (i) the Defendants' Motion to Dismiss for Plaintiff's Abuses of the Discovery Process, filed July 27, 2018 (Doc. 59)("Motion"), is denied; and (ii) the Plaintiff Shirley Walker's request for sanctions against the Defendants in the Response to Defendants Motion to Dismiss for Plaintiff's Abuses of the Discovery Process, filed August 4, 2018 (Doc. 62)("Response"), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Shavon M. Ayala
Ayala P.C.
Albuquerque, New Mexico

--and--

Anthony James Ayala
Law Offices of Anthony James Ayala
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Raul Sedillo
Alison Beaulieu
Butt Thornton & Baehr PC
Albuquerque, New Mexico

    *Attorneys for the Defendants Gregory J. Spina, Valley Express, Inc., and Great West Casualty Company*