# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

SHIRLEY J. WALKER,

       Plaintiff,

vs.                                    No. CIV 17-0991 JB\SCY

GREGORY J. SPINA; VALLEY
EXPRESS, INC., and GREAT WEST
CASUALTY COMPANY,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) Plaintiff's Motion in Limine Regarding Punitive Damages, filed January 28, 2019 (Doc. 121)("Punitive MIL"); (ii) Plaintiff's Motion in Limine and Objection to Defendant's Proposed Exhibit List, filed January 30, 2019 (Doc. 132)("Medical Records MIL"); (iii) Plaintiff's Motion in Limine Regarding Introduction of All Olympics Records, Trattel Court Reporting Page, and Medical and Billing Records for Dr. Khalsa, filed January 30, 2019 (Doc. 133)("Defendants' Exhibits MIL"); (iv) the Defendants Gregory J. Spina and Valley Express, Inc.'s Motion in Limine Prohibiting Mention of Defendants' Insurance, filed January 31, 2019 (Doc. 134)("Insurance MIL"); (v) the Defendants Gregory J. Spina and Valley Express, Inc.'s Motion in Limine Prohibiting Mention of Alleged Violations of Statutes, January 31, 2019 (Doc. 135)("Statutes MIL"); (vi) the Defendants Gregory J. Spina and Valley Express, Inc.'s Motion in Limine Regarding Standard of Care and Golden Rule Arguments, January 31, 2019 (Doc. 136)("Standard of Care MIL"); and (vii) the Defendants Gregory J. Spina and Valley Express, Inc's Objections to Plaintiff's Proposed Voir Dire, filed January 31, 2019

(Doc. 137)("Voir Dire Objections"). The Court held a hearing on February 5, 2019. The primary issues are: (i) whether, if Defendant Gregory J. Spina perjures himself during trial, the Court should allow Plaintiff Shirley Walker to argue a claim for punitive damages; (ii) whether the Court should permit Spina and Defendant Valley Express, Inc. (collectively, "the Defendants") to introduce Walker's medical records for rebuttal purposes when Walker will not introduce her medical records, when Walker alleges not to have received all of the proposed exhibits from the Defendants, and when the Defendants have not established that the medical records are not hearsay or shown a proper foundation for the medical records; (iii) whether, because the Defendants indicate that they will introduce evidence that Walker continued to participate in the New Mexico Senior Olympics, the Court should allow Walker to introduce her deposition correction page and all other documents related to the New Mexico Senior Olympics; (iv) whether, because the Defendants indicated that they would introduce a letter of protection[1] and accompanying emails between Dr. Arjan Khalsa, a chiropractor, see Defendants' Reply in Support of Their Motion to Limit the Testimony of Plaintiff's Treatment Providers and Exclude Improper Expert Testimony at 2, filed September 20, 2018 (Doc. 82), and Walker's counsel, the Court should permit Walker to introduce evidence of Dr. Khalsa's medical bills; (v) whether, if the Defendants introduce evidence that Walker's medical bills list Shavon Ayala, of Ayala P.C., an attorney on this matter, as Walker's insurance provider, the Court should allow Walker to introduce evidence of the Defendants' insurance; (vi) whether the Court should preclude Walker from introducing

---

[1]"A *letter of protection* ('LOP') is a letter sent to a medical professional by a personal injury lawyer representing a person injured in an auto accident, work injury, or fall. An LOP guarantees payment for medical treatment from a future lawsuit settlement or verdict award." Texas Personal Injury Law Blog, Simmons and Feltcher, P.C., https://www.simmonsandfletcher.com/blog/letter-protection/ (last visited Feb. 9, 2019).

speculative testimony whether Spina violated statutes for which he was not cited, including speeding, careless or reckless driving, and running a red light; (vii) whether the Court should prohibit Walker from arguing or eliciting testimony describing that the standard of care is any standard other than ordinary care, and from arguing that the jury should determine Walker's damages according to what they would desire if they occupied Walker's position; (viii) whether the Court should permit Walker to ask the venire:

> 5. Have any of you worked for an insurance company in any capacity,
>
> 6. Have any of you ever had a close personal friend or Relative [sic] that has ever worked as an adjustor for an an [sic] insurance company?
>
> 7. Have any of you had a close personal friend or relative That [sic] has worked for an insurance company in any capacity?

Possible Voir Dire Questions, Questions 5-7, at 2, filed January 28, 2019 (Doc. 125); (ix) whether the Court should allow Walker to ask the venire her proposed question 11:

> In this case, you will hear expert witness Ted Davis,[2] who is hired on a regular basis by the defense, to Testify [sic] against Ms. Walker on a number issues [sic]; will any of you have a hard time giving Ms. Walker a fair trial in light of the fact that the Defendants will call Ted Davis, as expert in this case? Consider all the evidence in the case before making you [sic] mind up after you hear from Mr. Davis?

Possible Voir Dire Questions, Question 11, at 2; (x) whether the Court should permit Walker to give to the venire her own summary of the case and ask the venire:

> 15. Do you know anything about the facts of this case except what you have heard in court today? (Give brief synopsis of facts in this case.)
>
> The facts of this case basically are that an accident happened north of Santa Fe, New Mexico, past the city of Gold Casino at a red light intersection of US

---

[2]The parties have not explained to what Davis will testify but the Court assumes that Davis is the Defendants' medical expert.

Highway 84/285, at intersection SR 503. The witnesses are all from Santa Fe, New Mexico, or Espanola, where Mr. Walker lives.

In a nutshell, the facts will show that July 23, 2015, the Plaintiff Ms. Walker who was driving her vehicle had slowed for a yellow light, and then stopped. At the same time and place, Karla A. Mcwilliams driving a State of New Mexico van with four (2) individuals had slowed for a yellow light and then stopped for the red light.

You will hear that Mr. Gregory J. Spina was driving a commercial sixteen wheeler, a semi truck with a large trailer, and was driving in the same direction as Ms. Walker and Ms. Mcwilliams, but was unable to slow down or stop, and when he came behind the two vehicles parked at the red light, rather than hit one or the other from behind, decided to drive between the two vehicles; and in that process he hit both vehicles. You will see pictures of the vehicles involved and all the people who came together as a result of that accident.

Possible Voir Dire Questions, Question 15, at 3; and (xi) whether the Court should allow Walker

to ask the venire:

35. Have any of you ever studied psychology or received Training [sic] in psychiatry or psychology?

36. In this case, the Plaintiff will be making a claim for a PTSD injury?

Experience with That [sic]?

37. Is anyone going to be able to sit on this jury in light of the fact that a claim for a psychological injury is claimed?

38. Will not be able to give damages for a psychological injury if one is proved?

39. Do you think that it is impossible for a person to suffer PTSD as a result of a vehicle accident?

40. What is your opinion of psychiatrists?

41. Do you recognize that there is a difference between a psychiatrist and a general practitioner?

42. Have you formed any opinion concerning the validity of psychiatry?

43. Do you accept the fact that a properly qualified psychiatrist is an expert in the diagnosis of certain forms of mental illness and mental defects?

Possible Voir Dire Questions, Questions 35-43, at 5. The Court concludes that: (i) it will not permit Walker to seek punitive damages even if Spina perjures himself; (ii) the Court will permit the Defendants to introduce Walker's medical records for impeachment purposes and for the truth of the matter asserted if the Defendants meet the requirements that the Court discussed in its Memorandum Opinion and Order, filed February 1, 2019 (Doc. 139)("Medical Records and Bills MOO"); (iii) as Walker withdrew her request to introduce her deposition correction page and all other documents related to the New Mexico Senior Olympics, the Court will exclude such evidence; (iv) the Court will permit Walker to introduce Dr. Khalsa's bills to rebut the Defendants' arguments about the letter of protection and the accompanying emails if Walker meets the requirements that the Court discussed in its Medical Records and Bills MOO; (v) the Court will preclude Walker from introducing evidence of the Defendants' insurance, and the Court will require the Defendants not to mention Walker's insurance and to redact the language on Walker's medical bills indicating that S. Ayala was Walker's insurance carrier; (vi) the Court will permit Walker to introduce factual evidence about Spina's driving, and, should the Court conclude that Walker has introduced sufficiently non-speculative testimony, the Court will include the statutes in the jury instructions for negligence per se; (vii) as Walker agreed not to suggest that the standard of care is any standard other than ordinary care and not to argue that the jury should determine Walker's damages according to what they would desire in Walker's position, the Court will preclude Walker from making such suggestions or arguments; (viii) the Court will allow Walker to identify individual potential jurors whose history in the insurance industry cause her concern and to question those potential jurors individually, but the Court will not permit

Walker to ask the venire such questions; (ix) as Walker agreed to withdraw question 11, the Court will preclude Walker from asking that question; (x) because the Court will make the statement of the case, the Court will prohibit Walker from giving her own statement of the case to the entire venire, but, if potential jurors indicate familiarity with the case, the Court will permit Walker to question those jurors individually at the bar; and (xi) the Court will allow Walker to ask the venire about their attitudes toward psychiatry. Accordingly, the Court: (i) denies the Punitive MIL; (ii) grants the Medical Records MIL in part and denies it in part; (iii) grants the Defendants' Exhibits MIL in part and denies it in part; (iv) grants the Insurance MIL; (v) grants the Statutes MIL in part and denies it in part; (vi) grants the Standard of Care MIL; and (vii) grants the Voir Dire Objections in part and denies them in part.

## FACTUAL BACKGROUND

The Court recited this case's facts and early procedural history in its Memorandum Opinion and Order at 2-3, 2018 WL 4100944, at *1, filed August 28, 2018 (Doc. 67)("MOO"). The Court incorporates that recitation here. The footnotes in the quotations are in the original.

> The Court takes its facts from Walker's Complaint for Personal Injuries and Damages (First Judicial District Court, County of Santa Fe, State of New Mexico), filed December 23, 2016, filed in federal court September 29, 2017 (Doc. 1-1)("Complaint"). The Court provides these facts for background. It does not adopt them as the truth, and it recognizes that the facts are largely Walker's version of events.

> On July 23, 2015, Defendant Gregory J. Spina was speeding on U.S. Highway 84/285 in a commercial vehicle that Defendant Valley Express, Inc. owned. See Complaint ¶¶ 6-7, at 2. As Spina approached a red light, he realized that he was going too fast to brake, so, instead of hitting the vehicles stopped side by side in front of him, he attempted to slip between them. See Complaint ¶ 7, at 2. Rather than avoiding the stopped vehicles, however, he sideswiped both of them, causing both cars to roll into the intersection. See Complaint ¶ 7, at 2-3. Walker

was driving one of the sideswiped vehicles and, because of Spina's actions, suffered physical and emotional injuries. See Complaint ¶¶ 7, 11, at 2-4.

MOO at 2, 2018 WL 4100944, at *1.

## PROCEDURAL BACKGROUND

Walker sues Spina and Valley Express, asserting negligence,[3] and sues Defendant Dixon Insurance Company, asserting that she has a claim for benefits against it under the [New Mexico Financial Responsibility Act, N.M. Stat. Ann. §§ 66-5-201 to -239] and Raskob[ v. Sanchez, 1998-NMSC-045, 970 P.2d 580] for injuries that Spina's negligence caused. See [Walker's Complaint for Personal Injuries and Damages ¶¶ 8-13, at 3-5, First Judicial District Court, County of Santa Fe, State of New Mexico (filed December 23, 2016), filed in federal court September 29, 2017 (Doc. 1-1)("Complaint")]. Spina and Valley Express removed the case to federal court on the basis of diversity jurisdiction. See Notice of Removal to the United States District Court for the District of New Mexico at 1, filed September 29, 2017 (Doc. 1)("Notice of Removal").

MOO at 2-3, 2018 WL 4100944, at *1. The Amended Complaint terminated Defendant Dixon Insurance Company as a Defendant and added, in its place, Defendant Great West Casualty Company. See Amended Complaint at 1. In a November 21, 2018, hearing, Walker asserted that she withdrew her claim for punitive damages against Valley Express. See Draft Transcript of Hearing at 56:25-57:1 (taken November 21, 2018)(A. Ayala)(asserting that Walker will not seek punitive damages from Valley Express)("Nov. 21, Tr.").[4] In the Memorandum Opinion and Order, 2018 WL 6519133, filed December 11, 2018 (Doc. 104)("Punitive Damages MOO"), the Court granted summary judgment dismissing Walker's claim for punitive damages against Spina. See

---

[3]Although the Complaint does not make this claim explicit, Walker presumably sues Valley Express under respondeat superior.

MOO at 2, 2018 WL 4100944, at *1.

[4]The Court's citations to the transcript of the November 21, 2018, hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

Punitive Damages MOO at 52, 2018 WL 6519133, at *19.  The Court bifurcated the claims against Spina and Valley Express from those claims against Great West.  See Order Granting Defendants' Gregory J. Spina and Valley Express, Inc.'s Motion to Bifurcate at 1, filed January 15, 2019 (Doc. 115)("Bifurcation Order").  In the Bifurcation Order, to which the parties stipulated, the Court ordered the parties to withhold Great West's name from the jury at the trial between Walker and the Defendants, and excluded evidence of insurance at that trial.  Bifurcation Order at 1.

On January 28, 2019, the Court held a pretrial conference for the trial between Walker, and the Defendants Spina and Valley Express.  See Clerk's Minutes at 1, filed January 28, 2019 (Doc. 120).  Following the pretrial conference, the parties filed the Punitive MIL, the Medical Records MIL, the Defendants' Exhibits MIL, the Insurance MIL, the Statutes MIL, and the Standard of Care MIL.  See Punitive MIL at 1-2; Medical Records MIL at 5; Defendants' Exhibits MIL at 2; Insurance MIL at 3; Statutes MIL at 3; Standard of Care MIL at 3.  The same day as the pretrial conference, Walker also filed her Possible Voir Dire Questions.  See Possible Voir Dire Questions at 6.  For three questions, Walker proposes asking:

> 5.  Have any of you worked for an insurance company in any capacity,
>
> 6.  Have any of you ever had a close personal friend or Relative [sic] that has ever worked as an adjustor for an an [sic] insurance company?
>
> 7.  Have any of you had a close personal friend or relative That [sic] has worked for an insurance company in any capacity?

Possible Voir Dire Questions, Questions 5-7, at 2.  As possible question 11, Walker states:

> 11.  In this case, you will hear expert witness Ted Davis, who is hired on a regular basis by the defense, to Testify [sic] against Ms. Walker on a number issues [sic]; will any of you have a hard time giving Ms. Walker a fair trial in light of the fact that the Defendants will call Ted Davis, as expert in this case?  Consider all the evidence in the case before making you [sic] mind up after you hear from Mr. Davis?

Possible Voir Dire Questions, Question 11, at 2. Walker suggests as question 15:

15. Do you know anything about the facts of this case except what you have heard in court today? (Give brief synopsis of facts in this case.)

The facts of this case basically are that an accident happened north of Santa Fe, New Mexico, past the city of Gold Casino at a red light intersection of US Highway 84/285, at intersection SR 503. The witnesses are all from Santa Fe, New Mexico, or Espanola, where Mr. [sic] Walker lives.

In a nutshell, the facts will show that July 23, 2015, the Plaintiff Ms. Walker who was driving her vehicle had slowed for a yellow light, and then stopped. At the same time and place, Karla A. Mcwilliams driving a State of New Mexico van with four (2) individuals had slowed for a yellow light and then stopped for the red light.

You will hear that Mr. Gregory J. Spina was driving a commercial sixteen wheeler, a semi truck with a large trailer, and was driving in the same direction as Ms. Walker and Ms. Mcwilliams, but was unable to slow down or stop, and when he came behind the two vehicles parked at the red light, rather than hit one or the other from behind, decided to drive between the two vehicles; and in that process he hit both vehicles. You will see pictures of the vehicles involved and all the people who came together as a result of that accident.

Possible Voir Dire Questions, Question 15, at 3. In questions 35 through 43, Walker proposes to ask:

35. Have any of you ever studied psychology or received Training [sic] in psychiatry or psychology?

36. In this case, the Plaintiff will be making a claim for a PTSD injury?

Experience with That [sic]?

37. Is anyone going to be able to sit on this jury in light of the fact that a claim for a psychological injury is claimed?

38. Will not be able to give damages for a psychological injury if one is proved?

39. Do you think that it is impossible for a person to suffer PTSD as a result of a vehicle accident?

40. What is your opinion of psychiatrists?

41. Do you recognize that there is a difference between a psychiatrist and a general practitioner?

42. Have you formed any opinion concerning the validity of psychiatry?

43. Do you accept the fact that a properly qualified psychiatrist is an expert in the diagnosis of certain forms of mental illness and mental defects?

Possible Voir Dire Questions, Questions 35-43, at 5.

1.    **The Punitive MIL**.

In the Punitive MIL, Walker requests that, should "Valley Express, Inc., through it's employee Gregory J. Spina . . . commit perjury during his sworn testimony," the Court permit Walker "to claim punitive damages in jury instructions and in argument to the jury." Punitive MIL at 1. Walker recognizes that, in the Court's Punitive Damages MOO, the Court granted summary judgment dismissing Walker's punitive damages claiMs. See Punitive MIL at 1-2. Walker, however, anticipates that Spina "will commit perjury regarding the citation issued to him by retired State Police Officer Quinn," and Walker asks that, if Spina makes such statements and if the Court concludes that Walker perjured himself, "a new theory of requesting punitive damages . . . should be allowed." Punitive MIL at 2.

2.    **The Punitive MIL Response**.

The Defendants responded to the Punitive MIL on February 4, 2019. See Defendants' Gregory J. Spina and Valley Express, Inc's Response to Plaintiff's Motion in Limine Regarding Punitive Damages, filed February 4, 2109 (Doc. 144)("Punitive MIL Response"). The Defendants argue that Walker has no legal basis or theory on which to seek punitive damages, and that, moreover, Walker has waived any claims to punitive damages. See Punitive MIL Response at 2. The Defendants recapitulate that, on November 21, 2018, Walker "withdrew her request for punitive damages" and that, in the Punitive Damages MOO, the Court dismissed Walker's punitive damages claim. Punitive MIL Response at 1. The Defendants assert that, additionally, Spina will

not perjure himself and that Walker "has no information to support this conclusion."  Punitive MIL Response at 1.

### 3. The Medical Records MIL.

In the Medical Records MIL, Walker requests that the Court prohibit the Defendants from introducing any exhibits that the Defendants have not provided to Walker, that violate the rules against hearsay, and for which the Defendants do not lay the proper foundation.  See Medical Records MIL at 4.  Walker complains that the Defendants indicated that they may introduce Walker's medical records in rebuttal.  See Medical Records MIL at 2.  Walker contends that the Defendants have not established that the medical records are relevant, authentic, and excepted from the prohibition on hearsay, and that the Defendants must meet these requirements before introducing the documents.  See Medical Records MIL at 2-3.  Walker also argues that she will not introduce her medical records and that the Defendants will not suffer prejudice if they cannot introduce her medical records, because the Defendants have a medical expert and will have the opportunity to cross-examine Walker's medical expert.  See Medical Records MIL at 3.  Walker additionally objects to "any other document that the Defendants intend to introduce" for rebuttal, because, according to Walker, she has provided the Defendants with her proposed exhibits and these exhibits do not include medical records.  Medical Records MIL at 3-4.  Walker adds that the Defendants objected to her introducing medical records.  See Medical Records MIL at 4. According to Walker, the Defendants, therefore, are limited to introducing documents that are required to complete Walker's exhibits.  See Medical Records MIL at 4 (citing N.M. R. Evid. 11-106).

4.      **The Medical Records MIL Response.**

The Defendants responded on February 4, 2019.  See Defendants' [sic] Gregory J. Spina and Valley Express, Inc.'s Response to Plaintiff's Motion in Limine and Objection to Defendants' Proposed Exhibit List, at 3, filed February 4, 2019 (Doc. 145)("Medical Records MIL Response"). The Defendants request that the Court deny the Medical Records MIL.  See Medical Records MIL Response at 2.  The Defendants explain that they identified "'Plaintiff's medical records necessary for rebuttal' and 'Any other documents necessary for rebuttal' as potential exhibits in case an area of inquiry not anticipated arises at trial."  Medical Records MIL Response at 1.  According to the Defendants, they cannot yet specify the documents that they will require for rebuttal, but the Defendants contend that they "identified documents necessary for rebuttal to put Plaintiff on notice that any document identified in discovery which may contradict or impeach certain witnesses [sic] testimony, may be sought to be introduced at trial."  Medical Records MIL Response at 1.  The Defendants note that they may not even require the medical records for rebuttal.  See Medical Records MIL Response at 2.  The Defendants also dispute Walker's characterization that they strongly objected to her introducing medical records.  See Medical Records MIL Response at 2. The Defendants explain that they agreed with the Court "that there may not be an exception which allowed Plaintiff's medical records into evidence," that they "would not stipulate to the medical records as exhibits because they believe that the proper foundation must be established for these records to be admitted," and that they object to Walker admitting the amended records that Dr. Khalsa has amended since January, 2019.  Medical Records MIL Response at 2.

5.      **The Defendants' Exhibits MIL.**

In the Defendants' Exhibits MIL, Walker asks that the Court permit her to introduce certain documents in response to the Defendants' proposed exhibits.  See Defendants' Exhibits MIL at 2. Walker explains that the Defendants indicated that they would introduce "only a few pages of the Senior Olympic Records, and a few pages of the records for Dr. Khalsa."  Defendants' Exhibits MIL at 2.  Walker requests that, pursuant to the rule admitting the "Remainder of or Related Writings or Recorded Statements," N.M. R. Evid. 11-106 (capitalization in rule's title), the Court allow her to "introduce the Correction Page to Plaintiff's Deposition correcting her testimony regarding the Olympics, the full record regarding the Olympics, and all of Dr. Khalsa's medical records and billings discussed in the proposed Exhibits proposed by Defendants as they pertain to Dr. Khalsa," Defendants' Exhibits MIL at 2 (citing N.M. R. Evid. 11-106).

6.      **The Defendants' Exhibits MIL Response.**

The Defendants responded on February 4, 2019, and asked the Court to deny the Defendant's Exhibits MIL.  See Defendants' Gregory J. Spina and Valley Express, Inc.'s Response to Plaintiff's Motion in Limine Regarding Introduction of All Olympics Records, Trattel Court Reporting Page and Medical and Billing Records for Dr. Khalsa at 2, filed February 4, 2019 (Doc. 146)("Defendant's Exhibits MIL Response").  Regarding the additional New Mexico Senior Olympics documents, the Defendants explain that they "identified as exhibits" all the documents that "they received directly from New Mexico Senior Olympics and the Rio Arriba Senior Olympics pursuant to subpoenas."  Defendants' Exhibits MIL Response at 1.  The Defendants indicate that they "are unsure [to] what additional documents Plaintiff is referring," but explain that they suspect that she is referencing the results sheets from the New Mexico Senior Olympics.

Defendants' Exhibits MIL Response at 1. The Defendants contend that, because they obtained the results sheets from the internet, those documents are inadmissible. See Defendants' Exhibits MIL Response at 1-2. The Defendants ask that, if Walker means that the Defendants did not provide her all the documents that they obtained through the subpoena, Walker identify any "specific documents missing." Defendants' Exhibits MIL Response at 2.

Regarding the medical records and bills from Dr. Khalsa, the Defendants explain that they intend to introduce "a specific intake record showing that Dr. Khalsa was under the belief that she would obtain a letter of protection in this matter" and that they will not introduce Walker's medical records. Defendants' Exhibits MIL Response at 2. The Defendants contend that this intake record illustrates Dr. Khalsa's bias. See Defendants' Exhibits MIL Response at 2. The Defendants argue that neither they nor Walker can introduce Dr. Khalsa's amended medical records, because they are unreliable. See Defendants' Exhibits MIL Response at 2 (citing Memorandum Opinion and Order, filed February 1, 2019 (Doc. 139) The Defendants accuse Walker of attempting to bring back her medical records into the trial through the Defendant's Exhibits MIL despite her statement "that she will not be seeking past and future medical expenses." Defendants' Exhibits MIL Response at 2.

The Defendants then address Walker's desire to introduce Walker's deposition correction page. See Defendants' Exhibits MIL Response at 2. The Defendants object that this deposition correction page is not "relevant or required as an exhibit." Defendants' Exhibits MIL Response at 2-3. The Defendants contend that "Walker will have an opportunity to testify regarding her participation [in the New Mexico Senior Olympics] and will be cross-examined on that front." Defendants' Exhibits MIL Response at 2. The Defendants note, moreover, that Walker "identified

the New Mexico Senior Olympic records as exhibits without also identifying her deposition correction page as a necessary component of those records." Defendants' Exhibits MIL Response at 3.

7.      **The Insurance MIL.**

In the Insurance MIL, the Defendants ask that, pursuant to rules 401, 402, and 403 of the Federal Rules of Evidence, the Court preclude Walker from mentioning their "insurance or insurance company." Insurance MIL at 1-2. The Defendants contend that evidence of insurance "is completely irrelevant in this matter and it would greatly prejudice Defendants' [sic] if any information regarding their insurance were introduced at trial." Insurance MIL at 2. According to the Defendants, Walker argued at the January 28, 2019, pretrial conference that, should the Defendants introduce Walker's medical bills that show S. Ayala as Walker's insurance provider, "it would open the door for Plaintiff to introduce evidence of Defendants' insurance coverage." Insurance MIL at 2. The Defendants contend that they will not introduce Walker's medical bills to display that Walker had insurance, but rather to "illustrate that counsel directed Plaintiff's care" and to "show potential bias." Insurance MIL at 2. According to the Defendants, both purposes have probative value for a jury that will determine Walker's damages. See Insurance MIL at 2.

8.      **The Insurance MIL Response.**

Walker responded on February 1, 2019. See Response to Defendants Gregory J. Spina and Valley Express, Inc's Motion in Limine Prohibiting Mention of Defendants' Insurance, filed February 1, 2019 (Doc. 14)("Insurance MIL Response"). Walker explains that Dr. Khalsa "has two billing companies," and that one company erroneously listed S. Ayala as Walker's "insurance carrier." Insurance MIL Response at 1-2. Walker contends that the billing company has corrected

the error, but that the Defendants nevertheless seek to introduce medical bills that contain the error. See Insurance MIL Response at 2. Walker admits that S. Ayala "issued a letter of protection for the billing of Plaintiff for Dr. Khalsa's services." Insurance MIL Response at 2. Walker complains, however, that the Defendants are planning "to argue to the jury facts which they know are false" and asserts that any such argument opens the door for her to correct the Defendants' statements. Insurance MIL Response at 2. Walker asks that the Court permit her to account for the harm that the Defendants' arguments will cause her "by informing the jury about the insurance coverage that defendants hold . . . and . . . that the assertions being made by the Defendants are knowingly false and misleading." Insurance MIL Response at 2-3.

9. **The Statutes MIL.**

In the Statutes MIL, the Defendants request that, pursuant to rules 401, 402, 403, and 602 of the Federal Rules of Evidence, the Court exclude evidence or statements "concerning Defendant allegedly violating New Mexico States [sic] which he was not cited for, such as speeding, careless driving, reckless driving, and violation of traffic control statutes." Statutes MIL at 1. The Defendants "anticipate" that Walker will introduce speculative evidence that Spina violated such statutes as those listed above, although he received no citations for such violations. Statutes MIL at 2. The Defendants contend that Walker will introduce no witnesses with personal or expert knowledge that Spina "was speeding prior to, or after the accident." Statutes MIL at 2. The Defendants further argue that, unless a witness has personal knowledge that Spina ran a red light, the Court should exclude "any testimony, comments or arguments" about Spina committing such an act. Statutes MIL at 2. Last, the Defendants aver that Walker cannot introduce witnesses to

testify that Spina drove carelessly or recklessly, because such statements "require legal conclusions." Statutes Mil at 2.

10.     **The Statutes MIL Response**.

On February 1, 2019, Walker responded to argue against the Defendants' position. See Response to Defendants Gregory J. Spina and Valley Express, Inc's Motion in Limine Prohibiting Mention of Alleged Violation of Statutes, filed February 1, 2019 (Doc. 141)("Statutes MIL Response"). Walker explains that "Defendant Gregory J. Spina was cited for following to [sic] close in violation of § 66-7-318," and that the Defendants "do not concede that the violation of the statute is negligence per se" in their proposed jury instructions, will argue that Spina did not act negligently, and have requested a jury instruction explaining that neither the happening of an accident nor the filing of a lawsuit are alone evidence of an accident. Statutes MIL Response at 1-2. Walker further describes the Defendants' position in their Statutes MIL as "preposterous" and contends that "she should be allowed to detail all the facts of the case including those violation [sic] of statutes that the Defendant was not cited for." Statutes MIL Response at 2. Walker last contends that only Spina can describe "how the accident occurred" and that the Court should allow her to question him about "all the facts of the case." Statutes MIL Response at 3.

11.     **The Standard of Care MIL**.

In their Standard of Care MIL, the Defendants ask that the Court "exclude any opening statement, introduction of evidence or other mention during *voir dire* or at trial . . . distorting the standard of care or making Golden Rule Arguments." Standard of Care MIL at 1. According to the Defendants, "the standard of care in this case is not to do what is 'safe,' 'safer,' or 'safest.'" Standard of Care MIL at 2. The Defendants, thus, request that the Court proscribe Walker "from

eliciting testimony or describing Defendants' actions in any other manner than the appropriate

standard of care," which is ordinary care. Standard of Care MIL at 2. The Defendants next request

that the Court prescribe "Golden Rule arguments." Standard of Care MIL at 2. According to the

Defendants, such arguments suggest to the jurors "that they should place themselves in the position

of a party in making a determination of the amount of damages to be awarded." Standard of Care

MIL at 2 (internal quotation marks omitted)(quoting Higgins v. Hermes, 1976-NMCA-066, ¶40,

552 P.2d 1227 (Sutin, J., concurring)). According to the Defendants, "New Mexico case law

prohibits lawyers from making Golden Rule arguments." Standard of Care MIL at 2 (citing Jolley

v. Energen Res. Corp., 2008-NMCA-164, ¶ 28, 145 N.M. 350, 198, P.3d 376, 385; Jackson v. Sw.

Pub. Serv. Co., 1960-NMSC-027, ¶ 59, 349 P.2d 1029, 1041).

12.     **The Standard of Care MIL Response.**

On February 1, 2019, Walker filed the Response to Defendants Gregory J. Spina and Valley

Express, Inc's Motion in Limine Regarding Standard of Care and Golden Rule Arguments, filed

February 4, 2019 (Doc. 143)("Standard of Care MIL Response"). Walker asserts that she "will

not argue that the standard of care in this case is 'safe', 'safer' or 'safest' unless the Defendants

open the door to that argument at anytime [sic] including closing argument." Standard of Care

MIL Response at 1. Likewise, Walker states that she "will not suggest to the jury that they should

'place themselves in the position' of plaintiff, unless [the Defendants] open the door to that

argument." Standard of Care MIL Response at 1-2.

13.     **The Voir Dire Objections.**

The Defendants raise several objections to Walker's Possible Voir Dire Questions. The

Defendants first object to Walker's possible "questions 5, 6, and 7," which address insurance. Voir

Dire Objections at 1. The Defendants contend that insurance "has no bearing in this matter and these questions are irrelevant," and that, pursuant to the Bifurcation Order at 1, Walker cannot introduce evidence of insurance. Voir Dire Objections at 1 (citing generally Bifurcation Order). Second, the Defendants object to "proposed question 11." Voir Dire Objections at 1. The Defendants argue that this question seeks "to taint the jury regarding Dr. Davis' testimony and assumes facts not in evidence," and that the Court should exclude "any questions regarding specific experts." Voir Dire Objections at 1. Third, the Defendants dispute "proposed question 15," because, according to the Defendants, Walker attempts to introduce her own statement of the case through the question. Voir Dire Objections at 2. Fourth, the Defendants aver that the Court requested a statement of the case from the parties and that the Court would make such a statement. See Voir Dire Objections at 2. Lastly, the Defendants argue that Walker's "proposed questions 35 through 43" "address specific claims the Plaintiff is making and are inappropriate." Voir Dire Objections at 2. The Defendants particularly object to question 39, because it specifically addresses their expert's opinion and "seems to be an attempt to taint the jury regarding those questions." Voir Dire Objections at 2.

14. **The Voir Dire Objections Response.**

Walker responds. Response to Defendants Gregory J. Spina and Valley Express, Inc's Objectiosn to Plaintiff's Proposed Voir Dire, filed February 1, 2019 (Doc. 142)("Voir Dire Objections Response"). In response to the Defendants' arguments about questions 5, 6, and 7, Walker argues that she "has the right to ask jurors" such questions "to determine if any juror might have a 'bias' against a litigant seeking damages in this civil case." Voir Dire Objections Response at 1-2. Walker adds that the "questions regarding insurance employment are based on a good faith

effort to select jurors who can be fair, and are not meant to misrepresent the law or inject inappropriate matter into question, and it is not an effort to indoctrinate the jurors." Voir Dire Objections Response at 2. Walker further contends that the questions do not mention insurance's existence or non-existence, and that she has not violated the Bifurcation Order. See Voir Dire Objections Response at 2. Walker concedes that she will withdraw question 11. See Voir Dire Objections Response at 2.

### 15.    The Hearing.

Walker began the hearing by discussing the Punitive MIL. See Draft Transcript of Hearing at 3:2-8 (taken January 5, 2019)(Court, A. Ayala)("Tr.").[5] Walker explained that the Defendants have refused to stipulate "to the citation that the officer had issued Mr. Spina," Tr. at 3:11-12 (A. Ayala), and that she will introduce the police report from the automobile accident, Tr. at 3:17-19 (A. Ayala). Walker stated that, if Spina denies receiving the traffic citation, she will introduce the traffic citation and seek punitive damages. See Tr. at 4:14-21 (A. Ayala). Walker would not specify under what theory she will seek punitive damages, but clarified that she will pursue a theory different from those that she has previously argued. See Tr. at 4:20-25 (A. Ayala). Walker additionally asked that the Court reverse its prior decision on punitive damages. See Tr. at 4:25-5:10 (A. Ayala). The Defendants responded that "[p]unitive damages are out," Tr. at 5:20 (Sedillo), and that Walker cannot reintroduce them, see Tr. at 5:24-6:1 (Sedillo). The Defendants separated the traffic citation's admissibility, which they do not contest, from whether Walker may

---

[5]The Court's citations to the transcript of the January 5, 2019, hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

seek punitive damages and contended that, even if Spina states that he did not follow too closely, such a statement will not equate to perjury, because Spina might believe that he did not follow too closely but still receive a citation. See Tr. at 6:2-23 (Sedillo). The Defendants likewise indicated that they do not understand the police report's relationship to Walker's argument about punitive damages. See Tr. at 7:8-14 (Sedillo). Walker reiterated that she will make a new punitive damages argument and explained that she will not seek punitive damages if Spina does not deny receiving the traffic citation. See Tr. at 7:18-25 (A. Ayala). The Court rejected Walker's contentions and indicated that it did not see "how punitive damages are going to creep back into the case even if [Spina perjures] himself[.] . . . So I think we ought to plan on punitive damages not being in the case." Tr. at 8:1-6 (Court).

Walker then turned to the Medical Records MIL. See Tr. at 11:21-23 (A. Ayala). Walker described that the Defendants had notified her that they would "present all of the plaintiff's medical reports." Tr. at 10:22-23 (A. Ayala). Walker first requested that, if the Defendants introduce such medical reports, the Court require the Defendants to adhere to "the same procedures that we would have had to follow . . . [if] we presented any kind of [medical] records." Tr. at 10:25-11:2 (A. Ayala). Walker then complained that the Defendants have not provided her with all the medical records that they intend to introduce and have not listed all the medical records that they will introduce in their exhibit list. See Tr. at 11:2-7 (A. Ayala). The Defendants responded that

> we noted on our exhibit list that we may use plaintiff's medical necessary for rebuttal. We don't anticipate trying to enter in all of her medical records. Since for rebuttal, we're not able to identify what specific records may be necessary. It will depend on the testimony of the treatment providers and Ms. Walker as she testifies.

Tr. at 11:12-19 (Beaulieu). The Defendants explained that they mentioned the medical records in their exhibit list to notify Walker that they might use those documents. See Tr. at 11:23-12:3

(Beaulieu).  The Court asked how Walker expected the Court to address the medical records before trial, <u>see</u> Tr. at 12:19-20 (Court), and Walker repeated that the Defendants will need to lay the foundation for the medical records as the Court described in the Medical Records and Bill MOO, <u>see</u> Tr. at 12:21-25 (A. Ayala).  The Court replied that it had understood that the Defendants will reference the medical records primarily as impeachment material.  <u>See</u> Tr. at 13:17-18 (Court). The Defendants concurred with the Court's assessment.  <u>See</u> Tr. at 13:19 (Beaulieu).  Walker conceded that the Defendants may introduce the records for those purposes.  <u>See</u> Tr. at 14:2-4 (A. Ayala).  The Defendants then noted that they anticipate that a situation might arise in which they might introduce a medical record for rebuttal, but the Defendants also stated that Walker had all the medical records in her possession.  <u>See</u> Tr. at 14:7-17 (Beaulieu).  The Court noted that, if the Defendants introduce a medical record for the truth of the matters asserted, the Medical Records and Bills MOO will apply to the Defendants.  <u>See</u> Tr. at 14:18-21 (Court).  The Court summarized that, at the time of the hearing, it could do no more to determine which medical records will be admissible.  <u>See</u> Tr. at 14:22-15:3 (Court).

The Court turned the parties' attention to the Defendants' Exhibits MIL.  <u>See</u> Tr. at 15:4-8 (Court).  Walker indicated that, if the Defendants open the door to discussing Dr. Khalsa's medical records and bills, Walker will introduce the medical bills.  <u>See</u> Tr. at 15:9-23 (A. Ayala).  Walker conceded that she will not seek to introduce the deposition correction page or other documents related to the New Mexico Senior Olympics.  <u>See</u> Tr. at 15:24-16:6 (A. Ayala).  The Defendants then explained that they will not ask Dr. Khalsa about her medical bills, but that, to illustrate Dr. Khalsa's bias, they will introduce the letter of protection  that S. Ayala gave Dr. Khalsa.  <u>See</u> Tr. at 16:18-24 (Beaulieu); <u>id.</u> at 17:6-12 (Beaulieu).  Walker responded that the Defendants'

exhibit includes several emails reflecting discussions between Walker's counsel and Dr. Khalsa about "billing and medical records." Tr. at 17:23-24 (A. Ayala). Walker noted that, if the Defendants do not reference those emails, the parties will not "have a problem." Tr. at 18:1-2 (A. Ayala). The Defendants responded that "so long as Dr. Khalsa . . . testifies in line with these emails they may not be introduced as exhibits." Tr. at 18:2-5 (Beaulieu). The Defendants added that, in the emails, Dr. Khalsa "provides questions and correspondence with the attorneys regarding medical records and whether she's providing sufficient information to them, which again goes towards her bias and testimony and impeachment, not towards the bills themselves or any other information." Tr. at 18:7-12 (Beaulieu). The Court indicated that it sees no reason to exclude such evidence. See Tr. at 18:13-15 (Court). Walker agreed with the Court, but, citing rule 106, stated that, if the Defendants question Dr. Khalsa about the emails, Walker will question Dr. Khalsa about and introduce the medical bills. See Tr. at 18:17-19:2 (A. Ayala). The Court concluded that Walker should have the opportunity to clear the record. See Tr. at 19:3-6 (Court). Walker interjected that she will ask Dr. Khalsa about the billing even if the Defendants introduce the letter of protection only and not the emails. See Tr. at 19:15-21 (A. Ayala). The Defendants clarified that they do not seek to exclude such evidence but that they ask that Walker provide the foundation for such evidence. See Tr. at 19:22-20:6 (Beaulieu).

The Court proceeded to the Insurance MIL. See Tr. at 20:19-23 (Court). The Court asked whether the parties agreed that "insurance should not be mentioned." Tr. at 20:22 (Court). Walker agreed with the Court's statement, but, for the reasons explained in the Insurance MIL Response, objected to the Defendants introducing the medical bills naming S. Ayala as Walker's insurance provider. See Tr. at 20:24-21:14 (A. Ayala). The Defendants also agreed that "insurance should

not be mentioned." Tr. at 21:17-18 (Sedillo). The Defendants, however, argued that the medical bills with S. Ayala's name "fall . . . in line with the last motion . . . with the bias shown for the medical providers for plaintiff." Tr. at 21:22-24 (Sedillo). The Defendants contended that the Court should allow them to impeach Walker with this information and asserted that Walker can then explain the medical bills. See Tr. at 22:2-8 (Sedillo). The Court asked whether the Defendants need to mention Walker's insurance, and the Defendants responded that they do not foresee such a need and clarified that the medical bills contain S. Ayala's name. See Tr. at 22:11-13 (Court, Sedillo). The Court pressed and the Defendants agreed that the Defendants will not mention Walker's insurance. See Tr. at 22:18-21 (Court, Sedillo). Walker objected that the Defendants know that the medical bills are false, misleading, untrue, and in error, and that introducing the medical bills brings "insurance right into it." Tr. at 23:6-7 (A. Ayala). See id. at 23:1-7 (A. Ayala). The Court asked how such evidence brings insurance into the case, and Walker explained that the line with S. Ayala's name states that S. Ayala is Walker's insurance carrier. See Tr. at 23:8-12 (Court, Ayala). The Court asked whether the Defendants can redact the line; the Defendants agreed to redact that line, and Walker accepted that solution. See Tr. at 23:13-24:2 (Court, Sedillo, Ayala).

The Court next directed the parties' attention to the Statutes MIL. See Tr. at 24:14-17 (Court). The Defendants explained that Spina received a citation for following too closely and that Spina was not cited for violating any other statutes, including "speeding, violation of a traffic control light, careless driving, and reckless driving." Tr. at 24:24-25 (Beaulieu). See id. at 25:1-3 (Sedillo). The Defendants asked that

> the plaintiff be precluded from mentioning that Mr. Spina violated these statutes.
> Additionally we'd ask that the plaintiff and any of her witnesses be precluded from

speculating regarding whether he was speeding, running a red light. And I don't think any of the witnesses or Ms. Walker are qualified to say that his actions violated the careless driving statute or the reckless driving statute. Again, since Mr. Spina was not cited for those, we'd ask that the plaintiff be precluded from having any witnesses speculate as to the violations of those statutes or argue that he violated those status.

Tr. at 25:4-16 (Beaulieu). The Court responded that the Court and the parties will have to determine at trial whether Walker has presented sufficient evidence for a negligence per se jury instruction. See Tr. at 25:17-20 (Court). The Court indicated that, if Walker produces sufficient evidence, a negligence per se instruction might be appropriate. See Tr. at 25:20-25 (Court). The Court asserted that Walker's witnesses cannot speculate but must testify to what they observed. See Tr. at 26:1-2 (Court). The Defendants responded that they mainly worry that Walker will introduce speculative evidence. See Tr. at 26:6-9 (Beaulieu). Walker stated that she plans to ask Spina about the accident and that, if Spina admits to violating traffic laws, she will explore those issues. See Tr. at 26:11-27:5 (A. Ayala). The Court summarized that it will preclude speculative evidence and that it will decide after hearing Walker's evidence whether to instruct the jury on negligence per se. See Tr. at 27:9-18 (Court).

The Court then directed the parties to the Standard of Care MIL. See Tr. at 27:19-21 (Court). The Defendants stated that Walker had agreed to the Standard of Care MIL. See Tr. at 27:22-23 (Sedillo). Walker agreed that the Court should grant the Standard of Care MIL, unless the Defendants open the door to the arguments which the Standard of Care MIL excludes. See Tr. at 27:22-28:2 (Sedillo, Court, A. Ayala).

Last, the Court asked the parties about the Voir Dire Objections. See Tr. at 28:5 (Court). The Defendants first indicated that Walker had withdrawn question 11, to which they had objected. See Tr. at 28:21-25 (Beaulieu). The Defendants then objected to Walker's proposed questions 5,

6, and 7, because, according to the Defendants, the questions focus on insurance and because the

parties had agreed to excluding mentions of insurance. <u>See</u> Tr. at 298:25-29:10 (Beaulieu). The

Court interjected to ask whether, rather than ask those questions of the venire, Walker is willing

to identify individual potential jurors about whom she has concerns and question them

individually at the bar. <u>See</u> Tr. at 29:21-30:5 (Court). Walker agreed to that solution and

explained that she wants to exclude those people whose experiences in the insurance industry

have led to biases against plaintiffs in cases such as hers. <u>See</u> Tr. at 30:6-13 (A. Ayala). The

Defendants also agreed to the Court's proposal. <u>See</u> Tr. at 30:14-18 (Court, Beulieu). The

Defendants then complained about question 15, in which Walker includes her own statement of

the case, because, according to the Defendants, the parties have provided the Court a joint

statement of the case. <u>See</u> Tr. at 30:25-31:11 (Beaulieu). The Court asked whether the parties

object to the Court reading the parties' joint statement of the case and calling individual potential

jurors who know facts about the case to the bar for individual conversations. <u>See</u> Tr. at 31:12-

32:2 (Court). The parties agreed to that suggestion. <u>See</u> Tr. at 32:3-6 (Ayala, Court, Beaulieu).

The Defendants objected to the proposed questions 35 through 43, because, according to the

Defendants, the questions are "an attempt to taint the jury." Tr. at 32:9-17 (Beaulieu). Walker

explained that she wants to know whether anyone in the venire does not believe in psychiatry

and indicated that the Court may ask the questions if Walker may speak at the bench with

individuals who object to psychiatry. <u>See</u> Tr. at 33:3-8 (A. Ayala). The Court stated that it

deems the questions appropriate, because the Court understands that the case will focus heavily

on Walker's mental health. <u>See</u> Tr. at 33:9-13 (Court). The Defendants requested that Walker

"keep those questions broad.," <u>see</u> Tr. at 33:19 (Beaulieu), but the Court overruled the

Defendants' objections to the question 35 through 43, <u>see</u> Tr. at 33:22-23 (Court).  **NEW**

**MEXICO LAW REGARDING NEGLIGENCE**

Generally, a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based on a standard of reasonable care, and the breach being a cause-in-fact and proximate cause[6] of the plaintiff's damages.  <u>See</u> <u>Coffey v. United States</u>, 870 F. Supp. 2d 1202, 1225 (D.N.M. 2012)(Browning, J.)(citing <u>Herrera v. Quality Pontiac</u>, 2003-NMSC-018, ¶ 6, 73 P.3d 181, 185-86).  "In New Mexico, negligence encompasses the concepts of foreseeability of harm to the person injured and of a duty of care toward that person." <u>Ramirez v. Armstrong</u>, 1983-NMSC-104, ¶ 8, 673 P.2d 822, 825.  Generally, negligence is a question of fact for the jury.  <u>See</u> <u>Schear v. Bd. of Cty. Comm'rs</u>, 1984-NMSC-079, ¶ 4, 687 P.2d 728, 729.  "A finding of negligence, however, is dependent upon the existence of a duty on the part of the defendant."  <u>Schear v. Bd. of Cty. Comm'rs</u>, 1984-NMSC-079, ¶ 4, 687 P.2d at 729. "Whether a duty exists is a question of law for the courts to decide."  <u>Schear v. Bd. of Cty. Comm'rs</u>, 1984-NMSC-079, ¶ 4, 687 P.2d at 729 (citation omitted).  Once courts recognize that a duty exists, that duty triggers "a legal obligation to conform to a certain standard of conduct to reduce the risk of harm to an individual or class of persons."  <u>Baxter v. Noce</u>, 1988-NMSC-024, ¶ 11, 752 P.2d 240, 243.

New Mexico courts have stated that foreseeability of a plaintiff alone does not end the inquiry into whether the defendant owes a duty to the plaintiff.  <u>See</u> <u>Herrera v. Quality Pontiac</u>,

---

[6]The 2004 amendments to Uniform Instruction 13-305 eliminated the word "proximate" within the instruction.  Use Note, N.M. Rul. Amend. Civ. UJI 13-305.  The drafters added, however, that the change was "intended to make the instruction clearer to the jury and do[es] not signal any change in the law of proximate cause."  Editor's Notes, N.M. Rul. Amend. Civ. UJI 13-305 (alteration added).

2003-NMSC-018, ¶ 7, 73 P.3d at 186.  New Mexico courts have recognized that, "[u]ltimately, a duty exists only if the obligation of the defendant [is] one to which the law will give recognition and effect."  Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 9, 73 P.3d at 187 (internal quotation marks omitted).  To determine whether the defendant's obligation is one to which the law will give recognition and effect, courts consider legal precedent, statutes, and other principles of law.  See Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 9, 73 P.3d at 186.

"As a general rule, an individual has no duty to protect another from harm."  Edward C. v. City of Albuquerque, 2010-NMSC-043, ¶ 16, 241 P.3d 1086, 1090 (quoting Grover v. Stechel, 2002-NMCA-049, ¶ 11, 45 P.3d 80, 84 (citing Restatement (Second) of Torts, § 315 (1965))).  "[C]ertain relationships, however, that give rise to such a duty [include]: (1) those involving common carriers, innkeepers, possessors of land; and (2) those who voluntarily or by legal mandate take the custody of another so as to deprive the other of his normal opportunities for protection."  Grover v. Stechel, 2002-NMCA-049, ¶ 11, 45 P.3d at 84 (citing Restatement (Second) of Torts, § 314(A) (1965)).  "[W]hen a person has a duty to protect and the third party's act is foreseeable, 'such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the [person who has a duty to protect] from being liable for harm caused thereby.'"  Reichert v. Atler, 1994-NMSC-056, ¶ 11, 875 P.2d 379, 382 (quoting Restatement (Second) of Torts § 449 (1964)).

"[T]he responsibility for determining whether the defendant has breached a duty owed to the plaintiff entails a determination of what a reasonably prudent person would foresee, what an unreasonable risk of injury would be, and what would constitute an exercise of ordinary care in light of all the surrounding circumstances."  Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 33,

73 P.3d at 194.  "The finder of fact must determine whether Defendant breached the duty of ordinary care by considering what a reasonably prudent individual would foresee, what an unreasonable risk of injury would be, and what would constitute an exercise of ordinary care in light of all surrounding circumstances."  Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 33, 73 P.3d at 195.

"A proximate cause of an injury is that which in a natural and continuous sequence [unbroken by an independent intervening cause] produces the injury, and without which the injury would not have occurred."  Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 34, 73 P.3d at 195.  "It need not be the only cause, nor the last nor nearest cause."  Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 34, 73 P.3d at 195.  "It is sufficient if it occurs with some other cause acting at the same time, which in combination with it, causes the injury."  Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 34, 73 P.3d at 195.

## NEW MEXICO LAW REGARDING NEGLIGENCE PER SE

To establish a negligence per se claim: "(1) there must be a statute which prescribes certain actions or defines a standard of conduct, either explicitly or implicitly, (2) the defendant must violate the statute, (3) the plaintiff must be in the class of persons sought to be protected by the statute, and (4) the harm or injury to the plaintiff must generally be of the type the legislature throught the statute sought to prevent."  Archibeque v. Homrich, 1975-NMSC-066, ¶ 15, 543 P.2d 820, 825.  Accord Rimbert v. Eli Lilly & Co., 577 F. Supp. 2d 1174, 1204 (D.N.M. 2008)(Browning, J.)[7](citing Johnstone v. City of Albuquerque, 2006-NMCA-119, ¶ 16, 145 P.3d

---

[7]The Court entered this Opinion on August 22, 2008.  On October 9, 2008, the Honorable James O. Browning, United States District Judge for the District of New Mexico, recused himself,

- 29 -

76, 82[8]).  To hold a defendant liable under a claim of negligence per se, the plaintiff must show

that the defendant violated a specific statute.  See Heath v. La Mariana Apartments, 2008-NMSC-

017, ¶ 8, 180 P.3d 664, 666 ("[W]hen a statute imposes a specific requirement, there is an absolute

duty to comply with that requirement, and 'no inquiry is to be made whether the defendant acted

as a reasonably prudent man, or was in the exercise of ordinary care.'" (quoting Abeita v. N. Rio

Arriba Elec. Coop, 1997–NMCA–097, ¶ 21, 946 P.2d 1108, 1116)).

　　　In giving jury instructions on a negligence per se claim, a court should follow New Mexico

Uniform Civil Jury Instruction 13-1501.  This instruction directs courts to explain:

> There [was a] [were] statute[s] in force in this state, at the time of the occurrence in
> question, which provided that:
>
> > (Quote or paraphrase the applicable part of the statute in question. If
> > more than one statute is in question, list each statute separately)
>
> If you find from the evidence that _____ (party) violated [this] [any one of
> these] statute[s], then _____'s conduct constitutes negligence as a matter of law,
> [unless you further find that such violation was excusable or justified].
>
> [To legally justify or excuse a violation of a statute, the violator must sustain the
> burden of showing that [s]he did that which might reasonably be expected of a
> person of ordinary prudence, acting under similar circumstances, who desired to
> comply with the law.]

---

and the case was reassigned to the Honorable Judith C. Herrera, United States District Judge for
the District of New Mexico.  On August 3, 2011, the Tenth Circuit reversed on other grounds.  See
Rimbert v. Eli Lilly and Co., 647 F.3d 1247 (10th Cir. 2011).

　　　[8]The Court is confident that, if presented with the issue, the Supreme Court of New Mexico
would agree with the Court of Appeals of New Mexico's statement in Johnstone v. City of
Albuquerque, 2006-NMCA-119, ¶ 16, 145 P.3d at 82, of the elements required for a negligence
per se claim under New Mexico law, based on the Supreme Court of New Mexico's decision in
Archibeque v. Homrich, 1975-NMSC-066, 542 P.2d 820, in which the Supreme Court of New
Mexico recited the same test for negligence per se in New Mexico.  1975-NMSC-066, ¶ 15, 542
P.2d at 825.

N.M. Rules Ann. Civ. UJI 13-1501.[9]  The "Directions for Use" for UJI 13-1501 notes that "UJI

13-1503 should be used in addition to this instruction when there is an issue of proximate cause."

N.M. Rules Ann. Civ. UJI 13-1501, Directions for Use.  Instruction 13-1503 states:

> Negligence resulting from a violation of a[n] [statute] [or] [ordinance] is no
> different in effect from that resulting from other acts or omissions constituting
> negligence.  In each case the negligence is of no consequence unless it was a cause
> of or contributed to, an injury found by you to have been suffered by the plaintiff.

N.M. Rules Ann. Civ. UJI 13-1503.

## NEW MEXICO LAW REGARDING PUNITIVE DAMAGES

"Punitive damages 'are not compensation for injury.'"  Gonzales v. Surgidev Corp., 1995-

NMSC-047, ¶ 12, 899 P.2d 594, 597 (quoting State v. Powell, 1992-NMCA-086, ¶ 13, 839 P.2d

139, 144).  "Punitive damages do not measure a loss to the plaintiff, but rather punish the tortfeasor

for wrongdoing and serve as a deterrent."  Sanchez v. Clayton, 1994-NMSC-064, ¶ 11, 877 P.2d

567, 572.  "Punitive damages may not be awarded unless there is an underlying award of

compensation for damages."  Gonzales v. Surgidev Corp., 1995-NMSC-047, ¶ 12, 899 P.2d at 597

(citing N.M. Rules Ann. Civ. UJI 13-1827).  "Punitive damages serve two important policy

objectives under [New Mexico] common law: to punish reprehensible conduct and to deter similar

conduct in the future."  Akins v. United Steel Workers of Am., AFL-CIO, CLC, Local 187, 2010-

NMSC-031, ¶ 20, 237 P.3d 744, 749 (citing Bogle v. Summit Inv. Co., 2005-NMCA-024, ¶ 34,

107 P.3d 520, 531).  "[T]he award of punitive damages requires a culpable mental state because

such damages aim to punish and deter 'culpable conduct beyond that necessary to establish the

---

[9]This instruction appears in Chapter Fifteen, Statutes and Ordinances, and not in Chapter
Sixteen, Tort Law -- Negligence.

underlying cause of action.'" Yedidag v. Roswell Clinic Corp., 2015-NMSC-012, ¶ 58, 346 P.3d 1136, 1152 (quoting Walta v. Gallegos Law Firm, P.C., 2002-NMCA-015, ¶ 56, 40 P.3d 449, 461). "New Mexico recognizes that, although punitive damages are not normally available for a breach of contract, a plaintiff may recover punitive damages when a defendant's breach was 'malicious, fraudulent, oppressive, or committed recklessly with a wanton disregard for the plaintiff's rights.'" Anderson Living Tr. v. ConocoPhillips Co., 952 F. Supp. 2d 979, 1046 (D.N.M. 2013)(Browning, J.)(citing Romero v. Mervyn's, 1989-NMSC-081, ¶ 23, 784 P.2d 992, 998).

In determining punitive-damage awards, New Mexico courts apply a preponderance of the evidence standard. See Jessen v. Nat'l Excess Ins., 1989-NMSC-040, ¶ 15, 776 P.2d 1244, 1247-48 (citing United Nuclear Corp. v. Allendale Mut. Ins., 1985-NMSC-090, ¶¶ 14, 89, 709 P.2d 649, 653, 666). "To be liable for punitive damages, a wrongdoer must have some culpable mental state and the wrongdoer's conduct must rise to a willful, wanton, malicious, reckless, oppressive, or fraudulent level." Clay v. Ferrellgas, Inc., 1994-NMSC-080, ¶ 12, 881 P.2d at 14 (citations omitted)(citing McGinnis v. Honeywell, Inc., 1990-NMSC-043, ¶ 31, 791 P.2d 452, 460; Loucks v. Albuquerque Nat'l Bank, 1996-NMSC-176, ¶ 48, 418 P.2d 191, 199). In assessing punitive damages, the factfinder should weigh the enormity and nature of the wrong, and any aggravating circumstances. See Green Tree Acceptance, Inc. v. Layton, 1989-NMSC-006, ¶ 9, 769 P.2d 84, 87 (citing Sweitzer v. Sanchez, 1969-NMCA-055, ¶ 26, 456 P.2d 882, 886). Punitive damages may be imposed "when a party intentionally or knowingly commits wrongs," or "when a defendant is utterly indifferent to the plaintiff's rights, even if the defendant lacked actual knowledge that his or her conduct would violate those rights." Yedidag v. Roswell Clinic Corp., 2015-NMSC-

012, ¶ 58, 346 P.3d at 1152 (citing N.M. Rules Ann. 13-1827; <u>Kennedy v. Dexter Consol. Sch.</u>, 2000-NMSC-025, ¶ 32, 10 P.3d 115, 125-26). "Recklessness requires indifference to the rights of the victim, rather than knowledge that the conduct will violate those rights." <u>Kennedy v. Dexter Consol. Sch.</u>, 2000-NMSC-025, ¶ 32, 10 P.3d at 125 (citing <u>Torres v. El Paso Elec. Co.</u>, 1999-NMSC-029, ¶ 28, 987 P.2d 386, 397). "Recklessness in the context of punitive damages refers to 'the intentional doing of an act with utter indifference to the consequences.'" <u>Torres v. El Paso Elec. Co.</u>, 1999-NMSC-029, ¶ 28, 987 P.2d at 397 (quoting N.M.R.A. Civ. UJI 13-1827). "The degree of the risk of danger involved in the activity in question is a relevant factor in determining whether particular conduct rises to the level of recklessness." <u>Torres v. El Paso Elec. Co.</u>, 1999-NMSC-029, ¶ 28, 987 P.2d at 397. "A defendant does not act with reckless disregard to a plaintiff's rights merely by failing 'to exercise even slight care,' absent the requisite 'culpable or evil state of mind.'" <u>Anderson Living Tr. v. ConocoPhillips Co.</u>, 952 F. Supp. 2d at 1031 (quoting <u>Paiz v. State Farm Fire & Cas. Co.</u>, 1194-NMSC-079, ¶ 26, 880 P.2d 300, 308). The Court has previously addressed punitive damages under New Mexico law in various situations. <u>See</u>, <u>e.g.</u>, <u>Rimbert v. Eli Lilly & Co.</u>, 577 F. Supp. 2d at 1242 (holding a genuine issue of material fact on punitive damages existed where a party had "demonstrated that persons at Eli Lilly may have been aware of a problem, perceived or actual, linking Prozac with increased suicidality and violence"); <u>Applied Capital, Inc. v. Gibson</u>, 558 F. Supp. 2d 1189, 1196 (D.N.M. 2007)(Browning, J.)(granting punitive damages where the defendant "intentionally deceived Applied Capital, misrepresenting Legato Staffing's financial resources and creditworthiness, the existence of the rig, and the bona fides of the transaction generally"); <u>Faniola v. Mazda Motor Corp.</u>, No. CIV-02-1011 JB/RLP, 2004 WL 1354469, at *1, *6 (D.N.M. April 30,

2004)(Browning, J.)(noting that "a reasonable factfinder could [not] find that Mazda had a culpable mental state in designing [a] fuel tank" when "Mazda's design was and is accepted in the industry" and the design met "federal safety standards," although the facts showed that "[t]he brake shoe rotated under Faniola's vehicle, striking several places, and punctured her gas tank," causing the car to catch fire).

## LAW REGARDING RULE 401 OF THE FEDERAL RULES OF EVIDENCE

Under Rule 401, "Evidence is relevant if: **(a)** it has any tendency to make a fact more or less probable than it would be without the evidence; and **(b)** the fact is of consequence in determining the action. Fed. R. Evid. 401. "The rules of evidence contemplate the admission of relevant evidence, and the exclusion of irrelevant and potentially prejudicial evidence." Train v. City of Albuquerque, 629 F. Supp. 2d 1243, 1247 (D.N.M. 2009)(Browning, J.)(citing Fed. R. Evid. 401, 402 & 403). "Relevant evidence is evidence that has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." United States v. Gutierrez-Castro, No. CR 10-2072 JB, 2011 WL 3503321, at *3 (D.N.M. Aug. 6, 2011)(Browning, J.)(citing Fed. R. Evid. 401). "The standard for relevancy is particularly loose under rule 401, because '[a]ny more stringent requirement is unworkable and unrealistic.'" United States v. Ganadonegro, 854 F. Supp. 2d 1088, 1127 (D.N.M. 2012)(Browning, J.)(quoting Fed. R. Evid. 401 advisory committee's note). Irrelevant evidence, or that evidence which does not make a fact of consequence more or less probable, however, is inadmissible. See Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

## RELEVANT LAW REGARDING RULE 403

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice. See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989). "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]." United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(internal quotation marks omitted)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991)). The United States Court of Appeals for the Tenth Circuit has reminded district courts that they should be "mindful" that "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." United States v. Smalls, 605 F.3d 765, 787 (10th Cir. 2010).

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, see United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999), and the trial court's discretion to balance possible unfair prejudice against probative value is broad, see United States v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983); United States v. Masters, 622 F.2d 83, 87-88 (4th Cir. 1980). As the Supreme Court of the United States has noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings. . . . This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant.

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(quoting 1 Steven Alan Childress & Martha S. Davis, Fed. Standards of Review § 4.02, at 4-16 (3d ed. 1999)). See United States v. Abel, 469 U.S. 45, 54 (1984)("Assessing the probative value of [proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . . ").

Evidence may be unfairly prejudicial if it would likely provoke the jury's emotional response or would otherwise tend to adversely affect the jury's attitude toward a particular matter. See United States v. Rodriguez, 192 F.3d 946, 951 (10th Cir. 1999). Evidence is not unfairly prejudicial merely because it damages a party's case. See United States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008); United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003); United States v. Martinez, 938 F.2d 1078, 1082 (10th Cir. 1991). Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" United States v. Caraway, 534 F.3d at 1301 (quoting Fed. R. Evid. 403 advisory committee's note).

"The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." Old Chief v. United States, 519 U.S. 172, 180 (1997). "Such improper grounds certainly include . . . generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged." Old Chief v. United States, 519 U.S. at 180-81. In light of rule 404(b)'s prohibition regarding the use of character evidence to show that a person acted in conformity with their character, "[t]here is, accordingly, no question that propensity would be an 'improper basis' for conviction and that

evidence . . . is subject to analysis under Rule 403 for relative probative value and for prejudicial misuse as propensity evidence." Old Chief v. United States, 519 U.S. at 182. The Supreme Court has advised lower courts to disregard the prosecution's need for "evidentiary depth to tell a continuous story" when the prosecution's evidence consists of the underlying facts of a criminal defendant's prior felony conviction, as in an action for felon in possession. Old Chief v. United States, 519 U.S. at 189-90. In such an action, "[t]he most the jury needs to know is that the conviction admitted by the defendant falls within the class of crimes that Congress thought should bar a convict from possessing a gun, and this point may be made readily in a defendant's admission and underscored in the court's jury instructions." Old Chief v. United States, 519 U.S. at 191. The Court has previously ruled that, under the Supreme Court's decision in Old Chief v. United States, the underlying facts of a defendant's prior conviction should be excluded, even if relevant to the offense. See United States v. Williams, No. CR 12-1675 JB, 2012 WL 5476228, at *2 (D.N.M. Nov. 7, 2012)(Browning, J.); United States v. Ashley, No. CR 04-2497 JB, 2006 WL 4109679, at *3 (D.N.M. Aug. 1, 2006)(Browning, J.)("Even if relevant under rule 404(b), given the nature of the crime with which he is charged here and the similarity to these prior crimes, the danger of unfair prejudice outweighs the probative value of specifically identifying the prior crimes."). See also United States v. Wacker, 72 F.3d 1453, 1472 (10th Cir. 1995)("Whereas the fact of a defendant's prior felony conviction is material to a felon in possession charge, the nature and underlying circumstances of a defendant's conviction are not.").

## LAW REGARDING THE RULE OF COMPLETENESS

Rule 106 -- otherwise known as the rule of completeness -- states:

If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part -- or any other writing or recorded statement -- that in fairness ought to be considered at the same time.

Fed. R. Evid. 106. By allowing the other party to present the remainder of the writing or recorded statement immediately rather than later on cross-examination, this rule avoids the situation where a statement taken out of context "creates such prejudice that it is impossible to repair by a subsequent presentation of additional material." Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 171 n.14 (1988). Accord United States v. Cruz-Calixto, 39 F. App'x 565, 567 (9th Cir. 2002)(unpublished); United States v. Oseby, 148 F.3d 1016, 1025 (8th Cir. 1998)("The advisory committee notes to Rule 106 state that one of the considerations for this rule is to avoid the misleading impression created by taking matters out of context."); United States v. Rubin, 609 F.2d 51, 63 (2d Cir. 1979)("The notes had been used extensively and quoted from copiously by Rubin's counsel on his cross-examination of Cox, possibly leaving a confusing or misleading impression that the portions quoted out of context were typical of the balance."); United States v. Young, No. CR-09-140-B-W, 2010 WL 1461558, at *3 (D. Me. Apr. 9, 2010)(Woodcock, J.). "Rule 106 by its terms does not apply to oral conversations, but only to writings and recorded statements." United States v. Christy, No. CR 10-1534 JB, 2011 WL 5223024, at *3 (D.N.M. Sept. 21, 2011)(Browning, J.)(citing Fed. R. Evid. 106). The Tenth Circuit has stated: "The rule of completeness, however, does not necessarily require admission of [an entire statement, writing or recording]. Rather, only those portions which are relevant to an issue in the case and necessary to clarify or explain the portion already received need to be admitted." United States v. Lopez-Medina, 596 F.3d 716, 735 (10th Cir. 2010)(internal quotation marks omitted)(quoting United

States v. Zamudio, 141 F.3d 1186, 1998 WL 166600, at *6 (10th Cir. 1998)(unpublished table opinion)[10]).

Courts have provided guidance on when the rule of completeness applies.  See, e.g., United States v. Velasco, 953 F.2d 1467, 1475 (7th Cir. 1992); United States v. Castro-Cabrera, 534 F. Supp. 2d 1156, 1160 (C.D. Cal. 2008)(Pregerson, J.).  The United States Court of Appeals for the Seventh Circuit has applied a four-part test to determine whether to allow evidence under rule 106: "(1) does [the evidence] explain the admitted evidence, (2) does it place the admitted evidence in context, (3) will admitting it avoid misleading the trier of fact, and (4) will admitting it insure a fair and impartial understanding of all of the evidence."  United States v. Velasco, 953 F.2d at. The United District Court for the Central District of California has explained:

> The Rule of Completeness warrants admission of statements in their entirety when the Government introduces only a portion of inextricably intertwined statements.
>
> Statements are inextricably intertwined when the meaning of a statement, if divorced from the context provided by the other statement, is different than the meaning the statement has when read within the context provided by the other statement.  Under those circumstances, a court must take care to avoid distortion or

---

[10]United States v. Zamudio is an unpublished opinion, but the Court can rely on an unpublished opinion from the United States Court of Appeals for the Tenth Circuit to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored.  However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision."  United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that United States v. Zamudio, Lounds v. Torres, 217 F. App'x 755, 2007 WL 495318  (10th Cir. 2007)(unpublished), Magoffe v. JLG Industries, Inc., 375 F. App'x 848 (10th Cir. 2010)(unpublished), United States v. Morris, 573 F. App'x 712 (10th Cir. 2014)(unpublished), and United States v. Powers, 578 F. App'x 763 (10th Cir. 2014), have persuasive value with respect to material issues, and will assist the Court in its disposition of this Memorandum Opinion and Order.

misrepresentation of the speaker's meaning, by requiring that the statements be
admitted in their entirety and allowing the jury to determine their meaning.

United States v. Castro-Cabrera, 534 F. Supp. 2d at 1160.  Accord United States v. Coughlin, 821

F. Supp. 2d 8, 30 (D.D.C. 2011)(Lamberth, C.J.)("Coughlin is correct, however, that regardless of

whether this evidence is inadmissible hearsay or not, he can introduce it under the rule of

completeness."); United States v. Peeples, 2003 WL 57030, No. 01 CR 496, at *3 (N.D. Ill. Jan.

7, 2003)(Guzman, J.).

## LAW REGARDING REBUTTAL EVIDENCE

"When a party opens the door to a topic, the admission of rebuttal evidence on that topic

becomes permissible."  Tanberg v. Sholtis, 401 F.3d 1151, 1166 (10th Cir. 2005).  "Permissible

does not mean mandatory, however; the decision to admit or exclude rebuttal testimony remains

within the trial court's sound discretion."  Tanberg v. Sholtis, 401 F.3d at 1166.  This principle

reflects the general proposition that "[c]ross examination may embrace any matter germane to the

direct examination, qualifying or destroying, or tending to elucidate, modify, explain, contradict,

or rebut testimony given in chief by the witness."  United States v. Burch, 153 F.3d 1140, 1144

(10th Cir. 1998)(internal quotation marks omitted)(quoting United States v. Troutman, 814 F.2d

1428, 1450 (10th Cir. 1987)).  "[W]hether or not rebuttal evidence is admissible depends on

whether the initial proof might affect the case and whether the rebuttal evidence fairly meets the

initial proof."  Richie v. Mullin, 417 F.3d 1117, 1138 (10th Cir. 2005)(internal quotation marks

omitted)(alteration in original)(quoting Tanberg v. Sholtis, 401 F.3d at 1166).  The Tenth Circuit

has recognized that, when the rebuttal evidence is "otherwise inadmissible," it must both: (i) "be

reasonably tailored to the evidence it seeks to refute"; and (ii) "[t]here must be a nexus between

the purported rebuttal evidence and the evidence that the purported rebuttal evidence seeks to

rebut." Richie v. Mullin, 417 F.3d at 1138 (quoting United States v. Stitt, 250 F.3d 878, 897 (4th Cir. 2001)). For instance, in a case where a wife was seeking damages for loss of companionship in the context of an excessive force claim, the Tenth Circuit stated that the wife's claim for damages opened the door to evidence of the deceased husband's prior domestic abuse conviction and arrest. See Lounds v. Torres, 217 F. App'x 755, 758, 2007 WL 495318, at *2 (10th Cir. 2007)(unpublished)("[E]vidence of Alford's 2002 conviction and 2003 arrest for domestic abuse of Ms. Fuston-Lounds was offered not to show his character, but for the proper purpose of rebutting Ms. Fuston-Lounds' claim for damages.").

## LAW REGARDING MENTION OF LIABILITY INSURANCE

Under rule 411 of the Federal Rules of Evidence, "[e]vidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully. But the court may admit this evidence for another purpose, such as proving a witness' bias or prejudice or proving agency, ownership, or control." Fed. R. Evid. 411. See Black v. Hieb's Enters., Inc., 805 F.2d 360, 365 (10th Cir. 1986). The rule is premised on the general "feeling that knowledge of the presence or absence of liability insurance would induce juries to decide cases on improper grounds." Fed. R. Evid. 411 advisory committee's note. Evidence of insurance may be admissible, however, "when other issues, such as ownership, control, bias, or prejudice are involved." Palmer v. Krueger, 897 F.2d 1529, 1537 (10th Cir. 1990)(citing Fed. R. Evid. 411). While courts should be careful to proscribe references to liability insurance, unexpected, inadvertent references to insurance "are not generally grounds for mistrial or reversal." Rios v. Bigler, 67 F.3d 1543, 1550 (10th Cir. 1995)(quoting Zanetti Bus Lines, Inc. v. Hurd, 320 F.2d 123, 129 (10th Cir. 1963)). See Certain Underwriters at Lloyd's, London,

Subscribing to Policy No. 501/NB03ACMD v. Nance, No. CIV 04-0937 JB/WDS, 2007 WL 1302569, at *7-8 (D.N.M. April 23, 2007)(Browning, J.).

<h2 style="text-align:center"><u><strong>LAW REGARDING RULE 602</strong></u></h2>

Rule 602 reads: "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. "Rule 602 sets a low bar vis-à-vis personal knowledge." <u>United States v. Deleon</u>, No. CR 15-4268 JB, 2018 WL 1959469, at *1 (D.N.M. April 25, 2018)(Browning, J.). <u>See</u> Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced **sufficient to support a finding** that the witness has personal knowledge of the matter." (emphasis added)). "Evidence to prove personal knowledge may consist of the witness's own testimony," Fed. R. Evid. 602, and rule 602 "does not require that the witness' knowledge be positive or rise to the level of absolute certainty," <u>United States v. Sinclair</u>, 109 F.3d 1527, 1536 (10th Cir. 1997)(quoting <u>M.B.A.F.B. Fed. Credit Union v. Cumis Ins. Soc., Inc.</u>, 681 F.2d 930, 932 (4th Cir. 1982)). "A court should exclude testimony for lack of personal knowledge 'only if in the proper exercise of the trial court's discretion it finds that the witness could not have actually perceived or observed that which he testifies to.'" <u>United States v. Gutierrez de Lopez</u>, 761 F.3d 1123, 1132 (10th Cir. 2014)(quoting <u>United States v. Sinclair</u>, 109 F.3d at 1536). "[I]f a rational juror could conclude based on a witness's testimony that he or she has personal knowledge of a fact, the witness may testify about that fact." <u>United States v. Gutierrez de Lopez</u>, 761 F.3d at 1132.

The prohibition on hearsay, however, limits the scope of a witness' testimony. <u>See</u> <u>United States v. Gutierrez de Lopez</u>, 761 F.3d at 1132. "If . . . the witness merely has personal knowledge of an out-of-court statement offered to prove the fact asserted in that statement -- but not the

underlying fact -- then his or her testimony must comply with the hearsay rule." <u>United States v. Gutierrez de Lopez</u>, 761 F.3d at 1132. Rule 602's advisory notes clarifies:

> This rule does not govern the situation of a witness who testifies to a hearsay statement as such, if he has personal knowledge of the making of the statement. . . . This would, however, prevent him from testifying to the subject matter of the hearsay statement, as he has no personal knowledge of it.

Fed. R. Evid. 602 (advisory committee's notes).

## LAW REGARDING LAY TESTIMONY ON ULTIMATE ISSUES

In some circumstances, a lay witness may provide testimony on ultimate issues. <u>See</u> Fed. R. Evid. 704. Rule 701 of the Federal Rules of Evidence permits a lay witness to provide "testimony in the form of an opinion" when that opinion is: "**(a)** rationally based on the witness's perception; **(b)** helpful to clearly understanding the witness's testimony or to determining a fact in issue; and **(c)** not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Rule 704 of the Federal Rules of Evidence enables witnesses to testify on ultimate issues; the rule states:

> (a) **In General -- Not Automatically Objectionable**. An opinion is not objectionable just because it embraces an ultimate issue.
>
> (b) **Exception**. In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone.

Fed. R. Evid. 704. Accordingly, although, "[t]raditionally, there was a general doctrine that witnesses could not give their opinion or conclusions on an ultimate issue of fact," <u>SFF-TIR, LLC v. Stephenson</u>, 250 F. Supp. 3d 856, 1003 (N.D. Okla. 2017)(Browning, J.)(internal quotation marks omitted)(quoting <u>Vondrak v. City of Las Cruces</u>, No. 05-0172, 2009 WL 3241555, at *10 (D.N.M. Aug. 25, 2009)(Browning, J.)), the Federal Rules of Evidence reflect that the ultimate-

issue rule no longer applies, see SFF-TIR, LLC v. Stephenson, 250 F. Supp. 3d at 1003(citing

United States v. Smith, 156 F.3d 1046, 1054 (10th Cir. 1998)). See also Vondrak v. City of Las

Cruces, 2009 WL 3241555, at *10 (describing the justification for the traditional rule as the

concern that "such testimony usurps the function or invades the province of the jury" (internal

quotation marks omitted)(quoting 1 Kenneth Broun, McCormick on Evidence § 12 (6th ed. 2006

update)).

What will help the jury limits lay witnesses' opinions on ultimate issues. See Fed. R. Evid.

701.

> The Advisory Committee's note on Rule 704, See [sic] 3 Weinstein's Evidence
> 704-2, says that the abolition of the ultimate issue rule does not lower the bars to
> admit all opinions, referring to Rules 701, 702 and 403. The Committee states that
> "(t)hese provisions afford ample assurances against the admission of opinions
> which would merely tell the jury what result to reach, somewhat in the manner of
> the oath-helpers of an earlier day." . . . See Marx & Co., Inc. v. Diners' Club, Inc.,
> 550 F.2d 505, 511 n. 17 (2d Cir.) . . . .

United States v. Pino, 606 F.2d 908, 918 (10th Cir. 1979). "[H]ow far a witness may go in stating

an opinion or conclusion is for the practical discretion of the trial court." United States v. Freeman,

514 F.2d 1184, 1191 (10th Cir. 1975)(citation omitted). Although courts have permitted lay

witnesses to opine to the obvious, a lay witness generally cannot summarily opine on an ultimate

issue when the jury has the facts to decide the issue. See United States v. Morris, 573 F. App'x

712, 723 (10th Cir. 2014)(unpublished)(permitting a witness to testify "that he believed it was

illegal to falsify tax documents," because the witness did not testify to the defendant's guilt, and

noting "[w]e think this testimony was helpful to the jury, even if it stated the obvious"); United

States v. Parris, 243 F.3d 286, 289 (6th Cir. 2001)(permitting a lay witness to opine that a party's

offer to "customers the opportunity to have their income tax obligations completely eliminated"

was "illegal," because "such an arrangement is so outrageous that its generalized characterization as 'illegal' is fair"); United States v. Anderskow, 88 F.3d 245, 250 (3d Cir. 1996)(holding that a lay witness could not testify that an individual "must have known" about a trust's large-scale fraud, because the jury already had heard the facts supporting the opinion); id. ("[W]here the jury has before it the same circumstantial evidence of a defendant's criminal knowledge on which a witness bases an opinion concerning a defendant's knowledge, testimony from a witness concluding that the defendant 'had to know' usually will not meet Rule 701(b)'s helpfulness requirement." (citing United States v. Rea, 958 F.2d 1206 (2d Cir. 1992)); United States v. Pino, 606 F.2d 908, 918 (10th Cir. 1979)("We do not feel, however, that the rule means that the witness may simply say that the defendant would not, or did not, drive recklessly."). Cf. United States v. Simpson, 7 F.3d 186, 188 (10th Cir. 1993)("Expert testimony . . . is often excluded on the grounds that it states a legal conclusion, usurps the function of the jury in deciding the facts, or interferes with the function of the judge in instructing the jury on the law.").

## LAW REGARDING JURY SELECTION

"To be meaningful, the adequacy of voir dire examination must allow a party an opportunity to make reasonably intelligent use of peremptory challenges and challenges for cause." Lowery v. City of Albuquerque, No. CIV 09-0457 JB/WDS, 2012 WL 1372273, at *4 (D.N.M. April 11, 2012)(Browning, J.)(citing United States v. Rucker, 557 F.2d 1046, 1049 (4th Cir. 1977)). "[V]oir dire is within the sound discretion of the trial court, and the court's exercise of that discretion will not be disturbed, absent a clear showing of abuse." United States v. Whitt, 718 F.2d 1494, 1497 (10th Cir. 1983). See United States v. Gibbons, 607 F.2d 1320, 1330 (10th Cir. 1979)("The trial court has broad discretion in conducting the voir dire examination.").

"[D]istrict courts have broad discretion in fashioning the method of exercising peremptory challenges, and the jury selection procedure in general." United States v. Morris, 623 F.2d 145, 151 (10th Cir. 1980).

## ANALYSIS

The Court concludes that: (i) it will not permit Walker to seek punitive damages even if Spina perjures himself; (ii) the Court will permit the Defendants to introduce Walker's medical records for impeachment purposes and for the truth of the matters asserted if the Defendants meet the requirements that the Court discussed in its Medical Records and Bills MOO; (iii) as Walker withdrew her request to introduce her deposition correction page and all other documents related to the New Mexico Senior Olympics, the Court will exclude such evidence; (iv) the Court will permit Walker to introduce Dr. Khalsa's bills to rebut the Defendants' arguments about the letter of protection and the accompanying emails if Walker meets the requirements that the Court discussed in its Medical Records and Bills MOO; (v) the Court will preclude Walker from introducing evidence of the Defendants' insurance, and the Court will require the Defendants not to mention Walker's insurance and to redact the language on Walker's medical bills indicating that S. Ayala was Walker's insurance carrier; (vi) the Court will permit Walker to introduce factual evidence about Spina's driving, and, should the Court conclude that Walker has introduced sufficiently non-speculative testimony, the Court will instruct the jury on negligence per se related to those statutes that a reasonable jury could find that Spina violated; (vii) as Walker agreed not to suggest that the standard of care is any standard other than ordinary care and not to argue that the jury should determine Walker's damages according to what they would desire in Walker's position, the Court will preclude Walker from making such suggestions or arguments; (viii) the

Court will allow Walker to identify individual potential jurors whose experience with the insurance industry cause her concern and to question those potential jurors individually at the bar outside the hearing of other jurors, but the Court will not permit Walker to ask the entire venire such questions; (ix) as Walker agreed to withdraw her proposed question 11, the Court will preclude Walker from asking that question; (x) because the Court will make the statement of the case that the parties have proposed and to which they have stipulated, the Court will prohibit Walker from giving her own statement of the case to the venire, but, if potential jurors indicate familiarity with the case, the Court will permit Walker to question those jurors individually at the bar; and (xi) the Court will allow Walker to ask the venire about the potential jurors' attitudes toward psychiatry. At the January 5, 2019, hearing, Walker withdrew her request to introduce her deposition correction page and all other documents related to the New Mexico Senior Olympics. See Tr. at 15:24-16:6 (A. Ayala). The Court, accordingly, will not address the portion of the Defendants' Exhibits MIL discussing those documents. Likewise, the Court will not consider the Standard of Care MIL, because Walker agreed not to suggest that the standard of care is any standard other than ordinary care and not to argue that the jury should determine Walker's damages according to what they would desire in Walker's position. See Tr. at 27:22-28:2 (Sedillo, Court, A. Ayala). The Court also deems resolved the Defendants' objections to Walker's proposed question 15, because Walker withdrew the question, and so the Court will not analyze whether to admit the question. See Tr. at 28:21-25 (Beaulieu). The Court takes the remaining issues in turn.

## I.  WALKER MAY NOT SEEK PUNITIVE DAMAGES.

Preliminarily, the Court doubts that Spina will perjure himself. Even if Spina commits perjury, the Court will not permit Walker to "claim punitive damages in jury instructions and in

argument to the jury." Punitive MIL at 1. The Court has found no law or theory under which Walker could claim punitive damages for perjury during the trial. Under New Mexico law, "[p]unitive damages may not be awarded unless there is an underlying award of compensation for damages." Gonzales v. Surgidev Corp., 1995-NMSC-047, ¶ 12, 899 P.2d at 597 (citing N.M.R.A. Civ. UJI 13-1827). "To be liable for punitive damages, a wrongdoer must have some culpable mental state and the wrongdoer's conduct must rise to a willful, wanton, malicious, reckless, oppressive, or fraudulent level." Clay v. Ferrellgas, Inc., 1994-NMSC-080, ¶ 12, 881 P.2d at 14. The New Mexico Uniform Jury Instructions on punitive damages provide:

> If you find that _____ (*name of party making claim for punitive damages*) should recover compensation for damages, and if you further find that the conduct of _____ (*name of party whose conduct gives rise to a claim for punitive damages*) was [malicious], [reckless], [wanton], [oppressive], or [fraudulent], then you may award punitive damages.

N.M.R.A. Civ. UJI 13-861. The jury will decide damages based on Spina's alleged negligence while driving and not his actions on the stand. Accordingly, Walker cannot support a theory for punitive damages for Spina's perjury.[11]

Additionally, the Court will not change its decision in the Punitive Damages MOO, which dismisses Walker's punitive damages claims against Spina, and the Court will hold Walker to her assertion at the November 21, 2018, hearing that she withdraws her claim for punitive damages against Valley Express. See Tr. at 4:25-5:10 (A. Ayala)(stating that Walker will ask the Court to reconsider the Punitive Damages MOO); Nov. 21 Tr. at 56:25-57:1 (A. Ayala). If Walker has

---

[11]Moreover, the Court is often in a poor position to decide or know that a witness is perjuring himself or herself while it is occurring; it is up to the attorneys to examine witnesses and destroy witness' credibility. Perjury can be dealt with adequately after trial and not well in the middle of it.

further evidence supporting her argument against partial summary judgment, she should have introduced the evidence when the Court decided the Punitive Damages MOO. See, e.g., Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990)(stating that the nonmovant must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof"). Moreover, the Defendants have relied on the assumption that Walker would not seek punitive damages, and fairness for the Defendants dictates prohibiting Walker from raising her earlier theories for punitive damages.

## II.    THE DEFENDANTS MAY INTRODUCE MEDICAL RECORDS IF THE DEFENDANTS MEET THE REQUIREMENTS THAT THE COURT DISCUSSED IN THE MEDICAL RECORDS AND BILLS MOO.

The Court will permit the Defendants to introduce those medical records and other documents that they show are relevant, authentic, and non-hearsay or exception from the hearsay rule. Walker cannot support her contentions that she does not have the medical records or that the Defendants have not named all the medical records that they will introduce. See Tr. at 11:2-7 (A. Ayala). Walker has access to the medical records. See Tr. at 14:7-17 (Beaulieu). Further, the Defendants cannot specify which medical records they will introduce, because the Defendants will reference the medical records to rebut Walker's case-in-chief. See Medical Records MIL Response at 1; Tr. at 11:12-19 (Beaulieu). The Defendants must hear Walker's case-in-chief before they can determine which medical records will counter that story.

The Court agrees with Walker that the Defendants must show that the documents are relevant, authentic, and consistent with the hearsay rules. See Medical Records MIL at 2-3. If the Defendants introduce the medical records solely for impeachment purposes, as the Defendants suggested that they would, see Tr. at 13:17-19 (Court, Beaulieu), the medical records will

constitute non-hearsay, and the Court will admit them only for that non-hearsay purpose. When a party introduces out-of-court statements for purposes -- such as impeachment -- other than the truth of the matters asserted, the evidence is not hearsay. <u>See</u> Stephen A. Saltzburg, Michael M. Martin, & Daniel J. Capra, <u>Federal Rules of Evidence Manual</u> § 801.03[2][f][ix], at 801-136 to -138 (11th ed. 2015)(citing cases classifying evidence used for impeachment as non-hearsay evidence). If the Defendants seek to introduce the medical records for the truth of the matters asserted, the Court will, as Walker requests, require that the Defendants meet the same standards that the Court set forth for Walker in the Medical Records and Bills MOO. <u>See</u> Tr. at 12:21-25 (A. Ayala). In the Medical Records and Bills MOO, the Court ordered:

> (ii) if Walker can establish that her medical records meet the requirements for rule 803(6) of the Federal Rules of Evidence and rule 803(4) of the Federal Rules of Evidence, the medical records as they were recorded at or very near the time of Walker's appointments will be admissible to the extent that they record the treatment providers' observations, comments, and diagnoses, and Walker's recounting of her symptoms and injuries; and (iii) if Walker can establish that her medical bills meet rule 803(6)'s requirements, the Court will admit the medical bills.

Medical Records and Bills MOO at 8-9. The Court cannot now determine whether the medical records that the Defendants will introduce are authentic or are relevant. Rebuttal evidence, as the Defendants intend to introduce, may be relevant when it, like cross-examination generally, is "germane to . . . qualifying or destroying, or tending to elucidate, modify, explain, contradict, or rebut" the opponent's evidence. <u>United States v. Gutierrez</u>, No. CR 15-3955 JB, 2018 WL 2451245, at *15 (D.N.M. May 31, 2018)(Browning, J.)(internal quotation marks omitted)(quoting

United States v. Burch, 153 F.3d at 1144). The Court will further analyze at trial the medical

records' foundation, authenticity, and relevance.[12]

---

[12]In arguing the Medical Records MIL and the Defendants' Exhibits MIL, Walker cites rule 11-106 of the New Mexico Rules of Evidence -- the rule of completeness. See Medical Records MIL at 4; Defendants' Exhibits MIL at 2; Tr. at 18:17-19:2 (A. Ayala). Rule 11-106 sets forth the same rule as rule 106. See State v. Barr, 2009-NMSC-024, ¶ 33, 210 P.3d 198, 205-06 ("Rule 11-106 is an expression of the common law rule of completeness and is a verbatim iteration of the federal rule." (citing Fed. R. Evid. 106; N.M. R. Evid. 11-106; Beech Aircraft Corp. v. Rainey, 488 U.S. at 171-72)). Walker misses the rules' functions, and rule 11-106 does not conflict with rule 106 for the purposes of countering Walker's assertions. See Upky v. Lindsey, No. CIV 13-0553 JB/GBW, 2015 WL 1918229, at *20-21 (D.N.M. April 7, 2015)(Browning, J.)(describing that the first step in deciding between a federal rule enacted pursuant to the Rules Enabling Act and state law is "to determine whether the federal rule and state law conflict" (quoting James River Ins. v. Rapid Funding, LLC, 658 F.3d 1207, 1218 (10th Cir. 2011)).

Walker references the rule of completeness both as a rule constraining what evidence the Defendants may introduce and as a principle permitting her to rebut the Defendants' evidence. See Medical Records MIL at 4; Defendants' Exhibits MIL at 2; Tr. at 18:17-19:2 (A. Ayala). Nothing in the rule limits a party's ability to introduce evidence. The rules set forth circumstances allowing admission; under the rule, where one party introduces a misleading or incomplete excerpt from a writing or recorded statement, the opposing party may admit the rest or relevant parts of the writing or recorded statement to provide context for the excerpt. See United States v. Gutierrez, No. CR 15-3955 JB, 2018 WL 2451245, at *14 (D.N.M. May 31, 2018)("By allowing the other party to present the remainder of the writing or recorded statement immediately rather than later on cross-examination, this rule avoids the situation where a statement taken out of context 'creates such prejudice that it is impossible to repair by a subsequent presentation of additional material.'" (quoting Beech Aircraft Corp. v. Rainey, 488 U.S. at 171 n.14)); State v. Barr, 2009-NMSC-024, ¶ 35, 210 P.3d 198, 206 ("Rule 11-106 . . . 'operates to ensure fairness where a misunderstanding or distortion created by the other party can only be averted by the introduction of the full text of the out-of-court statement.'" (quoting United States v. Ramos-Caraballo, 375 F.3d 797, 803 (8th Cir. 2004)). Likewise contrary to Walker's assumptions, the rule enables parties to complete or give context for segments of writings or recorded statements, and the rule does not pertain to all rebuttal evidence. See United States v. Lopez-Medina, 596 F.3d 716, 734 (10th Cir. 2010)("Rule 106 applies only to writings and recorded statements[.]"); State v. Barr, 2009-NMSC-024, ¶ 36, 210 P.3d 198, 206 ("[T]he party invoking the rule must show that the evidence is relevant to the issue in dispute and qualifies or explains the subject matter of the portion of the writing already admitted." (citing United States v. Ramos-Caraballo, 375 F.3d at 802-03; United States v. Glover, 101 F.3d 1183, 1189-90 (7th Cir. 1996); United States v. Walker, 652 F.2d 708, 710 (7th Cir. 1981)). The Court has recognized that "[a] related concept to the rule of completeness is the principle that, '[w]hen a party opens the door to a topic, the admission of rebuttal evidence on that topic becomes permissible,'" United States v. Gutierrez, 2018 WL 2451245, at *15 (quoting

III.  **WALKER MAY INTRODUCE DR. KHALSA'S BILLS TO REBUT THE DEFENDANTS' ARGUMENTS ABOUT THE LETTER OF PROTECTION AND THE ACCOMPANYING EMAILS IF WALKER MEETS THE STANDARDS THAT THE COURT DISCUSSED IN ITS MEDICAL RECORDS AND BILLS MOO.**

Walker may introduce Dr. Khalsa's bills to rebut the Defendants' arguments about the letter of protection and the accompanying emails, but Walker must show that the documents meet the requirements that the Court detailed in the Medical Records and Bills MOO.  At the end of the parties' discussion about the Defendants' Exhibits MIL, neither party disputed that the other could introduce the evidence in question -- the letter of protection and the accompanying emails, and Dr. Khalsa's bills in rebuttal -- if the party set a proper foundation for the evidence.  See Tr. at 18:17-19:2 (A. Ayala); Tr. at 19:22-20:6 (Beaulieu).  The Court likewise sees no problem with admitting the evidence if the parties set the proper foundation for their evidence.  The Defendants will use the letter of protection and the accompanying emails to show Dr. Khalsa's interactions with Walker's attorneys and hence her bias.  See Tr. at 16:18-24 (Beaulieu); id. at 17:6-12 (Beaulieu); id. at 18:7-12 (Beaulieu).  Neither party can deny that bias is relevant.  See Montoya v. City of Albuquerque, No. CIV 03-0261 JB/RHS, 2004 WL 3426435, at *3 (D.N.M. May 18, 2004)(Browning, J.)("Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." (quoting United States v. Abel, 469 U.S. at 52)).  The Court also will not exclude Dr. Khalsa's medical bills.  See Defendants' Exhibits MIL Response at 2.  Information about Dr. Khalsa's billing and the documentation of her medical bills

_____

Tanberg v. Sholtis, 401 F.3d at 1166)).  The principle nevertheless is distinct from the rule of completeness, and Walker conflates the two ideas.

is relevant to rebut the Defendants' arguments; such evidence will "modify" or "explain" the Defendants' story that Walker's attorneys directed Dr. Khalsa's billing. United States v. Gutierrez, 2018 WL 2451245, at *15 (quoting United States v. Burch, 153 F.3d at 1144). See United States v. Stitt, 250 F.3d at 897 (defining rebuttal evidence as "[e]vidence given to explain, repel, counteract, or disprove facts given in evidence by the opposing party. That which tends to explain or contradict or disprove evidence offered by the adverse party." (quoting "Rebuttal Evidence," Black's Law Dictionary 1267 (6th ed. 1990)).

As the Defendants note, see Defendants' Exhibits MIL Response at 2; Tr. at 19:22-20:6 (Beaulieu), Walker cannot, however, introduce the medical bills into the record without establishing a proper foundation. As stated in Part III of the Analysis, in the Medical Records and Bills MOO, the Court provides the parties guidance on introducing medical bills. In the Medical Records and Bills MOO, the Court ordered that, "if Walker can establish that her medical bills meet rule 803(6)'s requirements, the Court will admit the medical bills." Medical Records and Bills MOO at 9. That order also applies to Walker introducing the medical bills as rebuttal evidence if Walker wants the jury to consider the medical bills for the truth of the matters asserted.[13] Walker may nevertheless use the medical bills to impeach Dr. Khalsa. See Saltzburg,

---

[13]The Court takes a narrow view of rebuttal evidence. If Walker knows that there is an issue, she should address the issue in her case-in-chief. "The Court has previously noted that it is 'strict on rebuttal, and that if [a party] could not anticipate the testimony, then the testimony is rebuttal, but if it could anticipate the testimony, it has to bring out the testimony in its case-in-chief and not use a rebuttal witness to have the last work before the jury.'" United States v. Rodella, No. CR 14-2783 JB, 2014 WL 6634310, at *32 (D.N.M. Nov. 19, 2014)(quoting United States v. Ganadonegro, No. CR 09-0312, 2011 WL 3948759, at *1 (D.N.M. Aug. 26, 2011)(Browning, J). See Koch v. Koch. Indus., Inc., 203 F.3d 1202, 1224 (10th Cir. 2000)("When plaintiffs, however, seek to rebut defense theories which they knew about or reasonably could have anticipated, the district court is within its discretion in disallowing rebuttal testimony.")

Martin, & Capra, supra § 801.03[2][f][ix], at 801-136 to -138 (citing cases classifying evidence used for impeachment as non-hearsay evidence).

IV.  **WALKER MAY NOT INTRODUCE EVIDENCE OF THE DEFENDANTS' INSURANCE, AND THE DEFENDANTS MAY NOT MENTION WALKER'S INSURANCE AND MUST REDACT THE LANGUAGE IN WALKER'S MEDICAL BILLS INDICATING THAT S. AYALA WAS WALKER'S INSURANCE CARRIER.**

The parties may not mention insurance coverage.  Both parties agreed to such a prohibition. See Tr. at 20:22-21:18 (Court, A. Ayala, Sedillo).  Courts and the Federal Rules of Evidence have recognized that, in cases like this one, parties should avoid mentioning insurance to prevent insurance's presence from influencing the jury's decision.  See, e.g., Fed. R. Evid. 411 (noting that courts exclude discussions of insurance, because "counsel should be careful not to invite answers which will indicate that insurance companies are or are not involved or interested in the outcome of the litigation"); Zanetti Bus Lines, Inc. v. Hurd, 320 F.2d at 129 (recognizing in an automobile accident case that, "[i]n cases such as this, counsel should be careful not to invite answers which will indicate that insurance companies are or are not involved or interested in the outcome of the litigation").  The Court agrees that the jury need not consider Walker's or the Defendants' insurance and that knowledge of such insurance may improperly sway the jury.

Moreover, the Court is not convinced that it should allow Walker to introduce evidence of the Defendants' insurance to combat the prejudice that introducing the medical bills with S. Ayala name as Walker's insurance carrier will cause her.  See Insurance MIL Response at 2-3.  The Defendants have agreed that they can introduce the medical bills showing S. Ayala's name without mentioning Walker's insurance and while redacting the language identifying S. Ayala as Walker's insurance carrier.  See Tr. at 22:18-21 (Court, Sedillo); id. at 23:13-24:2 (Court, Sedillo, Ayala).

The Defendants should not knowingly introduce false evidence, as Walker suggests that they will do.  See Insurance MIL Response at 2.  See also Torres v. Donnelly, 554 F.3d 322, 326 (2d Cir. 2009)("[A]n attorney's ethical duty to advance the interests of his client is limited by an equally solemn duty to comply with the law and standards of professional conduct; it specifically ensures that the client may not use false evidence." (quoting Nix v. Whiteside, 475 U.S. 157, 168 (1986)).  The Defendants may nevertheless raise the question before the jury why S. Ayala's name appears on Walker's medical bills, and probe whether S. Ayala "directed Plaintiff's care" and whether Dr. Khalsa is biased.  Insurance MIL at 2.  As noted in Section III, "[p]roof of bias is almost always relevant," Montoya v. City of Albuquerque, 2004 WL 3426435, at *3 (quoting United States v. Abel, 469 U.S. at 52)), and the Federal Rules of Evidence permit evidence of insurance to illustrate bias, see Fed. R. Evid. 411; Black v. Hieb's Enters., Inc., 805 F.2d at 365.  Walker may, as suggested in Section III, introduce evidence to counterbalance the Defendants' narrative.  The Defendants' insurance, however, has no rebuttal value against the Defendants' theory.

## V.  WALKER MAY INTRODUCE FACTUAL EVIDENCE REGARDING SPINA'S DRIVING, AND, SHOULD THE COURT CONCLUDE THAT WALKER HAS INTRODUCED SUFFICIENT EVIDENCE, THE COURT WILL INSTRUCT THE JURY ON NEGLIGENCE PER SE.

Walker may introduce testimony relaying witnesses' observations from the accident, but Walker may not introduce speculative testimony or testimony stating conclusions on legal issues. The Court agrees with the Defendants that Walker may not introduce speculative evidence.  See Statutes MIL at 2; Tr. at 25:4-16 (Beaulieu).  A witness cannot say "this must be what Spina" did. The witness may testify what he or she saw or heard or felt.  A witness must testify based on "personal knowledge."  Fed. R. Evid. 602.  Cf. United States v. Powers, 578 F. App'x 763, 770 (10th Cir. 2014)(unpublished)("This 'perception requirement stems from [Rule] 602 which

requires a lay witness to have first-hand knowledge of the events he is testifying about so as to present only the most accurate information to the finder of fact.'" (quoting United States v. Bush, 405 F.3d 909, 916 (10th Cir. 2005)). A witness' speculation "is not based on his first-hand perception of actual events." Magoffe v. JLG Indus., Inc., 375 F. App'x 848, 859 (10th Cir. 2010)(unpublished). Walker may not, for instance, introduce testimony that Spina drove through a red light unless the witness observed Spina driving through the red light. Similarly, a witness may testify that Spina exceeded the speed limit when the witness had personal knowledge of Spina's actual speed or could have perceived that Spina obviously drove so fast as to exceed the speed limit. If Walker puts Spina on the stand to discuss his driving leading to the accident, as she states that she will, see Statutes MIL Response at 3, he may testify to his actions, because he has personal knowledge of his driving.

The Court also agrees with the Defendants that the witnesses cannot state whether Spina violated traffic laws. A lay witness may opine on ultimate issues only when the testimony helps the factfinder. See, e.g., Fed. R. Evid. 701; United States v. Anderskow, 88 F.3d at 250 (prohibiting lay witness testimony that did not help the jury). The witnesses may not opine that Spina drove negligently or recklessly. See Statutes MIL at 2. Such opinions will not help a jury. See United States v. Pino, 606 F.2d at 918 ("We do not feel, however, that the rule means that the witness may simply say that the defendant would not, or did not, drive recklessly"). A jury can decide based on the facts that Walker produces whether Spina drove negligently. Likewise, testimony stating that Spina violated other traffic laws will not help the jury, because the jury can reach those conclusions from the facts before them.

The Court cannot determine now whether a negligence per se instruction will apply. The Court will wait until it has heard Walker's evidence at trial to decide whether Walker has submitted sufficient evidence for the Court to instruct the jury on negligence per se. If Walker produces sufficient evidence for a reasonable jury to determine that Spina violated particular traffic laws, the Court will give such an instruction for those traffic laws. See Sanchez v. J. Barron Rice, Inc., 1967-NMSC-077, ¶ 24, 427 P.2d 240, 244-45 (finding error where a trial court did not instruct a jury on negligence per se after a party established violation of a statute in a negligence case).[14]

## VI.   WALKER MAY NOT ASK THE ENTIRE VENIRE ABOUT THE POTENTIAL JURORS' EXPERIENCE WITH THE INSURANCE INDUSTRY OR GIVE THE VENIRE HER STATEMENT OF THE CASE, BUT WALKER MAY ASK THE POTENTIAL JURORS ABOUT THEIR ATTITUDES TOWARD PSYCHIATRY.

Walker may not question the entire venire about the potential jurors' backgrounds with the insurance industry or about her statement of the case, but she may question the potential jurors about their attitudes toward psychiatry. The Court has "broad discretion" in organizing voir dire. United States v. Gibbons, 607 F.2d at 1330. See United States v. Whitt, 718 F.2d at 1497; United States v. Morris, 623 F.2d at 151. "The Court's goals are to make voir dire as efficient as possible

---

[14]The Court will not submit and use Walker's proposed instructions on reckless driving. See Amended Plaintiff's Proposed Jury Instructions at 29, filed January 3, 2019 (Doc. 110). The Court has granted summary judgment on punitive damages, saying that there is no evidence of "willful, wanton, malicious, reckless, oppressive, or fraudulent level." Clay v. Ferrellgas, Inc., 1994-NMSC-080, ¶ 12, 881 P.2d at 14. See Punitive Damages MOO at 52, 2018 WL 6519133, at *19. Walker does not have the evidence to establish that Spina drove "carelessly and heedlessly in willful or wanton disregard of the rights or safety of others and without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property." N.M. R. C.R. U.J.I. 14-4504. It is true that Walker may come up with new evidence at trial, but that evidence most likely could prove negligence just as well as recklessness. There is no need to submit both. The lower standard in the careless driving statute also benefits Walker. The Court will just submit the careless driving statute and not both.

and to permit the parties to inquire into potential biases which they feel may lead to an impartial jury." Lowery v. City of Albuquerque, No. CIV 09-0457 JB/WDS, 2012 WL 1372273, at *5 (D.N.M. April 11, 2012)(Browning, J.). The Court will not permit, however, the parties to suggest ideas that taint or bias the jury before the trial begins. If Walker's lawyer talks a lot about insurance in voir dire, the idea of insurance will get planted in their head; they will think that there might be insurance, such ideas will likely prejudice the Defendants. Also, the voir dire is not the time for Walker to start arguing her version of the story. The Court, accordingly, will permit Walker to question at the bar individual jurors about their background in and experience with the insurance industry and their knowledge about the case. Walker may not ask these questions of the venire or make her own statement of the case. The Court will give the neutral statement of the case to which the parties have agreed. If some potential jurors think they know about the case, Walker can have these potential jurors come to the bench and explore in more detail what they know. Perhaps that will be the time to share more details with some potential jurors to make certain that they know this case and, if so, whether what they know will make them unfair and partial. Such an arrangement will allow Walker to determine the potential jurors that she wishes to exclude to avoid seating a partial jury. At the same time, the plan reduces the risks that the questions will contaminate the entire venire, and that the potential jurors will contemplate the parties' insurance and that Walker's statement of the case will twist the potential jurors' perceptions early in the trial. Because Walker will ask the jury for hedonic damages and likely reference the psychiatric harm that the automobile accident caused her, Walker should have the opportunity to discover any potential jurors who have biases against psychiatry. The Court, therefore, will not prohibit Walker from questioning the potential jurors about their attitudes toward psychiatry. Accordingly, the

Court: (i) denies the Punitive MIL; (ii) grants the Medical Records MIL in part and denies it in part; (iii) grants the Defendants' Exhibits MIL in part and denies it in part; (iv) grants the Insurance MIL; (v) grants the Statutes MIL in part and denies it in part; (vi) grants the Standard of Care MIL; and (vii) grants the Voir Dire Objections in part and denies them in part.

**IT IS ORDERED** that: (i) Plaintiff's Motion in Limine Regarding Punitive Damages, filed January 28, 2019 (Doc. 121), is denied; (ii) Plaintiff's Motion in Limine and Objection to Defendant's Proposed Exhibit List, filed January 30, 2019 (Doc. 132), is granted in part and denied in part; (iii) Plaintiff's Motion in Limine Regarding Introduction of All Olympics Records, Trattel Court Reporting Page, and Medical and Billing Records for Dr. Khalsa, filed January 30, 2019 (Doc. 133), is granted in part and denied in part; (iv) Defendants Gregory J. Spina and Valley Express, Inc.'s Motion in Limine Prohibiting Mention of Defendants' Insurance, filed January 31, 2019 (Doc. 134), is granted; (v) Defendants Gregory J. Spina and Valley Express, Inc.'s Motion in Limine Prohibiting Mention of Alleged Violations of Statutes, January 31, 2019 (Doc. 135), is granted in part and denied in part; (vi) Defendants Gregory J. Spina and Valley Express, Inc.'s Motion in Limine Regarding Standard of Care and Golden Rule Arguments, January 31, 2019 (Doc. 136), is granted; (vii) Defendants Gregory J. Spina and Valley Express, Inc's Objections to Plaintiff's Proposed Voir Dire, filed January 31, 2019 (Doc. 137), are granted in part and denied in part; (viii) Plaintiff Shirley Walker may not seek punitive damages even if Spina perjures himself; (ix) Defendants Gregory J. Spina and Valley Express, Inc. ("the Defendants") may introduce Walker's medical records for impeachment purposes, and for the truth of the matter asserted if the Defendants meet the requirements that the Court discussed in its Memorandum Opinion and Order, filed February 1, 2019 (Doc. 139)("Medical Records and Bills MOO"); (x) as

Walker withdrew her request to introduce her deposition correction page and all other documents related to the New Mexico Senior Olympics, she may not introduce such evidence; (xi) Walker may introduce Dr. Arjan Khalsa's bills to rebut the Defendants' arguments about the letter of protection and the accompanying emails if Walker meets the requirements that the Court discussed in its Medical Records and Bills MOO; (xii) Walker may not introduce evidence of the Defendants' insurance, and the Defendants may not mention Walker's insurance and will redact the language on Walker's medical bills indicating that Shavon Ayala is Walker's insurance carrier; (xiii) Walker may introduce factual evidence about Spina's driving, and, should the Court conclude that Walker has introduced sufficiently non-speculative testimony, the Court will include the statutes in the jury instructions for negligence per se except the one on reckless driving; (xiv) as Walker agreed not to suggest that the standard of care is any standard other than ordinary care and not to argue that the jury should determine Walker's damages according to what they would desire in Walker's position, Walker may not make such suggestions or arguments at trial unless the Defendants open the door; (xv) Walker may identify individual potential jurors whose history in the insurance industry cause her concern and question those potential jurors individually, but Walker may not ask the venire:

> 5. Have any of you worked for an insurance company in any capacity,
>
> 6. Have any of you ever had a close personal friend or Relative [sic] that has ever worked as an adjustor for an an [sic] insurance company?
>
> 7. Have any of you had a close personal friend or relative That [sic] has worked for an insurance company in any capacity?

Possible Voir Dire Questions, Questions 5-7, at 2, filed January 28, 2019 (Doc. 125); (xvi) as Walker agreed to withdraw her proposed question 11, Walker may not ask the venire

In this case, you will hear expert witness Ted Davis, who is hired on a regular basis by the defense, to Testify [sic] against Ms. Walker on a number issues [sic]; will any of you have a hard time giving Ms. Walker a fair trial in light of the fact that the Defendants will call Ted Davis, as expert in this case?  Consider all the evidence in the case before making you [sic] mind up after you hear from Mr. Davis?

Possible Voir Dire Questions, Question 11, at 2; (xvii) because the Court will make the statement

of the case, Walker may not give her own statement of the case to the venire and ask:

15.  Do you know anything about the facts of this case except what you have heard in court today? (Give brief synopsis of facts in this case.)

The facts of this case basically are that an accident happened north of Santa Fe, New Mexico, past the city of Gold Casino at a red light intersection of US Highway 84/285, at intersection SR 503.  The witnesses are all from Santa Fe, New Mexico, or Espanola, where Mr. [sic] Walker lives.

In a nutshell, the facts will show that July 23, 2015, the Plaintiff Ms. Walker who was driving her vehicle had slowed for a yellow light, and then stopped. At the same time and place, Karla A. Mcwilliams driving a State of New Mexico van with four (2) individuals had slowed for a yellow light and then stopped for the red light.

You will hear that Mr. Gregory J. Spina was driving a commercial sixteen wheeler, a semi truck with a large trailer, and was driving in the same direction as Ms. Walker and Ms. Mcwilliams, but was unable to slow down or stop, and when he came behind the two vehicles parked at the red light, rather than hit one or the other from behind, decided to drive between the two vehicles; and in that process he hit both vehicles.  You will see pictures of the vehicles involved and all the people who came together as a result of that accident.

Possible Voir Dire Questions, Question 15, at 3, but, if potential jurors indicate familiarity with

the case, Walker may question those jurors individually at the bar; and (xviii) Walker may ask the

venire such questions as:

35.  Have any of you ever studied psychology or received Training [sic] in psychiatry or psychology?

36.  In this case, the Plaintiff will be making a claim for a PTSD injury?

Experience with That [sic]?

37.  Is anyone going to be able to sit on this jury in light of the fact that a claim for a psychological injury is claimed?

38.  Will not be able to give damages for a psychological injury if one is proved?

39.  Do you think that it is impossible for a person to suffer PTSD as a result of a vehicle accident?

40. What is your opinion of psychiatrists?

41.  Do you recognize that there is a difference between a psychiatrist and a general practitioner?

42. Have you formed any opinion concerning the validity of psychiatry?

43.  Do you accept the fact that a properly qualified psychiatrist is an expert in the diagnosis of certain forms of mental illness and mental defects?

Possible Voir Dire Questions, Questions 35-43, at 5.




_____
UNITED STATES DISTRICT JUDGE



*Counsel*:

Shavon M. Ayala
Ayala P.C.
Albuquerque, New Mexico

--and--

Anthony James Ayala
Law Offices of Anthony James A. Ayala
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Raul P. Sedillo
Allison M. Beaulieu
Butt Thornton & Baehr PC
Albuquerque, New Mexico

*Attorneys for the Defendants*